John S. Battenfeld, Bar No. 119513
Kathy H. Gao, Bar No. 259019
Daniel R. Rodriguez, Bar No. 323955
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:    +1.213.612.2500
Fax:   +1.213.612.2501
john.battenfeld@morganlewis.com
kathy.gao@morganlewis.com
daniel.rodriguez@morganlewis.com

Attorneys for Defendants
G2 SECURE STAFF, L.L.C. and
G2 SECURE STAFF CA, L.P.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON VILLANUEVA, as an individual, on behalf of herself, and all persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SAS SERVICES SAN DIEGO, INC, a California Corporation., G2 SECURE STAFF, L.L.C., a Texas Corporation. and G2 SECURE STAFF CA, L.P., a Texas Corporation, and DOES 1-10,<br><br>Defendants. | Case No. **'23CV1243 LAB DEB**<br><br>[San Diego County Superior Court Case No. 37-2023-00016073-CU-OE-CTL]<br><br>**NOTICE OF REMOVAL OF DEFENDANTS G2 SECURE STAFF, L.L.C. AND G2 SECURE STAFF CA, L.P.**<br><br>[28 U.S.C. §§ 1332, 1441, 1446, AND 1453] |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 46109732.3

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

# TABLE OF CONTENTS

**Page**

I.      PROCEDURAL BACKGROUND ...................................................... 1

II.     REMOVAL IS TIMELY. ........................................................... 3

    A.    This Court Has Original Subject Matter Jurisdiction over the Operative Complaint Under CAFA. ......................................... 3

    B.    The Putative Class Has More Than 100 Members. ................... 3

    C.    Diversity of Citizenship Exists. .......................................... 4

    D.    The Amount In Controversy Exceeds $5,000,000 .................. 6

        1.    Plaintiff's Fourth Cause of Action for Failure to Pay All Wages Within a Timely Manner and Upon Separation of Employment Puts Well over $5,000,000 in Controversy ........... 9

        2.    The Operative Complaint Also Seeks Recovery of Attorneys' Fees. .......................................................... 10

        3.    Plaintiff's Other Causes of Action Put Additional Amounts in Controversy, Further Exceeding the CAFA Threshold. ..................................................................... 11

    E.    The Court Has Supplemental Jurisdiction Over Plaintiff's PAGA Claim. ................................................................ 11

    F.    CAFA's Exceptions to Removal Do Not Apply ................... 12

III.    VENUE ............................................................................ 14

IV.     NOTICE ........................................................................... 14

V.      CONSENT ........................................................................ 14

VI.     CONCLUSION ................................................................... 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

i

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) ........................................................................... 12

*Arias v. Residence Inn by Marriott*,
936 F.3d 920 (9th Cir. 2019) ............................................................... 9

*Armstrong v. Church of Scientology Int'l*,
243 F.3d 546 (9th Cir. 2000) ............................................................... 4

*Boon v. Allstate Ins. Co.*,
229 F. Supp. 2d 1016 (C.D. Cal. 2002) ............................................... 4

*Carden v. Arkoma Assocs.*,
494 U.S. 185 (1990) ............................................................................. 5

*Carleu v. FCA US LLC*,
2016 WL 304295 (C.D. Cal. Jan. 25, 2016) ........................................ 5

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) ........................................................................... 12

*Chalian v. CVS Pharmacy, Inc.*,
No. CV1608979-ABA-GRx, 2017 WL 1377589 (C.D. Cal. Apr. 11,
2017) .................................................................................................. 14

*Dart Cherokee Basin Operating Company, LLC v. Owens*,
135 S. Ct. 547 (2014) ..................................................................... 7, 8

*Ferrell v. Express Check Advance of Georgia*,
591 F.3d 698 (4th Cir. 2010) ............................................................... 5

*Ford v. CEC Entm't, Inc.*,
2014 WL 3377990 (N.D. Cal. July 10, 2014) ................................... 10

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
899 F.3d 785 (9th Cir. 2018) ............................................................. 11

*Guglielmino v. McKee Foods Corp.*,
506 F.3d 696 (9th Cir. 2007) ............................................................. 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 46109732.3

ii

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Harrington v. Mattel, Inc.*,
  No. C07-05110 MJJ, 2007 WL 4556920 (N.D. Cal. Dec. 20, 2007)................ 13

*Hertz Corp. v. Friend*,
  559 U.S. 77, 130 S. Ct. 1181 (2010) ................................................... 6

*Ibarra v. Manheim Invs., Inc.*,
  775 F.3d 1193 (9th Cir. 2015).............................................................. 8

*Jadeja v. Redflex Traffic Sys, Inc.*,
  2010 WL 4916413 (N.D. Cal., Nov. 22, 2010)...................................... 14

*Jauregui v. Roadrunner Transp. Servs., Inc.*,
  28 F.4th 989 (9th Cir. 2022)......................................................... 9, 10

*Jordan v. Nationstar Mortg., LLC*,
  781 F.3d 1178 (9th Cir. 2015).............................................................. 7

*LaCross v. Knight Transportation Inc.*,
  775 F.3d 1200 (9th Cir. 2015).......................................................... 8, 9

*Laddi v. Soraya Motor Co.*,
  2017 WL 7053651, No. C17-0287-JCC (W.D. Wash., May 5,
  2017)................................................................................................ 14

*Lewis v. Verizon Commc'ns, Inc.*,
  627 F.3d 395 (9th Cir. 2010)................................................................. 9

*Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*,
  414 Fed. App'x 62 (9th Cir. 2011)....................................................... 5

*Marroquin v. Wells Fargo, LLC*,
  2011 WL 476540 (S.D. Cal. Feb 3, 2011) ........................................... 5

*Morris Johnson, Jr. v. Columbia Properties Anchorage, LP*,
  437 F.3d 894 (9th Cir. 2006).............................................................. 5

*Phillips v. Kaiser Found. Health Plan, Inc.*,
  953 F. Supp. 2d 1078 (N.D. Cal. 2011)............................................. 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 46109732.3

iii

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

1
2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3
4

*Pineda v. Bank of Am., N.A.*,
50 Cal. 4th 1389 (2010) ................................................................ 10

5
6

*Roa v. TS Staffing Servs, Inc.*,
2015 U.S. Dist. LEXIS 7442 (C.D. Cal. 2015) .............................. 8

7
8

*Rodriguez v. Cleansource, Inc.*,
2014 WL 3818304 (S.D. Cal. Aug. 4, 2014) ................................ 11

9
10

*Sanchez v. Russell Sigler, Inc.*,
2015 WL 12765359 (C.D. Cal. April 28, 2015) .............................. 8

11

*Singer v. State Farm Mut. Auto. Ins. Co.*,
116 F.3d 373 (9th Cir. 1997) .......................................................... 7

12
13

*Standard Fire Ins. Co. v. Knowles*,
133 S. Ct. 1345 (2013) ................................................................... 7

14
15

*Thompson v. Target Corp.*,
2016 WL 4119937 (C.D. Cal. Aug. 2, 2016) ................................ 13

16
17

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. &*
*Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*,
602 F.3d 1087 (9th Cir. 2010) ........................................................ 4

18
19

*Vodenichar v. Halcon Energy Properties, Inc.*,
733 F.3d 497 (3d Cir. 2013) ......................................................... 13

20
21

*Washington v. Hovensa LLC*,
652 F.3d 340 (3d Cir. 2011) ........................................................... 4

22

**Statutes**

23
24

28 U.S.C. § 1332 .................................................................... *passim*

25

28 U.S.C. § 1441 ......................................................... 1, 3, 15

26

28 U.S.C. § 1446 ......................................................... 1, 3, 15

27

28 U.S.C. § 1453 ................................................................... 1, 3

28

Class Action Fairness Act ("CAFA") .................................... *passim*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 46109732.3

iv

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

California Code of Civil Procedure § 382 ................................................................. 3

Labor Code § 201 ..................................................................................................... 2

Labor Code § 202 ..................................................................................................... 2

Labor Code § 203 ................................................................................................. 2, 10

Labor Code § 204 ..................................................................................................... 2

Labor Code § 210 ..................................................................................................... 2

Labor Code § 226 ..................................................................................................... 2

Labor Code § 226.2 .................................................................................................. 2

Labor Code § 226.3 .................................................................................................. 2

Labor Code § 226.7 .................................................................................................. 2

Labor Code § 246 ..................................................................................................... 2

Labor Code § 510 ..................................................................................................... 2

Labor Code § 512 ..................................................................................................... 2

Labor Code § 1174 ................................................................................................... 2

Labor Code § 1194 ................................................................................................... 2

Labor Code § 1197 ................................................................................................... 2

Labor Code § 1197.1 ................................................................................................ 2

Labor Code § 1198 ................................................................................................... 2

Labor Code § 1199 ................................................................................................... 2

Labor Code § 246 ..................................................................................................... 2

Labor Code § 432 ..................................................................................................... 2

Labor Code §§ 2698 *et seq.* ..................................................................................... 2

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 46109732.3

v

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Labor Code § 2800 ............................................................................................. 2

Labor Code § 2802 ............................................................................................. 2

Unfair Competition Law (Business & Professions Code §§ 17200, *et seq.*) ................................................................................................. 2, 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 46109732.3

vi

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

**TO THE CLERK OF THE SOUTHERN DISTRICT OF CALIFORNIA AND PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants G2 Secure Staff, L.L.C. ("G2") and G2 Secure Staff CA, L.P.[1] (collectively, "Defendants"), by and through their counsel, remove the above-entitled action to this Court from the Superior Court of the State of California, County of San Diego, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.  This removal is based on the following grounds:

## I.   PROCEDURAL BACKGROUND

1.   On or about April 19, 2023, Plaintiff Allison Villenueva ("Villanueva" or "Plaintiff") filed a class action Complaint in the Superior Court of the State of California, County of San Diego, entitled *Allison Villanueva v. SAS Services San Diego, Inc., et al.*, Case No. 37-2023-00016073-CU-OE-CTL (the "Superior Court Action").

2.   On June 5, 2023, counsel for Defendants, by execution of Notices and Acknowledgements of Receipt, accepted service of the Summons, Complaint, Civil Case Cover Sheet, Stipulation to Use Alternative Dispute Resolution (ADR), Notice to Litigants and ADR Information Package, Notice of Case Assignment and Case Management Conference, true and correct copies of which, are attached hereto as **Exhibit A**.

3.   On June 7, 2023, Plaintiff filed the Notices and Acknowledgements of Receipt provided by Defendants and by co-defendant SAS Services San Diego, Inc., true and correct copies of which are attached hereto as **Exhibit B**.

4.   On June 29, 2023, Plaintiff served counsel for Defendants with an amended class and representative action Complaint in the Superior Court Action

[1] Defendant G2 Secure Staff, L.L.C. is incorrectly identified on the caption in Plaintiff's Complaint as a Texas corporation.  It is a limited liability company organized under the laws of Texas.  Similarly, Defendant G2 Secure Staff CA, L.P. is incorrectly identified on the caption in Plaintiff's Complaint as a Texas corporation.  It is a limited partnership organized under the laws of Texas.

(the "FAC"), a true and correct copy of which is attached hereto as **<u>Exhibit C</u>**.

5.      Exhibits A, B, and C constitute all the pleadings, process, and orders served upon or filed by Defendants in the Superior Court action.

6.      Plaintiff's FAC alleges the following class and representative claims based on alleged violations of the California Labor Code: (1) Failure to Pay Minimum Wages, Overtime and/or Double Time Compensation (Labor Code §§ 204, 210, 226.2, 510, 1194, 1197, 1197.1, 1198, 1199); (2) Failure to Provide Legally Complaint Meal Periods or Compensation In Lieu Thereof (Labor Code §§ 204, 226.7, 512); (3) Failure to Provide Legally Compliant Rest Periods or Compensation In Lieu Thereof (Labor Code §§ 204, 226.7); (4) Failure to Pay All Wages Owed Upon Separation (Labor Code §§ 201, 202, 203); (5) Failure to Provide Paid Sick Leave And Written Notice of the Amount of Sick Leave Available (Labor Code § 246); (6) Failure to Furnish Accurate Itemized Wage Statements (Labor Code §§ 226, 226.3); (7) Failure to Maintain Accurate Records (Labor Code §§ 226(a), 1174); (8) Failure to Provide Copies of Signed Documents (Labor Code § 432); (9) Failure to Reimburse for Necessary Work Expenses (Labor Code §§ 2800, 2802); (10) Violation of Unfair Competition Law (Business & Professions Code §§ 17200, *et seq.*); and (11) Private Attorneys General Act of 2004 (Labor Code §§ 2698 *et seq.*).

7.      Plaintiff seeks to represent the following "Class" or "Class Members": All current or former hourly non-exempt employees of SAS Services San Diego, Inc. ("SAS"), G2, and G2 Secure Staff CA, L.P., in the State of California from four years prior to the filing of the initial complaint and continuing to the present. (Exh. C – FAC, ¶¶ 1, 59.)[2]

---

[2] The FAC provides that Plaintiff brings this action on behalf of herself and "all other current or former hourly non-exempt employees of "Defendants," and defines "Defendants" as "SAS Services San Diego, Inc., G2 Secure Staff, L.L.C., and G2 Secure Staff CA, L.P."  (Exh. C – FAC, ¶¶ 1, 59.)  In a meet and confer call on June 21, 2023, Plaintiff's counsel confirmed that they are seeking to represent in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 46109732.3

2

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

## II.   REMOVAL IS TIMELY.

8.   Counsel for Defendants accepted service of the Summons, the initial complaint, and accompanying documents on June 5, 2023.  Because this Notice of Removal is filed within thirty (30) days of service of the Summons and the initial complaint, it is timely under 28 U.S.C. §§ 1446(b)(3) and 1453.  No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

### A.   This Court Has Original Subject Matter Jurisdiction over the Operative Complaint Under CAFA.

9.   Plaintiff brings this action as a putative class action under California Code of Civil Procedure section 382.  (Exh. C – FAC, ¶¶ 4, 59-64.)  Removal based upon Class Action Fairness Act ("CAFA") diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because: (i) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs; (ii) the aggregate number of putative class members in all proposed classes is 100 or greater; and (iii) diversity of citizenship exists between at least one putative class member and Defendants.  28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453. Although Defendants deny Plaintiff's factual allegations and deny that Plaintiff or the "Class" or allegedly aggrieved employees she purports to represent are entitled to the relief requested, based on Plaintiff's allegations in the FAC and prayer for relief, all requirements for jurisdiction under CAFA have been met in this case.[3]

### B.   The Putative Class Has More Than 100 Members.

10.   Based on Plaintiff's definition of the "Class" (Exh. C – FAC, ¶¶ 1, 59),

---

their class claims all employees of either G2 or G2 Secure Staff CA, L.P., including employees who were never employed by SAS.

[3] Defendants deny, and reserve the right to contest at the appropriate time, that this action can properly proceed as a class and/or representative action or that it can proceed in court at all.  Defendants further deny Plaintiff's claims and deny that she can recover any damages or penalties.

the vaguely pled putative "Class" as defined in the FAC contains more than 3,000 putative class members who worked for Defendant G2 in California as a non-exempt employee between approximately April 18, 2019 through the present. Thus, the putative class contains more than 100 members.  However, Plaintiff never worked for G2.

### C.   Diversity of Citizenship Exists.

11.     To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).  "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co*., 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).  Evidence of continuing residence creates a presumption of domicile.  *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011).

12.     The FAC alleges that Plaintiff did and does reside in California in San Diego County, and it does not allege alternate citizenship.  (Exh. C – FAC., ¶ 8.a.) Therefore, Plaintiff is a citizen of California for diversity jurisdiction purposes. Moreover, Plaintiff has brought claims on behalf of putative class members residing in California.  Thus, at least one putative class member is a citizen of California for diversity jurisdiction purposes.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
DB2/ 46109732.3

4

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

13.     For CAFA diversity purposes, an unincorporated association or corporation is deemed to be a citizen of the state where it has its principal place of business and under whose laws it is incorporated or organized.  28 U.S.C. § 1332(d)(10); *see also Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 705 (4th Cir. 2010) (holding that "the term 'unincorporated association' in § 1332(d)(1) refers to all non-corporate business entities.  This interpretation not only serves the language and history of § 1332 but also the purpose of broadening the reach of CAFA."); *Marroquin v. Wells Fargo, LLC*, 2011 WL 476540, at *2 (S.D. Cal. Feb 3, 2011) (same).  The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . . [I]n practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings  . . . ."  *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S. Ct. 1181, 1192 (2010).

14.     G2 is a Texas citizen for diversity purposes.  G2 is organized under the laws of Texas and has its principal place of business in Texas.  G2's corporate headquarters is in the State of Texas, as is the majority of its corporate books and records and its executive and administrative functions (including but not limited to operations, corporate finance, accounting, human resources, payroll, marketing, legal, and information systems).  In addition, G2's senior executives work from the Texas headquarters and direct, control, and coordinate G2's corporate activities from Texas.  Accordingly, G2 is a citizen of Texas for the purposes of determining diversity.  28 U.S.C. §§ 1332(c) & 1332(d)(10).

15.     Similarly, G2 Secure Staff CA, L.P. is a limited partnership organized and existing under the laws of the State of Texas with its headquarters in Texas. G2 Secure Staff CA L.P.'s principal place of business is located in Texas.  G2

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
DB2/ 46109732.3

5

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

Secure Staff CA, L.P.'s high-level management team is based in Texas and directs its business from the Texas headquarters.  The majority of G2 Secure Staff CA, L.P.'s executive and administrative functions take place in Texas.  G2 Secure Staff CA, L.P. holds itself out to the public as having its corporate headquarters in Texas.  Thus, G2 Secure Staff CA, L.P. is a citizen of Texas for diversity purposes under CAFA.  28 U.S.C. §§ 1332(c) & 1332(d)(10).

16.     Neither G2 nor G2 Secure Staff CA, L.P. are incorporated in California or have a principal place of business in California.  Therefore, based on the Complaint, at least one member of the putative class is a citizen of a state different than any Defendant.  As a result, diversity jurisdiction exists under CAFA.  28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

### D.     The Amount In Controversy Exceeds $5,000,000.

17.     Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(6).  Plaintiff may not avoid removal to federal court under CAFA's $5,000,000 amount in controversy requirement by expressly alleging or subsequently stipulating that damages fall below that sum.  *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1347 (2013).  Where a Plaintiff does not expressly plead a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5,000,000.  *See Singer v. State Farm Mut. Auto. Ins. Co*., 116 F.3d 373, 376 (9th Cir. 1997).

18.     Defendants' burden to establish the amount in controversy is the preponderance of the evidence standard.  *Dart Cherokee Basin Operating Company, LLC v. Owens,* 135 S. Ct. 547, 553-54 (2014); *see also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 46109732.3

6

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

for the proposition that there is no antiremoval presumption against CAFA cases). A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554.  "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case."  Senate Judiciary Report, S. REP. 109-14, at 42 (2005) (citation omitted).

19.    "[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, *2 (C.D. Cal. April 28, 2015) (citation omitted).  *See also LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, Defendants "are not stipulating to damages suffered, but only estimating the damages in controversy.").

20.    Under *Dart Cherokee*, a removing defendant is not required to submit evidence in support of its removal allegations.  *Roa v. TS Staffing Servs, Inc.*, 2015 U.S. Dist. LEXIS 7442, at *4-5 (C.D. Cal. 2015).  However, as detailed below, Defendants have both plausibly alleged and established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 and the Court has jurisdiction pursuant to CAFA.  As discussed below, when the claims of the putative class members in the present case are aggregated, their claims put into controversy over $5,000,000 in potential damages.  28 U.S.C. § 1332(d)(2).

21.    Although Defendants deny Plaintiff's factual allegations and deny that Plaintiff or the "Class Members" she seeks to represent are entitled to any relief,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
DB2/ 46109732.3

7

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

Plaintiff's allegations and prayer for relief have "more likely than not" put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).

22.     Here, Plaintiff's FAC includes broadly pled allegations against "Defendants" in the collective, but does not include specificity as to the relationship between Defendant SAS and Defendants G2 and G2 Secure Staff CA, L.P. Defendants contend that Plaintiff's allegations are entirely without merit, and further contend that they should not be included in this action because Plaintiff never worked for Defendants.  In that regard, Defendants preserve all rights and options to challenge their inclusion in this action on these and other grounds. Notwithstanding, the standard for removal simply is what Plaintiff puts in controversy by her complaint.  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) ("[t]he amount of controversy reflects the maximum recovery the plaintiff could reasonably recover.").  The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe.  *LaCross*, 775 F.3d at 1202 (internal citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy"); s*ee also Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) ("At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint— much of which it presumably disagrees with—to estimate an amount in controversy.  This is also at a stage of the litigation before any of the disputes over key facts have been resolved").

23.     As stated above, based on the alleged definitions in the FAC, as confirmed by Plaintiff's counsel, Plaintiff's allegations seek to represent a putative class of over 3,000 putative class members.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 46109732.3

8

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

1.     **Plaintiff's Fourth Cause of Action for Failure to Pay All Wages Within a Timely Manner and Upon Separation of Employment Puts Well over $5,000,000 in Controversy.**

24.     Plaintiff alleges that Defendants "knowingly failed to compensate its [sic] non-exempt employees for all time worked, failed to pay minimum wages, overtime, and double time compensation to non-exempt employees, and failed to pay legally required premium wages to non-exempt employees for non-compliant meal and/or rest periods [and …a]lthough Defendants no longer employ a number of non-exempt employees, Plaintiff alleges, based on information and belief, that Defendants have not yet paid all wages owed to its former non-exempt employees as a result of such conduct."  (Exh. C – FAC, ¶ 132.)

25.     Claims under Labor Code section 203 have a three-year statute of limitations.  *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010).

26.     Based on Plaintiff's allegations, it is appropriate to use a 100% violation rate as to the alleged waiting time penalties subclass (*see* Exh. C – FAC, ¶ 59.e) for 30 days of waiting time penalties to calculate the amount in controversy. *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid"); *see also Jauregui*, 28 F.4th at 994 ("But it was not unreasonable for [defendant] to assume that the vast majority (if not all) of the alleged violations over the *four years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty") (emphasis in original).

27.      Since approximately April 18, 2019, at least 2,762 non-exempt employees of G2 in California have separated from their employment.  As a result, Plaintiff's Fourth Cause of Action puts well over $5,000,000 in controversy (2,762

former employees * 8 hours per day * 30 days * $19.80 average hourly rate[4] = $13,125,024).

### 2. The Operative Complaint Also Seeks Recovery of Attorneys' Fees.

28.     Plaintiff seeks to recover attorneys' fees.  (Exh. C – FAC, ¶¶ 2, 86, 110, 125, 135, 143, 157, 166, 171, 179, 180, Prayer for Relief.)  When an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes.  *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that "if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007) (finding that attorneys' fees are properly included in determining the amount in controversy).  The Ninth Circuit has held that future fee estimates can be based on "customary rates and proper fees," and that "a percentage-based method," such as 25% of the amount in controversy, may also be relevant when estimating the amount of fees included in the amount in controversy.  *Fritsch*, 899 F.3d at 795 and 796, fn. 6; *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014) ("[T]he Court finds that using [the 25%] benchmark is the most appropriate way to calculate attorneys' fees in order to establish the amount in controversy for jurisdictional purposes").

29.     Therefore, although Defendants have already demonstrated by a preponderance of the evidence that the amount in controversy without attorneys' fees exceeds $5,000,000, the inclusion of attorneys' fees consistent with removal precedent further increases the amount in controversy.

---

[4] Based on preliminary data gathered by G2, the average hourly rate of pay for these 2,762 non-exempt former employees of G2 in California was approximately $19.80.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 46109732.3

10

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

### 3.    Plaintiff's Other Causes of Action Put Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.

30.    As shown above, using reasonable assumptions grounded in the FAC's allegations to calculate the amount in controversy, Defendants have demonstrated that Plaintiff's waiting time penalties claim as well as her request for attorneys' fees place more than $5 million in controversy.  In addition to this amount, Plaintiff's various other claims place additional amounts in controversy, thus further exceeding the CAFA jurisdictional threshold.  As enumerated in Section I, Plaintiff also seeks class wide and representative relief for various other alleged Labor Code violations including the failure to pay minimum wages, overtime, and/or double time wages (First Cause of Action), failure to provide legally compliant meal periods or compensation in lieu thereof (Second Cause of Action), failure to provide legally compliant rest periods or compensation in lieu thereof (Third Cause of Action), failure to provide paid sick leave and written notice of amount of sick leave available (Fifth Cause of Action), failure to provide accurate itemized wage statements (Sixth Cause of Action), failure to maintain accurate records (Seventh Cause of Action), failure to provide copies of signed documents (Eighth Cause of Action), failure to reimburse for necessary work expenses (Ninth Cause of Action), and violations of Unfair Competition Law (Tenth Cause of Action).  Each of these causes of action places additional amounts in controversy beyond the causes of action and attorneys' fees that Defendants calculated above.

### E.    The Court Has Supplemental Jurisdiction Over Plaintiff's PAGA Claim.

31.    Supplemental jurisdiction principles support jurisdiction over Plaintiff's PAGA claim because the PAGA claim derives from a common nucleus of operative fact and is based on the same alleged conduct, case, and controversy that gave rise to Plaintiff's class claims over which the Court has original federal jurisdiction under CAFA.  *See* 28 U.S.C. § 1367(a); *Arbaugh v. Y & H Corp.,* 546

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 46109732.3

11

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

U.S. 500, 514, (2006) (holding that the district court had authority to exercise jurisdiction over a state-law claim derived from common nucleus of operative fact after dismissing plaintiff's federal claims).  In determining whether to extend supplemental jurisdiction over state law claims, courts weigh whether the extension of jurisdiction will serve the principles of judicial economy, convenience, and fairness to the litigants, and comity to the states. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Here, because all of Plaintiff's claims "derive from a common nucleus of operative fact"—*i.e.*, the circumstances of Plaintiff's alleged employment with Defendants—the claims are such that they ordinarily would be expected to be tried in one judicial proceeding. *Thompson v. Target Corp.,* 2016 WL 4119937, *12 (C.D. Cal. Aug. 2, 2016) (denying remand because the plaintiff's class and PAGA claims concern the same alleged misconduct by the defendant such that they form part of the same case or controversy under Article III, and finding "the PAGA claims are therefore properly within the Court's supplemental jurisdiction").  Thus, it is economically and judicially efficient for this Court to adjudicate all claims asserted in the Complaint.

## F. <u>CAFA's Exceptions to Removal Do Not Apply</u>.

32.    CAFA's "home-state" and "local controversy" exceptions do not apply to this removal.  The "home state" exception prevents CAFA removal only when all "primary defendants" are citizens of the state in which the action was filed.  28 U.S.C. § 1332(d)(4)(B); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011) ("[Home state] test requires that all 'primary defendants' be residents of the same state in which the action is filed.").  Here, Plaintiff's FAC is brought against Defendant SAS and Defendants, seeking damages against all three entities without distinction.  Because Plaintiff seeks to recover amounts equally against Defendant SAS and Defendants, Defendants are a "real target" of the lawsuit and are primary defendants in this case as pled. *See Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497, 506 (3d Cir. 2013)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 46109732.3

12

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

(finding that all defendants were "primary defendants" when the plaintiff appeared to apportion liability equally among them); *Harrington v. Mattel, Inc*., No. C07-05110 MJJ, 2007 WL 4556920, at *5 (N.D. Cal. Dec. 20, 2007) (holding that Mattel, Inc. and its wholly owned subsidiary, Fisher-Price, Inc., were both "primary defendants").  Defendants are not citizens of California, the state where this action was originally filed, and so the home state exception to CAFA removal does not apply.

33.     The "local controversy" exception to CAFA jurisdiction also does not apply because during the three-year period prior to the filing of this class action, at least one "class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . ."  *See* 28 U.S.C. § 1332(d)(4)(A); *see also Chalian v. CVS Pharmacy, Inc*., No. CV1608979-ABA-GRx, 2017 WL 1377589, at *3 (C.D. Cal. Apr. 11, 2017) (holding that the local controversy exception did not apply where similar class action lawsuits had been filed against defendants in the past three years).

34.     Courts have interpreted the language of 28 U.S.C. § 1332(d)(4)(A))(ii) broadly in order to narrowly apply the exception.  *See, e.g., Laddi v. Soraya Motor Co.*, 2017 WL 7053651, No. C17-0287-JCC, at *3 (W.D. Wash., May 5, 2017) (explaining that the definition of "same or similar" class action should "be interpreted liberally" and that prior class actions filed in California disqualified the local controversy exception); *Jadeja v. Redflex Traffic Sys, Inc.*, 2010 WL 4916413, at *2–3 (N.D. Cal., Nov. 22, 2010) (Plaintiff's contention that the prior class action filed outside California was dissimilar failed because "the plain language of the statute" focused on whether the factual allegations against the defendant were similar).

35.     During the three-year period prior to the filing of this action, at least one similar wage and hour class action lawsuit has been filed against Defendant G2, negating application of the local controversy exception.  *See Bryan Rodriguez v. G2*

1   *Secure Staff, L.L.C.*, United States District Court, Central District of California,

2   Case No. 2:20-cv-07589-GW, originally filed on July 27, 2020 and removed to

3   federal court on August 20, 2020.

4   **III.    VENUE**

5          36.    This action was originally filed in the Superior Court for the County of

6   San Diego.  Initial venue is therefore proper in this District Court, pursuant to

7   28 U.S.C. § 1441(a), because it encompasses the county in which this action has

8   been pending.

9   **IV.    NOTICE**

10          37.    Defendants will promptly serve this Notice of Removal on Plaintiff

11   and will promptly file a copy of this Notice of Removal with the clerk of the state

12   court in which the action is pending, as required under 28 U.S.C. § 1446(d).

13   **V.    CONSENT**

14          38.    Defendant SAS joins and consents to this removal.  (*See* Defendant

15   SAS's Consent to Removal of Action to Federal Court.)

16   **VI.    CONCLUSION**

17          39.    Based on the foregoing, Defendants request that this action be

18   removed to this Court.  If any question arises as to the propriety of the removal of

19   this action, Defendants respectfully request the opportunity to present a brief and

20   oral argument in support of its position that this case is subject to removal.

21   Dated:  July 5, 2023                    MORGAN, LEWIS & BOCKIUS LLP

22                                          By   */s/ Kathy H. Gao*

23                                          John S. Battenfeld
                                            Kathy H. Gao

24                                          Daniel R. Rodriguez
                                            Attorneys for Defendants

25                                          G2 SECURE STAFF, L.L.C. and
                                            G2 SECURE STAFF CA L.P.

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 46109732.3

14

DEFENDANTS G2 SECURE STAFF, L.L.C.
AND G2 SECURE STAFF CA, L.P.'S
NOTICE OF REMOVAL

# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SAS SERVICES SAN DIEGO, INC, a California Corporation; G2 SECURE STAFF, L.L.C., a Texas Corporation; G2 SECURE STAFF CA, L.P., a Texas Corporation; and DOES 1 to 10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ALLISON VILLANUEVA, as an individual, on behalf of herself and all persons similarly situated

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**05/02/2023** at 09:39:00 AM

Clerk of the Superior Court
By Gabriel Lopez,Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Hall of Justice

330 West Broadway, San Diego, CA 92101

**CASE NUMBER:**
*(Número del Caso):*
37-2023-00016073-CU-OE-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
R. Craig Clark, Alicja A. Urtnowski; Consumer & Employment Law Group, 3258 Fourth Ave. San Diego, CA 92103; (619)-239-1321

DATE: 05/03/2023
*(Fecha)*

Clerk, by ___G. Lopez___, Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.cs.gov*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| R. Craig Clark (SBN 129219) Alicia A. Urtnowski (SBN 321215) Consumer & Employment Law Group; 3258 Fourth Ave San Diego, CA 92103 | |

TELEPHONE NO.: 619-239-1321   FAX NO. *(Optional):*
E-MAIL ADDRESS: aurtnowski@celg.org
ATTORNEY FOR *(Name):* Plaintiffs

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Hall of Justice

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**04/18/2023** at 04:58:28 PM
Clerk of the Superior Court
By Melinda McClure, Deputy Clerk

CASE NAME:
Allison Villanueva v. SAS SERVICES SAN DIEGO, INC, et. al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 37-2023-00016073-CU-OE-CTL |
| | | | JUDGE: | |
| | | | DEPT.: | Judge Carolyn Caietti |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [x] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [x] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* 10
5. This case [x] is [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 18, 2023
Alicia A. Urtnowski - Attorney for Plaintiff
_____
(TYPE OR PRINT NAME)                                          ► *Alicia Urtnowski*
                                                               (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev.September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 *www.courts.ca.gov* |
|---|---|---|

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
     Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
     Physicians & Surgeons
   Other Professional Health Care
     Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
     and fall)
   Intentional Bodily Injury/PD/WD
     (e.g., assault, vandalism)
   Intentional Infliction of
     Emotional Distress
   Negligent Infliction of
     Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil
   harassment)* (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
     *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
     Contract *(not unlawful detainer
     or wrongful eviction)*
   Contract/Warranty Breach–Seller
     Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
     Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
     Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
     domain, landlord/tenant, or
     foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
     Case Matter
   Writ–Other Limited Court Case
     Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
     Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex
   case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
     County)
Confession of Judgment *(non-
   domestic relations)*
Sister State Judgment
Administrative Agency Award
   *(not unpaid taxes)*
Petition/Certification of Entry of
   Judgment on Unpaid Taxes
Other Enforcement of Judgment
   Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
   above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-
     harassment)*
   Mechanics Lien
   Other Commercial Complaint
     Case *(non-tort/non-complex)*
   Other Civil Complaint
     *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified
   above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
     Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
     Claim
   Other Civil Petition

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

| Print this form | Save this form | Clear this form |

1  R. Craig Clark (SBN 129219)
   cclark@celg.org
2  Alicia A. Urtnowski (SBN 321215)
   aurtnowski@celg.org
3  **CONSUMER & EMPLOYMENT LAW GROUP**
   3258 Fourth Avenue
4  San Diego, CA 92103
   Telephone: (619) 239-1321
5  Facsimile: (888) 273-4554
   *Attorneys for Plaintiff*
6

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**04/18/2023** at 04:58:28 PM
Clerk of the Superior Court
By Melinda McClure,Deputy Clerk

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                     **FOR THE COUNTY OF SAN DIEGO**

9

10  ALLISON VILLANUEVA, as an
    individual, on behalf of herself, and all
11  persons similarly situated.

12                     Plaintiff,

13       vs.

14  SAS SERVICES SAN DIEGO, INC, a
    California Corporation., G2 SECURE
15  STAFF, L.L.C., a Texas Corporation. and
    G2 SECURE STAFF CA, L.P., a Texas
16  Corporation, and DOES 1-10,

17

18                     Defendants.

19

20

21

22

23

24

25

26

27

28

Case No.: 37-2023-00016073-CU-OE-CTL

**CLASS ACTION**

**COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF:**

**(1) FAILURE TO TIMELY PAY MINIMUM WAGES, OVERTIME AND/OR DOUBLE TIME COMPENSATION (Labor Code §§ 204, 210, 226.2, 510, 1194, 1197, 1197.1, 1198, and 1199);**

**(2) FAILURE TO PROVIDE LEGALLY COMPLIANT MEAL PERIODS OR COMPENSATION IN LIEU THEREOF (Labor Code §§ 204, 226.7 and 512);**

**(3) FAILURE TO PROVIDE LEGALLY COMPLIANT REST PERIODS OR COMPENSATION IN LIEU THEREOF (Labor Code §§ 204 and 226.7).**

**(4) FAILURE TO PAY ALL WAGES OWED UPON SEPARATION (Labor Code §§ 201, 202, and 203);**

**(5) FAILURE TO PROVIDE PAID SICK LEAVE AND WRITTEN NOTICE OF THE AMOUNT OF SICK LEAVE AVAILABLE (Labor Code § 246)**

**(6) FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS (Labor Code §§ 226 And 226.3);**

**(7) FAILURE TO MAINTAIN ACCURATE RECORDS (Labor Code §§ 226(a) and 1174);**

**(8) FAILURE TO PROVIDE COPIES OF SIGNED DOCUMENTS (Labor Code § 432);**

**(9) FAILURE TO REIMBURSE FOR NECESSARY WORK EXPENSES (Labor Code §§ 2800 and 2802);**

**(10) VIOLATION OF THE UNFAIR COMPETITION LAW (Bus. & Prof. Code §§ 17200 *et seq.*)**

**DEMAND FOR JURY TRIAL**

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

Plaintiff Allison Villanueva ("Plaintiff") brings this civil action on behalf of herself and all those similarly situated, against SAS Services San Diego, Inc., G2 Secure Staff, L.L.C., and G2 Secure Staff CA, L.P. and Does 1 through 10 (collectively "Defendants" or "SAS Services"), on the following grounds:

## **INTRODUCTION**

1.      Plaintiff brings this civil action on behalf of herself and all other current or former hourly non-exempt employees of SAS Services in the State of California during the relevant time period (collectively referred to as "Employees").

2.      Plaintiff, on behalf of herself and other Employees, seeks damages, injunctive relief, and restitution, as well as reasonable attorney's fees and litigation costs, as provided under California law.

3.      All allegations in this Complaint are based upon information and belief, except those allegations specifically pertaining to Plaintiff and her counsel, which are based on personal knowledge. Each allegation has either evidentiary support or is likely to have evidentiary support after a reasonable opportunity to conduct further investigation and discovery.

## **JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this action pursuant to California Code of Civil Procedure ("Code of Civil Procedure") section 410.10. Pursuant to Code of Civil Procedure section 382 and California Business and Professions Code ("Bus. & Prof. Code") section 17203, Plaintiff brings this action on behalf of herself, and on behalf of all persons similarly situated, as defined herein.

5.      This Court has personal jurisdiction over Defendants because each defendant conducts business in the State of California and has caused injuries in and around San Diego County, as well as throughout the state of California, by and through its acts, omissions, and violations of the California Labor Code ("Labor Code") and Bus. & Prof. Code, as alleged herein.

6.      Venue as to Defendants is proper in this judicial district pursuant to Code of Civil Procedure section 395(a). Each individual defendant transacts business and/or maintains an office in San Diego County and is otherwise within this Court's jurisdiction for purposes of service of process. The unlawful acts alleged herein have a direct effect on Plaintiff and those similarly situated within San Diego County and throughout the State of California.

7.      Pursuant to Rule 3.400 of the California Rules of Court, this case shall be deemed a complex action because it is filed as a class action and involves specialized case management, extensive discovery and evidence, difficult and/or novel issues and is likely to require extensive post judgement supervision.

## THE PARTIES

### I.      PLAINTIFF

8.      Plaintiff Allison Villanueva at all material times mentioned herein:

     a.   Was and is a resident of the County of San Diego;

     b.   Has been employed by SAS Services primarily in and/or around San Diego County since approximately June 2019 as a non-exempt hourly employee.

     c.   Was compensated on an hourly basis;

     d.   Was not compensated for all hours worked;

     e.   Regularly worked more than eight (8) hours per day;

     f.   Was subject to SAS Services' policy, practice, guideline, and/or procedure of working off-the-clock so that she did not receive the minimum and/or overtime compensation she was entitled to;

     g.   Was required to engage in work-related activities during the time that SAS Services automatically deducted from her time worked;

     h.   Was not compensated the appropriate overtime rate for hours worked beyond eight (8) hours per day and/or forty hours per week;

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

i.  Was not timely paid minimum wage and/or overtime compensation;

j.  Was not provided with legally compliant meal periods or compensation in lieu thereof;

k.  Was not provided with legally compliant rest periods or compensation in lieu thereof;

l.  Was not provide with an opportunity to document and/or report non-compliant meal and/or rest periods;

m. Was required to remain readily available to perform work for SAS Services during meal and/or rest periods;

n.  Was not provided with paid sick leave and/or written notice of the amount of sick leave available as required by California law;

o.  Was required to wear a uniform at all times while performing work for SAS Services;

p.  Was required to use her personal cell phone while performing work for SAS Services;

q.  Was not reimbursed for necessary work expenses;

r.  Was not provided with accurate and itemized wage statements;

s.  Believes her employee records were not accurately maintained by SAS Services;

t.  Was not provided with copies of all signed documents;

u.  Was subject to SAS Services' unlawful, unfair, and fraudulent business practices.

## II.  DEFENDANTS

9.  Defendant SAS Services San Diego, Inc is a California corporation authorized to do business, and actually doing business, in the State of California. SAS Services San Diego, Inc. is in the business of providing services in the aviation industry. Specifically, it is in the business of airport customer services, including passenger assistance and wheelchair services, bag porter services, skycap services, security services, checkpoint customer service

agents, unaccompanied minor escort services, janitorial services, cabin-cleaning, and utility services. See www.sas-serv.com,

10.   Defendant G2 Secure Staff, LLC is a Texas Corporation that does business in California. Specifically, it is in the business of airport customer services, including passenger assistance and wheelchair services, bag porter services, skycap services, security services, checkpoint customer service agents, unaccompanied minor escort services, janitorial services, cabin-cleaning, and utility services. See www.sas-serv.com and https://www.g2securestaff.com/ It is believed that around November 2022, G2 Secure Staff acquired S.A.S. Services Group, Inc. (S.A.S.) and Flight Services and Systems, LLC (FSS).

11.   Defendant G2 Secure Staff, CA, LP is believed to be a Texas corporation that does business in California. It is also in the business of airport customer service. See https://www.g2securestaff.com/.

12.   The true names and capacities, whether individual, corporate, subsidiary, partnership, associate, or otherwise of Does 1 through 10, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff will amend her complaint to allege the true names and capacities of Does 1 through 10 when they are ascertained.

13.   At all times mentioned herein, the acts alleged to have been done and/or caused by Defendants are also alleged to have been done and/or caused by the unascertained defendants mentioned above, and by each of their agents and employees who acted within the scope of their agency and/or employment.

14.   At all times mentioned herein, each defendant acted as an agent, servant, employee, co-conspirator, alter-ego, and/or joint venture of the other defendants, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture.

15.   At all times mentioned herein, the acts and omissions of each of the defendants concurrently contributed to the various acts and omissions of each and every one of the other defendants in proximately causing the wrongful conduct, harm, and damages

alleged herein. Each of the defendants in proximately causing the wrongful conduct, harm, and damages alleged herein. Each of the defendants approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained herein. Each defendant and all Doe defendants were and are acting with authority of each and every other defendants and are acting as agents of each and every other defendant or Doe defendant.

## FACTUAL ALLEGATIONS

16.     Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this complaint.

17.     Plaintiff alleges, based on information and belief, that all non-exempt employees employed by SAS Services in California are subject to the same and/or similar policies, practices, procedures, guidelines, and/or culture set forth herein.

18.     Plaintiff also alleges that she and other current or former non-exempt employees in California have suffered, and will continue to suffer, the same and/or similar violations of law described herein.

19.     Plaintiff has been employed by SAS Services in an hourly, non-exempt capacity since approximately June 2019. Throughout her employment, Plaintiff was assigned to work primarily at the San Diego, CA airport location.

20.     Plaintiff is informed and believes, and alleges thereon, that SAS Services employs a number of individuals in an hourly, non-exempt capacity in the state of California.

21.     During the relevant time period, SAS Services had, and continues to have, a regular policy, practice, procedure, guideline, and/or culture, of requiring employees to work more than 8 hours per day and/or 40 hours per week.

22.     Plaintiff asserts that as a policy, practice, guideline, procedure and/or culture at SAS Services does not properly compensate Employees for all hours worked.

23.     As a policy, practice, guideline, procedure and/or culture, SAS Services requires Employees to clock in and out of their job using a finger scan device on the wall.

However, the device often does not work and Employees were required to use handwritten time sheets.

24.  Plaintiff asserts that Employees were often required to work off the clock. SAS Services has a policy, practice, guideline, procedure and/or culture of requiring her and other employees to clock out and continue working so that they do not receive the minimum and/or overtime compensation they are entitled to. For example, Employees are often forced to work off the clock because of flight delays and being understaffed. Often, Employees were required to wait for delayed flights and/or assist passengers at the airport, while being off the clock. As such, Plaintiff and other Employees did not receive the minimum, overtime and/or double time compensation they are entitled to. As such, SAS Services regularly shaves and/or shortens non-exempt employees' hours worked and does not compensate its non-exempt employees for all time worked as required by California law.

25.  Non-exempt employees, including Plaintiff, thus regularly engage in work-related activities during the time that SAS Services automatically deducts from their time worked.

26.  Moreover, Plaintiff asserts that SAS Services also failed to provide wage statements that accurately reflect the gross wages and/or net wages earned, among other things.

27.  In addition, Plaintiff asserts that as a policy, procedure, guideline, and/or culture, SAS Services regularly required non-exempt employees to work more than eight (8) hours per day and/or forty hours per week. Despite working at least (8) hours per day and/or forty (40) hours per week, Plaintiff and other non-exempt employees were not paid minimum wages and/or overtime compensation for all hours worked.

28.  Moreover, Plaintiff asserts that SAS Services has a policy, practice, guideline, procedure, and/or culture of automatically deducting a thirty-minute meal period from hours worked by its non-exempt employees regardless of whether they were actually

provided with an opportunity to take a thirty-minute meal period free from all work activities.

29.     Plaintiff, therefore, asserts that SAS Services furnished paychecks to her and other non-exempt employees that do not include compensation for all hours worked and that they are often late.

30.     Plaintiff also asserts that despite notifying SAS Services of the error, SAS Services did not promptly remedy the issues by paying all wages earned and due.

31.     Plaintiff asserts that SAS Services does not have a policy, practice, procedure, guideline, and/or culture of providing non-exempt employees the reasonable opportunity to take meal periods that occurred before the fifth hour of work and/or that were free from all work and work-related responsibilities during the entirety of the 30-minute meal period because of the company requirement that its employees be readily available to perform work duties during the entire duration of their shift, including meal periods, such as assisting passengers and/or customers at the airport, monitoring arrivals and departures, waiting by the gates, and transferring around the airport with a wheelchair, among other duties.

32.     Additionally, Plaintiff asserts that even though non-exempt employees often worked more than 10 hours in a day, SAS Services failed to provide them with a second meal period of at least 30 minutes.

33.     Moreover, Plaintiff alleges that as a policy, practice, guideline, procedure and/or culture SAS Services does not schedule any meal periods for its non-exempt employees.

34.     Plaintiff contends that on a rare occasion when she and other non-exempt employees are provided with a meal period, the meal periods are often late, short, or interrupted because SAS Services Employees are expected to be readily available to engage in job duties for the entire duration of their work shift.

35.     Plaintiff further contends that SAS Services did not have a procedure for non-exempt employees to document non-compliant meal periods. As a result, SAS Services did not compensate non-exempt employees for non-compliant meal periods.

36.     Plaintiff alleges that SAS Services as a policy, practice, guideline, procedure, and/or culture, SAS Services regularly fails to authorize and permit non-exempt employees to take off-duty rest periods for every four hours worked, or a major fraction thereof, in violation of California law.

37.     Plaintiff contends that she and other non-exempt employees were denied legal rest periods largely due to SAS Services' requirement that non-exempt employees were to be readily available at all times to perform work duties.

38.     Additionally, Plaintiff alleges that SAS Services fails to schedule enough employees so that Plaintiff and other non-exempt employees could be relived from their duties to take their meal and rest periods.

39.     Further, Plaintiff asserts that SAS Services does not have a policy, practice, guideline, procedure, and/or culture for non-exempt employees to record non-compliant meal and rest periods and fails to compensate non-exempt employees the required meal and rest period premium for non-compliant breaks in violation of California law.

40.     Plaintiff contends that SAS Services has a policy, practice, guideline, and/or culture of not timely paying all wages owed upon discharge nor paying the required waiting time penalties. For instance, SAS Services failed to compensate non-exempt employees for all hours worked, failed to pay the appropriate overtime wages to Employees for hours worked in excess of eight per day and/or forty per week, and failed to pay the required meal and/or rest period premiums to SAS Services non-exempt employees for non-compliant meal and/or rest periods.

41.     Plaintiff also contends that SAS Services requires Employees to carry a personal cell phone, a radio and/or a tablet for the entire duration of their work shift, including during meal and/or rest periods. Employees were also expected to be readily available to perform work on behalf of SAS Services during meal and/or rest periods, such

as by responding to calls and/or messages from supervisors and/or co-workers, and monitoring flight arrivals, departures and gates. As a result, Employees were not provided with meal and/or rest periods that were free from work or interruption.

42.   Plaintiff, therefore, contends that SAS Services failed to pay all wages owed to former non-exempt employees who separated from SAS Services within the statutory period in violation of California law.

43.   Plaintiff alleges that SAS Services has a policy, practice, guideline, procedure, and/or culture of failing to provide non-exempt employees with one hour of paid sick leave for every 30 hours worked in accordance with California law.

44.   Plaintiff further alleges that SAS Services also failed to provide non-exempt employees with paid sick days since they were unable to accrue any such paid sick days at the rate provided by law as a result of SAS Services' failure to account for all time worked.

45.   Plaintiff also contends that SAS Services has a policy, practice, procedure, guideline, and/or culture of failing to provide written notice to non-exempt employees of their available sick leave, as such amounts are not included on the wage statements, nor are they provided with the information in separate writing on the designated pay date along with their wages, in violation of California law.

46.   Plaintiff asserts, based on information and belief, that SAS Services willfully failed to timely render all wages owed to Plaintiff and other former non-exempt employees who are no longer employed by SAS Services because, as described herein, SAS Services failed to pay Plaintiff and other non-exempt employees for all time worked including, but not limited to, meal and/or rest period premiums, minimum wages and overtime/double time compensation.

47.   Plaintiff contends that SAS Services failed to provide legally compliant wage statements that accurately reflect the gross wages and/or net wages earned due to SAS Services' failure to compensate non-exempt employees for all time worked, failure to pay the appropriate overtime compensation to non-exempt employees for hours worked beyond

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

eight hours per day and/or forty hours per week, and failure to pay premium wages to non-exempt employees for non-compliant meal and/or rest periods.

48.   Plaintiff asserts SAS Services failed to provide wage statements that properly include the pay period information for each wage statement, the accurate rate of pay, the required available sick time, and/or the name of the legal entity that employed SAS Services' non-exempt employees in violation of California law.

49.  Plaintiff asserts that because of SAS Services' policies, practices, procedures, guidelines, and/or culture, as described herein, including but not limited to its failure to compensate non-exempt employees for all time worked, SAS Services also knowingly and intentionally failed to maintain accurate employee and payroll records as required by California law.

50.   Further, SAS Services has a policy, practice, guideline, procedure, and/or culture of failing to maintain accurate employee information and payroll records which accurately reflect the gross and net wages earned as well as the total hours of time worked each day by Plaintiff and other employees.

51.   Plaintiff contends that SAS Services required non-exempt employees to sign various documents as part of their employment however, SAS Services failed to maintain and provide copies of all documents signed upon request of employees.

52.   Plaintiff asserts upon information and belief that SAS Services failed to maintain a copy of all documents signed by non-exempt employees that relate to their hiring and/or employment with SAS Services, and/or failed to provide a copy of such documents to non-exempt employees who requested a copy thereof, therefore failing to comply with California law.

53.   Plaintiff alleges that SAS Services does not have a policy, practice, procedure, guideline, and/or culture of reimbursing non-exempt employees for necessary work expenses. As a result, SAS Services routinely failed to reimburse non-exempt employees for all necessary work expenses, such as the cost of purchasing and/or maintaining the required uniforms, and the cost of personal cell phone usage.

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

54.   On April 4, 2023, Plaintiff submitted notice to the California Labor and Workforce Development Agency ("LWDA"), and Defendants informing them of SAS Service's alleged Labor Code violations pursuant to the Private Attorneys General Act of 2004 ("PAGA"). In the event the LWDA declines to investigate the violations, Plaintiff will seek to amend the operative complaint to include a PAGA cause of action pursuant to Labor Code §§ 2698 *et seq.*

55.   Plaintiff believes that additional violations may be discovered, and therefore reserves her right to allege any additional violations of the law as an investigation and discovery warrants.

56.    In the event Plaintiff discovers additional violations throughout the discovery process, Plaintiff will seek to amend the operative complaint as necessary.

## CLASS DEFINITIONS

57.   The proposed classes defined below consist of current or former non-exempt employees employed by SAS Services in the state of California at any time during the period commencing on the date that is within four years prior to the filing of this Complaint through the present date (hereinafter the "Class Period"). To the extent that equitable tolling operates to toll the claims by the classes against Defendants, the Class Period should be adjusted accordingly.

a.    All current or former non-exempt employees employed by Defendants in the state of California who suffered violations of the Labor Code, Business and Professions Code and/or the relevant California Industrial Welfare Commission's ("IWC") Wage Orders during the Class Period.

b.    All current or former non-exempt employees employed by Defendants in the state of California who were not provided with the opportunity to take legally compliant meal periods or compensation in lieu thereof in violation of California law during the Class Period.

c.    All current or former non-exempt employees employed by Defendants in the state of California who were not authorized and permitted to take

1   legally compliant rest periods or compensation in lieu thereof in

2   violation of California law during the Class Period.

3       d.    All current or former non-exempt employees employed by Defendants

4   in the state of California who were not properly paid for all hours

5   worked in violation of California law during the Class Period.

6       e.    All former non-exempt employees employed by Defendants in the state

7   of California who were not paid all wages due upon separation or

8   termination of the employment relationship in violation of California

9   law during the Class Period.

10       f.    All current or former non-exempt employees employed by Defendants

11   in the state of California who were not provided with paid sick leave in

12   violation of California law during the Class Period.

13       g.    All current or former non-exempt employees employed by Defendants

14   in the state of California who were not provided with accurate and

15   itemized wage statements in violation of California law during the

16   Class Period.

17       h.    All current or former non-exempt employees employed by Defendants

18   in the state of California whose information was not accurately

19   recorded and/or maintained in violation of California law during the

20   Class Period.

21       i.    All current or former non-exempt employees employed by Defendants

22   in the state of California who were not provided with copies of signed

23   documents in violation of California law during the Class Period.

24       j.    All current or former non-exempt employees employed by Defendants

25   in the state of California who were not reimbursed for necessary work

26   expenses in violation of California law during the Class Period.

27       k.    All current or former non-exempt employees employed by Defendants

28   in the state of California who were subject to Defendants' unlawful,

unfair, and/or fraudulent business practices in violation of California law during the Class Period.

58. Members of the class and/or classes are all "employees" as the term is used in the Labor Code and the IWC Wage Orders regulating wages, hours and working conditions in the state of California.

59. A more precise definition of the class and/or classes may be determined after further investigation and discovery. Plaintiff reserves her right to redefine the class and/or classes at any time prior to the court's order on Plaintiffs' Motion for Class Certification as provided by law.

## CLASS ALLEGATIONS

60. Plaintiff brings this action on behalf of herself, and on behalf of all persons within the defined class(es) and/or sub-class(es) included herein.

61. This class action meets the statutory prerequisites for the maintenance of a class action, as set forth in Code of Civil Procedure section 382 and Civil Code section 1781:

   a.  The persons who comprise the class(es) and/or sub-class(es) are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

   b.  Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the class(es) and/or sub-class(es) and will apply uniformly to every member of the class(es) and/or sub-class(es), and as a practical matter, be dispositive of the interests of the other members not party to the adjudication;

   c.  The parties opposing the class(es) and/or sub-class(es) have acted or have refused to act on grounds generally applicable to the class(es) and/or sub-class(es), thereby making final injunctive relief or declaratory relief appropriate with respect to the class(es) and/or sub-

1    class(es) as a whole; and

2    d.    Common questions of law and fact exist as to the members of the

3           class(es) and/or sub-class(es) and predominate over any question

4           affecting only individual members, and a class action is superior to

5           other available methods for the fair and efficient adjudication of the

6           controversy, including consideration of:

7           i.    The interests of class members in individually controlling the

8                 prosecution or defense of separate actions;

9           ii.   The extent and nature of any litigation concerning the

10                controversy already commenced by or against members of the

11                class(es) and/or sub-class(es);

12          iii.  The desirability or undesirability of concentrating the litigation

13                of the claims in this particular forum; and

14          iv.   The likely difficulties in the managing of a class action.

15   62.   The Court should permit this action to be maintained as a class action

16   pursuant to Code of Civil Procedure section 382 and Civil Code section 1781 because:

17   a.    Questions of law and fact common to the class(es) and/or sub-class(es)

18         are substantially similar and predominate over any questions affecting

19         only individual members;

20   b.    A class action is superior to any other available method for the fair and

21         efficient adjudication of class members' claims;

22   c.    The members of the class(es) and/or sub-class(es) are so numerous that

23         it is impractical to bring all class members before the Court;

24   d.    Plaintiff's claims are typical of the claims of the class(es) and/or sub-

25         class(es);

26   e.    Class members will not be able to obtain effective and economic legal

27         redress unless the action is maintained as a class action;

28   f.    There is a community of interest in obtaining appropriate legal and

16

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

1                 equitable relief for the common law and statutory violations and other

2                 improprieties alleged, and in obtaining adequate compensation for the

3                 damages that Defendants' actions have inflicted upon the class(es)

4                 and/or sub-class(es);

5      g.     Plaintiff can fairly and adequately protect the interests of the class(es)

6                 and/or sub-class(es);

7      h.    There is a community of interest in ensuring that the combined assets

8                 and available insurance of Defendants is sufficient to adequately

9                 compensate the class members for the injuries sustained; and

10     i.     Defendants have acted or refused to act on grounds generally

11               applicable to the class(es) and/or sub-class(es), thereby making final

12               injunctive relief appropriate with respect to the class(es) and/or sub-

13               class(es) as a whole.

### FIRST CAUSE OF ACTION

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO TIMELY PAY MINIMUM WAGES, OVERTIME AND/OR DOUBLE TIME COMPENSATION**

**[Labor Code §§ 204, 226.2, 210, 510, 1194, 1197, 1197.1, 1198, 1199 and IWC Wage Order No. 4-2001, Subdivs. 3 and 4]**

63.    Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

64.    Labor Code § 204 establishes an employee's fundamental right in the state of California to be paid wages in a timely manner for their work.

65.    Labor Code § 1197 requires employers to pay its employees the minimum wage as fixed by the commission and further states that payment of wages lower than the fixed minimum for all time worked is unlawful.

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

66.     Labor Code § 1197.1 makes it unlawful for any employer or any other person acting either individually or as an officer, agent, or employee of another person, to pay an employee, or cause an employee to be paid less than the applicable minimum wage.

67.     Under Labor Code § 510 it is unlawful for an employer to employ persons for more than eight (8) hours per day and/or forty (40) hours per week without compensating them at the rate of one and one- half or two times the employee's regular pay rate, depending on the number of hours worked. (See also IWC Wage Order No. 4-2001, Subdiv. 3(A).)

68.     An employee may not waive his or her right to overtime compensation and any agreement by the employee to accept less than the statutorily required rate is unenforceable as a matter of law. (*Early v. Superior Court* (2000) 79 Cal.App.4th 1420, 1430.)

69.     Section 1194(a) of the Labor Code states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

70. Plaintiff contends that SAS Services failed to pay her and other non-exempt employees the required minimum wages, overtime and double-time wages for all time worked by non-exempt employees.

71. During the relevant time period, SAS Services had, and continues to have, a regular policy, practice, procedure, guideline, and/or culture of requiring non-exempt employees to work at least eight (8) hours per day.

72. As a policy, practice, guideline, procedure, and/or culture, SAS Services requires non-exempt employees to clock-in and clock-out of their job using a fingerprint scan device. However, the device often lacks functionality and Employees are thus required to use handwritten timesheets.

73.     Plaintiff alleges that SAS Services Employees, including Plaintiff, were often required to work off the clock. For example, Plaintiff asserts that SAS Services often required her and other Employees to clock out and continue working, depriving them proper wages for all hours worked, including overtime. For example, Employees are often forced to work off the clock because of flight delays and being understaffed. Often, Employees were required to wait for delayed flights and/or assist passengers at the airport, while being off the clock. As such, Plaintiff and other Employees did not receive the minimum, overtime, and/or double-time compensation they are entitled to.

74.     Moreover, Plaintiff asserts that SAS Services has a policy, practice, guideline, procedure, and/or culture of automatically deducting a thirty-minute meal period from the hours worked by its Employees regardless of whether they were actually provided with an opportunity to take a thirty-minute meal period free from all work activities. SAS Services thus regularly engage in work-related activities during the time that SAS Services automatically deducts from their time worked.

75.     Plaintiff asserts that SAS Services has a policy, practice, guideline, procedure and/or culture of editing non-exempt employees' clock-in and clock-out records so that they do not receive the minimum, overtime and/or double time compensation they are entitled to.

76.     As such, SAS Services regularly shaves and/or shortens non-exempt hourly employee's hours worked and does not compensate its non-exempt employees for all time worked as required by California law.

77.     Non-exempt employees, including Plaintiff, thus regularly engage in work-related activities during the time that SAS Services automatically deducts from their time worked.

78.     Plaintiff contends that she and other non-exempt employees were regularly required to work more than eight (8) hours per day and/or forty (40) hours per week. Consequently, Plaintiff contends that she and other non-exempt employees are entitled to receive overtime compensation at the rate of one and one-half times their respective regular pay rates for all hours worked beyond eight (8) hours a day and/or forty (40) hours per week.

In addition, Plaintiff contends that she and other non-exempt employees are entitled to receive double time compensation for all hours worked beyond twelve (12) hours a day. However, Plaintiff alleges that as a policy, practice, procedure, guideline, and/or culture, SAS Services did not provide overtime compensation to non-exempt employees who worked more than eight (8) hours per day and/or forty (40) hours per week, nor the double time compensation for working over twelve (12) hours per day.

79.     Plaintiff alleges that SAS Services furnished paychecks to her and other non-exempt employees that did not include compensation for all hours worked. Plaintiff further contends that SAS Services did not remedy such by promptly paying all unpaid wages owed to her and other non-exempt employees, even after being notified of such. Accordingly, SAS Services failed to timely pay non-exempt employees for their work in violation of California law.

80.     By virtue of SAS Services' unlawful conduct explained herein, Plaintiff and other non-exempt employees have, and will continue, to suffer damages in amounts which are presently unknown, but which exceed the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

81.     Having received less than the legal minimum wage and applicable overtime/double time compensation, Plaintiff and other non-exempt employees are entitled to, and seek to recover, all wages and penalties owed, including penalties available under Labor Code §§ 210 and 558, as well as interest and reasonable attorneys' fees and costs pursuant to Labor Code §§ 218.5 and 1194 and Code of Civil Procedure § 1021.5.

82.     Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

**SECOND CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO PROVIDE LEGALLY COMPLIANT MEAL PERIODS**

**OR COMPENSATION IN LIEU THEREOF**

20

**[Labor Code §§ 204, 226.7, 512 and IWC Wage Order No. 4-2001, Subdiv. 11]**

83.    Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

84.    Section 512(a) of the Labor Code provides:
An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived. (Emphasis added.)

85. Pursuant to Labor Code § 226.7(c):
If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

86. In pertinent part, IWC Order No. 4-2001, Subdiv. 11, states:
(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

[…]

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

87.    A meal period generally complies with California law if the employee has at least 30 minutes uninterrupted during which time the employee is relieved of any and all duty

21
COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

and is free to leave the premises. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1036.) California law further prohibits employers from "...undermining [its] formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." (*Id.* at 1040.)

88.     At all relevant times, Plaintiff and other non-exempt employees regularly worked at least five (5) hours per day. However, despite working at least five (5) hours per day, Plaintiff contends that she and other non-exempt employees were not provided with the opportunity to take a thirty-minute meal period that was free from all duty and the employer's control, in part, because SAS Services required non-exempt employees to remain at their workstations for the entire duration of their work shift so that they are readily available to engage in their job duties.

89.     Plaintiff asserts that Plaintiff and other non-exempt employees were not provided with the reasonable opportunity to take meal breaks before the 5th hour of work and/or meal breaks that were free from all work-related responsibilities during the entire 30-minute meal break.

90.     Additionally, even though non-exempt employees often worked more than 10 hours in a day, SAS Services failed to provide them with a second meal period of at least thirty minutes.

91.     Plaintiff alleges that the demanding work schedule assigned to non-exempt employees did not allow time for legally compliant meal periods. In addition, SAS Services failed to provide any relief for non-exempt employees to be able to take legally compliant breaks.

92.     Plaintiff asserts that her supervisor often instructed her and other Employees not to take breaks and/or work through meal breaks, and often yelled at Employees for taking breaks.

93.     Plaintiff further alleges that as a policy, practice, guideline, procedure and/or culture SAS Services does not schedule any meal periods for its non-exempt employees.

94.     Plaintiff asserts that on a rare occasion when she and other non-exempt employees are provided with a meal period, the meal periods are often late, short, or interrupted due to SAS Services requirement that its non-exempt employees be always readily available to perform their work duties at all times.

95.     Plaintiff contends that SAS Services has a policy, practice, procedure, guideline, and/or culture of requiring non-exempt employees to be readily available to perform work during meal periods, such as assisting passengers and/or customers at the airport, monitoring arrivals and departures, responding to calls/messages, waiting by the gates, and transferring around the airport with a wheelchair, among other duties. As a result, non-exempt employees are not relieved of all duty or the control of SAS Services in violation of California law.

96.     Plaintiff contends that SAS Services has a policy, practice, guideline, procedure, and/or culture of automatically deducting 30 minutes for a meal period regardless of whether Employees were provided with the opportunity to take a legally compliant meal period. As such, SAS Services often adjusted its' Employees timesheets to reflect meal breaks, even though a compliant meal break was not taken.

97.     Plaintiff also contends that SAS Services requires non-exempt employees to carry personal cell phone, a radio, and/or a tablet for the entire duration of their work shift, including during meal and/or rest periods. Non-exempt employees were also expected to be readily available to perform work on behalf of SAS Services during meal and/or rest periods, such as by responding to calls and/or messages from supervisors and/or co-workers, and monitoring flight arrivals, departures, and gates. As a result, non-exempt employees were not provided with meal and/or rest periods that were free from work or interruption.

98.     Plaintiff asserts non-exempt employees were not provided with the opportunity to take meal periods that were free from work-related responsibilities. By imposing unbearable work schedules onto its non-exempt employees, SAS Services compelled, encouraged and/or otherwise directed its non-exempt employees to work through their meal periods.

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

99.     Plaintiff asserts that SAS Services does not have a policy, practice, procedure, guideline, and/or culture for non-exempt employees to document and/or report non-compliant meal periods.

100.     Plaintiff also contends that SAS Services failed to pay premium wages to non-exempt employees, including Plaintiff, for meal periods that did not comply with California law.

101.     Plaintiff believes that SAS Services knows or should know that its non-exempt employees were not provided with the opportunity to take legally compliant meal periods and/or paid the legally required premium wage in lieu thereof.

102.     As a result of SAS Services' unlawful conduct alleged herein, Plaintiff and other non-exempt employees have suffered, and will continue to suffer, damages in an amount which is presently unknown, but which exceeds the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

103.     Pursuant to Labor Code § 226.7(c) and the relevant IWC Order No. 4-2001, Subdiv. 11(D), Plaintiff and other non-exempt employees are entitled to, and seek, recovery of the full amount of unpaid premium wages for non-compliant meal periods.

104.     Pursuant to Labor Code § 218.6, Plaintiff and other non-exempt employees are entitled, and seek, to recover prejudgment interest on the amount of premium wages owed.

105.     Plaintiff and other non-exempt employees are entitled to, and seek, recovery of reasonable attorneys' fees as permitted by Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

106.     Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

**THIRD CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

**FAILURE TO PROVIDE LEGALLY COMPLIANT REST PERIODS OR**

**COMPENSATION IN LIEU THEREOF**

**[Labor Code §§ 204, 226.7 and IWC Wage Order No. 4-2001, Subdiv. 12]**

107. Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

108. In pertinent part, Labor Code § 226.7 provides:

> (b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and health.

> (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for workday that the meal or rest or recovery period is not provided.

109. IWC Order No. 4-2001, Subdiv. 12 states:

> (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes of net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

> (B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided. (Emphasis added.)

110. During rest periods, California law requires employers to relinquish all control over their employees and relieve their employees of all duties. (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 273.)

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

111.    As discussed herein, SAS Services regularly required Plaintiff and other non-exempt employees to work at least four (4) hours per day.

112.    Plaintiff contends that as a policy, practice, procedure, guideline, and/or culture SAS Services regularly failed to authorize and/or permit non-exempt employees to take off-duty rest periods for every four (4) hours worked, or major fraction thereof, in violation of California law.

113.    Plaintiff asserts that non-exempt employees, including Plaintiff, were required by SAS Services to remain readily available to engage in work during rest periods because, among other things, the unbearable work schedule assigned to non-exempt employees did not allow time for employees to take legally compliant rest periods, as discussed herein. In addition, non-exempt employees were required to carry personal cell phones, a tablet, and/or radio and respond to telephone calls and/or messages during rest periods. Therefore, SAS Services failed to relinquish all control over non-exempt employees and/or relieve non-exempt employees of all duty during rest periods as required by California law.

114.    Plaintiff asserts that SAS Services did not, and does not, have a policy, practice, procedure, guideline, and/or culture for non-exempt employees to document and/or report non-compliant rest periods.

115.    Plaintiff further asserts that SAS Services failed to pay her and other non-exempt employees the premium wage required by California law for non-compliant rest periods.

116.    Plaintiff believes that SAS Services knows, or should know, that it failed to authorize and permit non-exempt employees to take legally compliant rest periods and/or failed to provide them with the legally required premium compensation in lieu thereof since, among other things, SAS Services required non-exempt employees to remain readily available to engage in work during rest periods.

117.    Due to SAS Services' unlawful conduct, as described herein, Plaintiff and other non-exempt employees have, and will continue, to suffer damages in an

amount which is presently unknown, but which exceeds the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

118.   According to Labor Code § 226.7(c) and IWC Order No. 4-2001, Subdiv. 12(B), Plaintiff and other non-exempt employees are entitled to, and seek to, recover the full amount of unpaid premium wages for non-compliant rest periods.

119.   Pursuant to Labor Code § 218.6, Plaintiff and other non-exempt employees are entitled to seek recovery of prejudgment interest on the amount of premium wages owed.

120.   Plaintiff and other non-exempt employees are entitled to, and seek to, recover reasonable attorneys' fees and costs pursuant to Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

121.   Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

## FOURTH CAUSE OF ACTION

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO PAY ALL WAGES OWED UPON SEPARATION**

**[Labor Code §§ 201-203]**

122.   Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

123.   Labor Code § 200(a) defines "wages" to include "all amounts for labor performed by employees...whether the amount is fixed or ascertained by the standard of time...commission basis, or other method of calculation." The term "labor" is further defined in subsection (b) to include "labor, work, or service whether rendered or performed under contract, subcontract, partnership...or other agreement if the labor...is performed personally by the person demanding payment."

124.   Pursuant to Labor Code § 201(a), when an employer discharges an employee, all earned wages that remain unpaid at the time of discharge are due and payable to the employee immediately.

125. According to Labor Code § 202(a):

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of mailing shall constitute the date of payment for purposes of the requirement to provide payment with 72 hours of the notice of quitting.

126.   In pertinent part, Labor Code § 203(a) further provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action thereof is commenced; but the wages shall not continue for more than 30 days.

127.   As described herein, SAS Services knowingly failed to compensate its non-exempt employees for all time worked, failed to pay minimum wages, overtime, and double time compensation to non-exempt employees, and failed to pay legally required premium wages to non-exempt employees for non-compliant meal and/or rest periods. Although SAS Services no longer employs a number of non-exempt employees, Plaintiff alleges, based on information and belief, that SAS Services has not yet paid all wages owed to its former non-exempt employees as a result of such conduct.

128.   In addition, Plaintiff contends that SAS Services has a policy, practice, guideline and/or culture of not paying the required waiting time penalties.

129.   As a consequence of SAS Services' willful and deliberate refusal to furnish such wages, the affected employees are entitled to a maximum of thirty (30) days' wages at their daily rate of pay as a waiting time penalty pursuant to Labor Code § 203.

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

130.   Plaintiff and other non-exempt employees are entitled to, and seek to, recover reasonable attorneys' fees and costs pursuant to Labor Code § 218.5 and Code of Civil Procedure § 1012.5.

131.   Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

**FIFTH CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO PROVIDE PAID SICK LEAVE AND WRITTEN NOTICE OF THE AMOUNT OF SICK LEAVE AVAILABLE**

**[Labor Code § 246]**

132.   Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

133.   Under Labor Code § 246(b)(1) an employee shall accrue a minimum of one (1) hour of paid sick time for every thirty (30) hours worked.

134.   Labor Code § 246(b)(4) requires that an employer provide at least twenty-four (24) hours or three (3) days of paid sick time per year for full-time employees.

135.   Labor Code § 246(i) further requires an employer to provide an employee with written notice which sets forth the amount of paid sick leave available, or paid time off leave an employer provides in lieu of sick leave, on either the employee's itemized wage statement or in a separate writing provided on the designated pay date with the employee's payment of wages.

136.   Plaintiff asserts that SAS Services had, and continues to have, a policy, practice, procedure, guideline, and/or culture of failing to provide her and other non-exempt employees with the required minimum of one (1) hour of paid sick leave for every thirty (30) hours worked. Additionally, because SAS Services did not account for all time worked, as described herein, by Plaintiff and other non-exempt employees, Plaintiff and other non-exempt employees were unable to accrue paid sick time at the rate provided by the Labor Code.

137.   Plaintiff also alleges SAS Services failed to provide her and other non-exempt employees with written notice of their available sick time, on either the itemized wage statement provided to them or in a separate writing provided on the designated pay date, in violation of California law.

138.   Plaintiff and other non-exempt employees are entitled to, and seek, penalties under Labor Code § 246 and the recovery of reasonable attorneys' fees and costs pursuant to Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

139.   Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

**SIXTH CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS**

**[Labor Code §§ 226 and 226.3]**

140.   Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

141.   Labor Code § 226 states in pertinent part:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee… (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid… (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number…(8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during each period and the corresponding number of hours worked at each hourly rate by the employee…"

142.   Labor Code § 226(e)(1) further provides:

> An employee suffering injury as a result of knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of

30

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

four thousand ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

143.    According to Labor Code § 226(h), "an employee may also bring an action for injunctive relief to ensure compliance with this section and is entitled to an award of costs and reasonable attorneys' fees."

144.    An injury occurs where the employer fails to provide accurate information and the employee cannot "promptly and easily determine" the total number of hours worked or the "applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." (Labor Code § 226(a)(9)-(e)(2)(B)(i).)

145.    Labor Code § 226(e)(2)(c) explains that the phrase "promptly and easily determine" means that "a reasonable person would be able to readily ascertain the information without reference to documents or information."

146.    Plaintiff asserts that SAS Services had, and continues to have, a policy, practice, procedure, guideline and/or culture of regularly failing to provide accurate and itemized wage statements to her and other non-exempt employees.

147.    As such, SAS Services failed to comply with Labor Code § 226 because they failed to provide Plaintiff and other current or former non-exempt employees with any legally compliant wage statements. Plaintiff contends that SAS Services failed to provide wage statements that accurately reflect the gross wages and/or net wages earned due to SAS Services' failure to compensate non-exempt employees for all time worked, failure to pay the appropriate overtime and double time compensation to non-exempt employees for hours worked beyond eight hours per day and/or forty hours per week, and failure to pay premium wages to non-exempt employees for non-compliant meal and/or rest periods.

148.    SAS Services also failed to provide wage statements that properly include deductions, pay period information, the name of the individual and either their last four (4) digits of their social security number or employee identification number, and the name and address of the legal entity that is the employer. Moreover, SAS Services did not properly

include the individual's available sick time on each wage statement provided to non-exempt employees.

149.   As a result, Plaintiff and other non-exempt employees were unable to readily ascertain, from their wage statements, whether they were properly compensated for all time worked. Plaintiff and other non-exempt employees have therefore suffered injury under California law due to SAS Services' knowing and intentional failure to furnish accurate itemized wage statements.

150.   According to Labor Code § 226(e)(1), Plaintiff and other non-exempt employees are entitled to, and seek to recover, liquidated damages in the amount of $50.00 for the initial violation and $100.00 for each subsequent violation per employee, not to exceed $4,000.00.

151.   Additionally, pursuant to Labor Code § 226(h), Plaintiff and other non-exempt employees are entitled to, and therefore seek, injunctive relief in order to ensure SAS Services' compliance with Labor Code § 226.

152.   Plaintiff and other non-exempt employees are also entitled to, and seek recovery of, attorneys' fees and costs as provided under Labor Code §§ 218.5, 226(e)(1) and 226(h) and Code of Civil Procedure § 1021.5.

153.   Plaintiff, on behalf of herself and other current or former non-exempt employees requests further relief as described in the below prayer.

**SEVENTH CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO MAINTAIN ACCURATE RECORDS**

**[Labor Code §§ 226(a), 1174 and IWC Wage Order No. 4-2001, Subdiv. 7]**

154.   Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

155.   Pursuant to Labor Code § 226(a), an employer must keep a copy of each wage statement and record of deductions on file for at least three (3) years.

156.   Section 1174(d) of the Labor Code provides:

"[e]very person employing labor in this state shall keep at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by commission, but in case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned." (See also IWC Wage Order 4-2001, Subdiv. 7.)

157. As discussed herein, Plaintiff asserts that SAS Services did not have, and does not have, a policy, practice, procedure, guideline, and/or culture of accurately documenting and/or recording non-exempt employee's time in and time out each workday. Plaintiff also contends that she and other non-exempt employees received paychecks from SAS Services that did not accurately reflect all gross and/or net wages earned, and/or the total hours of time worked each day. Consequently, Plaintiff contends that SAS Services had, and continues to have, a policy, practice, procedure, guideline, and/or culture of intentionally and willfully failing to maintain non-exempt employee's payroll records.

158. Plaintiff further alleges that SAS Services failed to maintain copies of all documents related to the employment of non-exempt employees, and/or failed to provide non-exempt employees with the opportunity to inspect or copy such documents upon request in violation of California law.

159. Plaintiff and other non-exempt employees have suffered, and continue to suffer, injuries and damages as a consequence of SAS Services' deliberate failure to maintain accurate records in violation of California law. More specifically, as a result of SAS Services' conduct, Plaintiff and other non-exempt employees were denied their legal right and protected interest in having accurate and complete payroll records available to them.

160. Plaintiff and other non-exempt employees are thus entitled to, and do seek, recovery of damages as outlined in Labor Code § 226 (e)(1).

161.     As provided for in Labor Code §§ 218.5 and 226(e)(1) and Code of Civil Procedure § 1021.5, Plaintiff and other non-exempt employees are entitled and seek to recover reasonable attorneys' fees and costs.

162.     Plaintiff, on behalf of herself and other members of the putative Class, requests further relief as described in the below prayer.

**EIGHTH CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO PROVIDE COPIES OF SIGNED DOCUMENTS**

**[Labor Code § 432 and IWC Wage Order No. 4-2001, Subdiv. 7**

163.   Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

164.     Labor Code § 432 requires an employer to provide its employee, upon request, with copies of any and all documents signed by the employee relating to the obtaining or holding of employment. (See also IWC Wage Order NO. 4-2001, Subdiv. 7.)

165.     Plaintiff alleges that, although she and other non-exempt employees signed documents that relate to their employment with SAS Services, they failed to maintain and/or provide Plaintiff and other non-exempt employees with copies of all such documents.

166.     Plaintiff and other non-exempt employees are entitled to, and seek recovery of, reasonable attorneys' fees and costs as provided for under Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

167.     Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

**NINTH CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO REIMBURSE FOR NECESSARY WORK EXPENSES**

**[Labor Code §§ 2800, 2802 and IWC Wage Orders No. 4-2001, Subdiv. 9]**

34

168.   Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

169.   Labor Code § 2800 requires employers in all cases to indemnify employee losses caused by the employer's want of ordinary care.

170.   In pertinent part, Labor Code § 2802 provides:

(a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…

[...]

(c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

171.   According to IWC Order No. 4-2001, Subdiv. 9(A), when an employer requires uniforms to be worn by its employees, the employer is required to provide and maintain such uniforms. The term "uniform" includes apparel of distinct color or design.

172.   As a policy, practice, procedure, guideline, and/or culture, SAS Services requires non-exempt employees to wear a distinctive shirt affixed with the SAS Services logo as a condition of their employment. However, SAS Services has only provided a shirt, and have not provided any jacket despite the cold weather and promises to provide a jacket. In addition, SAS Services requires its non-exempt employees to wear black shoes and black pants while working on behalf of SAS Services. As a practice or procedure, SAS Services neither provides non-exempt employees with the black shoes and black pants, nor reimburses non-exempt employees for the cost of purchasing and/or maintaining the required uniform in violation of California law.

173.   In addition, non-exempt employees are required to use their personal cell phones for work related issues, such as communicating with supervisors and/or co-workers and tracking flight details, such as arrivals, departures, and gate changes. However, SAS Services fails to reimburse non-exempt employees for a percentage of cell phone bill.

174.    Plaintiff and other current or former non-exempt employees are entitled to, and seek, reimbursement of their necessary expenditures, plus interest, including reasonable attorneys' fees and costs pursuant to Labor Code §§ 2800 and 2802.

175.    Plaintiff and other non-exempt employees are entitled to, and seek recovery of, reasonable attorneys' fees and costs as provided for under Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

176.    Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

## TENTH CAUSE OF ACTION

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

### VIOLATION OF THE UNFAIR COMPETITION LAW

**[Bus. & Prof. Code §§ 17200 *et seq.*]**

177.    Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

178.    As codified in Bus & Prof. Code §§ 17200 *et seq.*, California's Unfair Competition Law ("UCL") broadly prohibits "any unlawful, unfair or fraudulent business act or practice."

179.    A cause of action may be brought under the UCL if a business practice violates some other law. The "unlawful" prong of the UCL effectively deems a violation of the underlying law a per se violation of Bus. & Prof. Code § 17200. (*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180.) Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for a § 17200 "unlawful" violation. (*Farmers Ins. Exch. v. Superior Court* (1992) 2 Cal.4th 377, 383.)

180.    The "unfair" prong of the UCL does not, however, require a practice to be specifically proscribed by any law. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 20 Cal.4th 1134, 1143 (internal citations omitted.).) Pursuant to the California Supreme Court, the "unfair standard" is intentionally broad to give maximum discretion to courts in prohibiting new schemes to defraud. (*Cel-Tech Commc'ns, Inc.*, *supra*, 20 Cal.4th at 180-81.)

181.   Under the UCL, a "fraudulent" business act or practice is one where "members of the public are likely to be deceived." (*Blakemore v. Superior Court* (2005) 129 Cal. App. 4th 36, 49.) A showing of actual deception, reasonable reliance, or damages is not required. (*Ibid.*) The fraudulent prong may be used to attack the deceptive manner in which otherwise lawful contract terms are presented to an individual. (*Boschma v. Home Loan Ctr., Inc.* (2011) 198 Cal.App.4th 230, 253.) As such, even a true statement may be unlawful under section 17200 if it is "couched in such a manner that is likely to mislead or deceive..., such as by failing to disclose other relevant information." (*Ibid.*)

182.   As discussed herein, SAS Services' business practices violate all three prongs of California's UCL.

### Unlawful

183.   As described herein, SAS Services violated the Labor Code by failing to properly compensate its non-exempt employees minimum wages and/or overtime/double time compensation for all time worked. Since SAS Services' failure to compensate employees for all time worked clearly violates California law, SAS Services' conduct is a per se violation of the UCL. *Cel-Tech Commc'ns, Inc.*, 20 Cal.4th at 180. SAS Services also failed to pay premium wages to its non-exempt employees for non-compliant meal and rest periods as required by California law. Plaintiff is also informed and believes that SAS Services failed to pay all wages owed to non-exempt employees upon termination of the employment relationship with SAS Services in violation of California law. SAS Services further failed to furnish itemized and accurate wage statements that accurately reflected the total hours actually worked and gross and/or net wages earned by non-exempt employees, among other things. Therefore, SAS Services has clearly engaged in unlawful business practices pursuant to Bus. & Prof. Code §§ 17200 *et seq.*

### Unfair

184. SAS Services' policy, practice, procedure, guideline, and/or culture of failing to compensate non-exempt employee's minimum wages and overtime/double time compensation for all hours worked is unfair because Defendant prevented non-exempt

1   employees from receiving timely and adequate compensation for all time worked in

2   violation of California's policy of prompt payment of wages.

3       185.  SAS Services' failure to provide non-exempt employees with legally

4   compliant meal and/or rest periods and/or compensation in lieu thereof is unfair because it

5   knowingly strips non-exempt employees of the rights and compensation afforded to them

6   by the Labor Code.

7   Fraudulent

8       186. SAS Services' policy, practice, procedure, guideline, and/or culture of failing to

9   provide Plaintiff and other non-exempt employees with accurate wage statements constitutes a

10  fraudulent business practice under the UCL because Plaintiff and other non-exempt

11  employees are likely to be, and actually are, deceived as to whether they were paid for all time

12  worked.

13      187. SAS Services' policy, practice, procedure, guideline, and/or culture of failing

14  to maintain accurate records also constitutes a fraudulent business practice as the

15  inaccuracies intentionally mislead non-exempt employees as to their total hours worked

16  and gross and/or net wages earned.

17      188. As a direct and proximate result of SAS Services' unlawful, unfair, and

18  fraudulent business practices, Plaintiff and other current or former non-exempt employees

19  have suffered injury-in-fact and have lost wages rightfully owed to them.

20      189.  Through their unlawful, unfair, and fraudulent conduct, SAS Services has

21  been unjustly enriched by receiving and continuing to receive benefits and profits at the

22  expense of non-exempt employees. Pursuant to Bus. & Prof. Code §§ 17200 *et seq*., SAS

23  Services should, thus, be enjoined from this activity and made to disgorge all ill-gotten

24  gains and restore Plaintiff and other non-exempt employees the wages wrongfully withheld

25  from them.

26      190.  Moreover, the unlawful, unfair, and fraudulent conduct alleged herein has

27  continued, and there is no indication that SAS Services will refrain from such activity in the

28  future especially as SAS Services knowingly deprived non-exempt employees of minimum

wages and overtime/double time compensation. Plaintiff believes and alleges that if SAS Services is not enjoined from the conduct described herein, they will continue to violate California law at the expense of non-exempt employees. Accordingly, Plaintiff requests that the court issue a preliminary and permanent injunction against SAS Services.

191. Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

## ANTICIPATED LEGAL CLAIM

192. On April 4, 2023, Plaintiff submitted notice to the LWDA, and Defendants informing them of SAS Services' alleged Labor Code violations pursuant to PAGA. Pursuant to Labor Code § 2699.3, the LWDA has sixty-five (65) days from the date of submission to notify the parties whether it intends to investigate all other violations alleged herein.

193. In the event LWDA does not intend to investigate the applicable violations as explained above, Plaintiff will amend his complaint to include a cause of action pursuant to PAGA.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against SAS Services and in favor of the class(es) and/or sub-class(es) as follows:

1. For an order determining that this action may be maintained as a class action with the named Plaintiff as the class representative;
2. For the attorneys appearing on the above caption to be named class counsel;
3. For all wages and benefits due to Plaintiff and other non-exempt employees currently and formerly employed by SAS Services pursuant to California law;
4. For all minimum wages and overtime compensation owed pursuant to Labor Code §§ 510, 1194, 1197.1, and/or other applicable law;

5. For premium wages pursuant to Labor Code § 226.7 and/or other applicable law;

6. For damages pursuant to Labor Code §§ 226, 226.8(c), 246, Civil Code § 3281, and/or other applicable law;

7. For unreimbursed business expenses pursuant to Labor Code §§ 2800, 2802, and/or other applicable law;

8. For all liquidated damages, pursuant to Labor Code §§ 226(e), 1194.4(a), 1197.1, and/or other applicable law;

9. For injunctive relief, pursuant to Labor Code § 266(h) and Bus. & Prof. Code § 17203, and/or other applicable law;

10. For restitution SAS Services' unfair, unlawful, and fraudulent business practices;

11. For reasonable attorneys' fees and costs of suit pursuant to Labor Code §§ 218.5, 266(h), 266(e)(1), 1194, 2802, Code of Civil Procedure § 1021.5, the "common fund" theory, the "substantial benefit" theory and/or other applicable law, theory or doctrine;

12. For pre-judgment and post-judgment interest as provided by California law;

13. For appropriate equitable relief pursuant to California law; and

14. For any and all other relief the Court may deem just and proper.

Dated: April 18 , 2023 **CONSUMER & EMPLOYMENT LAW GROUP**

By: _Alicja Urtnowski_

R. Craig Clark
Alicja A. Urtnowski
*Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues triable to a jury.

Dated: April 18 , 2023           **CONSUMER & EMPLOYMENT LAW GROUP**

By: _____
                    R. Craig Clark
                    Alicja A. Urtnowski
                    *Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7070 |

| PLAINTIFF(S) / PETITIONER(S):   Allison Villanueva |
|---|
| DEFENDANT(S) / RESPONDENT(S):   SAS Services Group SAS SERVICES SAN DIEGO INC et.al. |

| VILLANUEVA VS SAS SERVICES SAN DIEGO INC [E-FILE] | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)** | CASE NUMBER:<br>37-2023-00016073-CU-OE-CTL |

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Carolyn Caietti                                              Department: C-70

## COMPLAINT/PETITION FILED: 04/18/2023

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 11/17/2023 | 10:15 am | C-70 | Carolyn Caietti |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

<u>TIME FOR SERVICE AND RESPONSE:</u> The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

<u>JURY FEES:</u> In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

<u>COURT REPORTERS:</u> Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for information.

<u>ALTERNATIVE DISPUTE RESOLUTION (ADR):</u> The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

# NOTICE OF E-FILING REQUIREMENTS
# AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2023-00016073-CU-OE-CTL          CASE TITLE: Villanueva vs SAS Services San Diego Inc [E-FILE]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
        (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
        (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), _and_
        (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>Local ADR Programs for Civil Cases</u>

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u>  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules <u>Division II, Chapter III</u> and Code Civ. Proc. <u>§ 1141.10 et seq</u> or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>Legal Representation and Advice</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO**

FOR COURT USE ONLY

STREET ADDRESS:      330 West Broadway

MAILING ADDRESS:      330 West Broadway

CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827

BRANCH NAME:          Central

PLAINTIFF(S):   Allison Villanueva

DEFENDANT(S):  SAS Services Group SAS SERVICES SAN DIEGO INC et.al.

SHORT TITLE:    VILLANUEVA VS SAS SERVICES SAN DIEGO INC [E-FILE]

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br>37-2023-00016073-CU-OE-CTL |
|---|---|

Judge: Carolyn Caietti                                      Department: C-70

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                    ☐ Non-binding private arbitration

☐ Mediation (private)                            ☐ Binding private arbitration

☐ Voluntary settlement conference (private)      ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                   ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (*specify e.g., private mini-trial, private judge, etc.*): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                    Date: _____

_____                          _____
Name of Plaintiff                                Name of Defendant

_____                          _____
Signature                                        Signature

_____                          _____
Name of Plaintiff's Attorney                     Name of Defendant's Attorney

_____                          _____
Signature                                        Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  04/19/2023                               _____
                                                 JUDGE OF THE SUPERIOR COURT

# EXHIBIT B

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO. 321215 | FOR COURT USE ONLY |
|---|---|---|

NAME: Alicja A. Urtnowski
FIRM NAME: Consumer & Employment Law Group
STREET ADDRESS: 3258 Fourth Ave.
CITY: San Diego    STATE: CA    ZIP CODE: 92103
TELEPHONE NO.: 619-239-1321    FAX NO.:
E-MAIL ADDRESS: aurtnowski@celg.org
ATTORNEY FOR (Name): Allison Villanueva

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**06/07/2023** at 10:18:00 AM

Clerk of the Superior Court
By E- Filing,Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 W Broadway
MAILING ADDRESS: 330 W Broadway
CITY AND ZIP CODE:    San Diego 92101
BRANCH NAME: Hall of Justice

Plaintiff/Petitioner:  Allison Villanueva

Defendant/Respondent:  SAS Services San Diego, Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>37-2023-00016073-CU-OE-CTL |
|---|---|

TO *(insert name of party being served):* SAS Services San Diego, Inc.

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing:  May 17, 2023

_____          ► *Alicja Urtnowski*
Alicja A. Urtnowski                              (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)
(TYPE OR PRINT NAME)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [x] A copy of the summons and of the complaint.
2. [x] Other *(specify):*

   Civil Case Cover Sheet, Stipulation to Use Alternative Dispute Resolution (ADR), Notice to Litigants and ADR Information Package, Notice of Case Assignment and Case Management Conference

*(To be completed by recipient):*

Date this form is signed:  June 6, 2023

_____          ► _____, Attorney
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,           (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)              ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)
                                                 on behalf of SAS Services
                                                 San Diego, Inc.

Page 1 of 1

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 321215 | FOR COURT USE ONLY |
|---|---|---|

NAME: Alicja A. Urtnowski
FIRM NAME: Consumer & Employment Law Group
STREET ADDRESS: 3258 Fourth Ave.
CITY: San Diego     STATE: CA     ZIP CODE: 92103
TELEPHONE NO.: 619-239-1321     FAX NO. :
E-MAIL ADDRESS: aurtnowski@celg.org
ATTORNEY FOR (Name): Allison Villanueva

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**06/07/2023** at 10:18:00 AM

Clerk of the Superior Court
By E- Filing, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 W Broadway
MAILING ADDRESS: 330 W Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Hall of Justice

Plaintiff/Petitioner: Allison Villanueva
Defendant/Respondent: SAS Services San Diego, Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>37-2023-00016073-CU-OE-CTL |
|---|---|

TO *(insert name of party being served):* G2 SECURE STAFF CA, L.P.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: May 16, 2023

_____     _____
Alicja A. Urtnowski                    *Alicja Urtnowski*
(TYPE OR PRINT NAME)          (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [✗] A copy of the summons and of the complaint.
2. [✗] Other *(specify):*
   Civil Case Cover Sheet, Stipulation to Use Alternative Dispute Resolution (ADR), Notice to Litigants and ADR
   Information Package, Notice of Case Assignment and Case Management Conference

*(To be completed by recipient):*

Date this form is signed:     6/5/2023

Kathy H. Gao (SBN 259019)
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

privacy, please press the Clear This Form button after yo

[ Print this form ]   [ Save this form ]   [ Clear This Form ]

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 321215 | FOR COURT USE ONLY |
|---|---|---|

NAME: Alicja A. Urtnowski
FIRM NAME: Consumer & Employment Law Group
STREET ADDRESS: 3258 Fourth Ave.
CITY: San Diego            STATE: CA      ZIP CODE: 92103
TELEPHONE NO.: 619-239-1321    FAX NO. :
E-MAIL ADDRESS: aurtnowski@celg.org
ATTORNEY FOR (Name): Allison Villanueva

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 W Broadway
MAILING ADDRESS: 330 W Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Hall of Justice

Plaintiff/Petitioner: Allison Villanueva
Defendant/Respondent: SAS Services San Diego, Inc., et al.

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**06/07/2023** at 10:18:00 AM

Clerk of the Superior Court
By E- Filing, Deputy Clerk

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 37-2023-00016073-CU-OE-CTL |
|---|---|

TO (insert name of party being served): G2 SECURE STAFF, L.L.C.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: May 16, 2023

Alicja A. Urtnowski
(TYPE OR PRINT NAME)

*Alicja Urtnowski*
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. [x] A copy of the summons and of the complaint.
2. [x] Other (specify):
   Civil Case Cover Sheet, Stipulation to Use Alternative Dispute Resolution (ADR), Notice to Litigants and ADR Information Package, Notice of Case Assignment and Case Management Conference

*(To be completed by recipient):*

Date this form is signed: 6/5/2023

Kathy H. Gao (SBN 259019)
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

*Kathy P. Gao*
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

privacy, please press the Clear This Form button after yo

Print this form     Save this form     Clear this form

# EXHIBIT C

R. Craig Clark (SBN 129219)
cclark@celg.org
Alicja A. Urtnowski (SBN 321215)
aurtnowski@celg.org
**CONSUMER & EMPLOYMENT LAW GROUP**
3258 Fourth Avenue
San Diego, CA 92103
Telephone: (619) 239-1321
Facsimile: (888) 273-4554

*Attorneys for Plaintiff*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| ALLISON VILLANUEVA, as an individual, on behalf of herself, and all persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SAS SERVICES SAN DIEGO, INC, a California Corporation., G2 SECURE STAFF, L.L.C., a Texas Corporation. and G2 SECURE STAFF CA, L.P., a Texas Corporation, and DOES 1-10,<br><br>Defendants. | Case No. 37-2023-00016073-CU-OE-CTL<br>[Assigned to Hon. Carolyn M. Caietti, Dept C-70].<br><br>**CLASS AND REPRESENTATIVE ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF:**<br><br>**(1) FAILURE TO TIMELY PAY MINIMUM WAGES, OVERTIME AND/OR DOUBLE TIME COMPENSATION (Labor Code §§ 204, 210, 226.2, 510, 1194, 1197, 1197.1, 1198, and 1199);**<br><br>**(2) FAILURE TO PROVIDE LEGALLY COMPLIANT MEAL PERIODS OR COMPENSATION IN LIEU THEREOF (Labor Code §§ 204, 226.7 and 512);**<br><br>**(3) FAILURE TO PROVIDE LEGALLY COMPLIANT REST PERIODS OR COMPENSATION IN LIEU THEREOF (Labor Code §§ 204 and 226.7);**<br><br>**(4) FAILURE TO PAY ALL WAGES OWED UPON SEPARATION (Labor Code §§ 201, 202, and 203);** |

1

**(5) FAILURE TO PROVIDE SICK LEAVE AND WRITTEN NOTICE OF THE AMOUNT OF SICK LEAVE AVAILABLE (Labor Code § 246);**

**(6) FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS (Labor Code §§ 226 and 226.3);**

**(7) FAILURE TO MAINTAIN ACCURATE RECORDS (Labor Code §§ 226(a) and 1174);**

**(8) FAILURE TO PROVIDE COPIES OF SIGNED DOCUMENTS (Labor Code § 432);**

**(9) FAILURE TO REIMBURSE FOR NECESSARY WORK EXPENSES (Labor Code §§ 2800 and 2802);**

**(10) VIOLATION OF THE UNFAIR COMPETITION LAW (Bus. & Prof. Code §§ 17200 *et seq*.);**

**(11) PRIVATE ATTORNEYS GENERAL ACT OF 2004 (Labor Code §§ 2698 *et seq*.).**

**DEMAND FOR JURY TRIAL**

Plaintiff Allison Villanueva ("Plaintiff") brings this civil action on behalf of herself and all those similarly situated, against SAS Services San Diego, Inc., G2 Secure Staff, L.L.C., and G2 Secure Staff CA, L.P. and Does 1 through 10 (collectively "Defendants"), on the following grounds:

## **INTRODUCTION**

1.      Plaintiff brings this civil action on behalf of herself and all other current or former hourly non-exempt employees of Defendants in the State of California during the relevant time period (collectively referred to as "Employees").

2.      Plaintiff, on behalf of herself and other Employees, seeks damages, civil penalties, injunctive relief, and restitution, as well as reasonable attorney's fees and litigation costs, as provided under California law.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

3.     All allegations in this Complaint are based upon information and belief, except those allegations specifically pertaining to Plaintiff and her counsel, which are based on personal knowledge. Each allegation has either evidentiary support or is likely to have evidentiary support after a reasonable opportunity to conduct further investigation and discovery.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to California Code of Civil Procedure ("Code of Civil Procedure") section 410.10. Pursuant to Code of Civil Procedure section 382 and California Business and Professions Code ("Bus. & Prof. Code") section 17203, Plaintiff brings this action on behalf of herself, and on behalf of all persons similarly situated, as defined herein.

5.     This Court has personal jurisdiction over Defendants because each defendant conducts business in the State of California and has caused injuries in and around San Diego County, as well as throughout the state of California, by and through its acts, omissions, and violations of the California Labor Code ("Labor Code") and Bus. & Prof. Code, as alleged herein.

6.     Venue as to Defendants is proper in this judicial district pursuant to Code of Civil Procedure section 395(a). Each individual defendant transacts business and/or maintains an office in San Diego County and is otherwise within this Court's jurisdiction for purposes of service of process. The unlawful acts alleged herein have a direct effect on Plaintiff and those similarly situated within San Diego County and throughout the State of California.

7.     Pursuant to Rule 3.400 of the California Rules of Court, this case shall be deemed a complex action because it is filed as a class action and involves specialized case management, extensive discovery and evidence, difficult and/or novel issues and is likely to require extensive post judgement supervision.

## THE PARTIES

### I.     PLAINTIFF

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

8.    Plaintiff Allison Villanueva at all material times mentioned herein:

    a.  Was and is a resident of the County of San Diego;

    b.  Has been employed by Defendants primarily in and/or around San Diego County since approximately June 2019 as a non-exempt hourly employee.

    c.  Was compensated on an hourly basis;

    d.  Was not compensated for all hours worked;

    e.  Regularly worked more than eight (8) hours per day;

    f.  Was subject to Defendants' policy, practice, guideline, and/or procedure of working off-the-clock so that she did not receive the minimum and/or overtime compensation she was entitled to;

    g.  Was required to engage in work-related activities during the time that Defendants automatically deducted from her time worked;

    h.  Was not compensated the appropriate overtime rate for hours worked beyond eight (8) hours per day and/or forty hours per week;

    i.  Was not timely paid minimum wage and/or overtime compensation;

    j.  Was not provided with legally compliant meal periods or compensation in lieu thereof;

    k.  Was not provided with legally compliant rest periods or compensation in lieu thereof;

    l.  Was not provide with an opportunity to document and/or report non-compliant meal and/or rest periods;

    m. Was required to remain readily available to perform work for Defendants during meal and/or rest periods;

    n.  Was not provided with paid sick leave and/or written notice of the amount of sick leave available as required by California law;

    o.  Was required to wear a uniform at all times while performing work for Defendants;

4

p.  Was required to use her personal cell phone while performing work for Defendants;

q.  Was not reimbursed for necessary work expenses;

r.  Was not provided with accurate and itemized wage statements;

s.  Believes her employee records were not accurately maintained by Defendants;

t.  Was not provided with copies of all signed documents;

u.  Was subject to Defendants' unlawful, unfair, and fraudulent business practices.

v.  Is a member of the class and/or classes described below;

w.  Is an "aggrieved employee" as defined by Labor Code § 2699(c); and

x.  Complied with the requirements outlined in Labor Code §§ 2698 *et seq.*

## II.      DEFENDANTS

9.      Defendant SAS Services San Diego, Inc is a California corporation authorized to do business, and actually doing business, in the State of California. SAS Services San Diego, Inc. is in the business of providing services in the aviation industry. Specifically, it is in the business of airport customer services, including passenger assistance and wheelchair services, bag porter services, skycap services, security services, checkpoint customer service agents, unaccompanied minor escort services, janitorial services, cabin-cleaning, and utility services. See www.sas-serv.com,

10.      Defendant G2 Secure Staff, LLC is a Texas Corporation that does business in California. Specifically, it is in the business of airport customer services, including passenger assistance and wheelchair services, bag porter services, skycap services, security services, checkpoint customer service agents, unaccompanied minor escort services, janitorial services, cabin-cleaning, and utility services. See www.sas-serv.com and https://www.g2securestaff.com/

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

11.   Defendant G2 Secure Staff, CA, LP is believed to be a Texas corporation that does business in California. It is also in the business of airport customer service. See https://www.g2securestaff.com/.

12.   It is believed that around November 2022, G2 Secure Staff acquired S.A.S. Services Group, Inc. (S.A.S.) and Flight Services and Systems, LLC (FSS). It is believed that G2 hired all former employees of SAS Services "to leverage the success of both organizations to provide reliable, professional aviation service solutions ranging from ground handling services such as cabin cleaning, to customer assistance services and security solutions." G2 is believed to now hire over 10,000 employees in more than 85 airports. See https://www.g2securestaff.com/.

13.   The true names and capacities, whether individual, corporate, subsidiary, partnership, associate, or otherwise of Does 1 through 10, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff will amend her complaint to allege the true names and capacities of Does 1 through 10 when they are ascertained.

14.   At all times mentioned herein, the acts alleged to have been done and/or caused by Defendants are also alleged to have been done and/or caused by the unascertained defendants mentioned above, and by each of their agents and employees who acted within the scope of their agency and/or employment.

15.   At all times mentioned herein, each defendant acted as an agent, servant, employee, co-conspirator, alter-ego, and/or joint venture of the other defendants, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture.

16.   At all times mentioned herein, the acts and omissions of each of the defendants concurrently contributed to the various acts and omissions of each and every one of the other defendants in proximately causing the wrongful conduct, harm, and damages alleged herein. Each of the defendants in proximately causing the wrongful conduct, harm, and damages alleged herein. Each of the defendants approved of, condoned, and/or otherwise ratified each

6

and every one of the acts or omissions complained herein. Each defendant and all Doe defendants were and are acting with authority of each and every other defendants and are acting as agents of each and every other defendant or Doe defendant.

## FACTUAL ALLEGATIONS

17.    Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this complaint.

18.    Plaintiff alleges, based on information and belief, that all non-exempt employees employed by Defendants in California are subject to the same and/or similar policies, practices, procedures, guidelines, and/or culture set forth herein.

19.    Plaintiff also alleges that she and other current or former non-exempt employees in California have suffered, and will continue to suffer, the same and/or similar violations of law described herein.

20.    Plaintiff has been employed by Defendants in an hourly, non-exempt capacity since approximately June 2019. Throughout her employment, Plaintiff was assigned to work primarily at the San Diego, CA airport location.

21.    Plaintiff is informed and believes, and alleges thereon, that Defendants employ a number of individuals in an hourly, non-exempt capacity in the state of California.

22.    During the relevant time period, Defendants had, and continue to have, a regular policy, practice, procedure, guideline, and/or culture, of requiring employees to work more than 8 hours per day and/or 40 hours per week.

23.    Plaintiff asserts that as a policy, practice, guideline, procedure and/or culture at Defendants do not properly compensate Employees for all hours worked.

24.    As a policy, practice, guideline, procedure and/or culture, Defendants require Employees to clock in and out of their job using a finger scan device on the wall. However, the device often does not work and Employees were required to use handwritten time sheets.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

25.   Plaintiff asserts that Employees were often required to work off the clock. Defendants have a policy, practice, guideline, procedure and/or culture of requiring her and other employees to clock out and continue working so that they do not receive the minimum and/or overtime compensation they are entitled to. For example, Employees are often forced to work off the clock because of flight delays and being understaffed. Often, Employees were required to wait for delayed flights and/or assist passengers at the airport, while being off the clock. As such, Plaintiff and other Employees did not receive the minimum, overtime and/or double time compensation they are entitled to. As such, Defendants regularly shave and/or shorten non-exempt employees' hours worked and does not compensate its non-exempt employees for all time worked as required by California law.

26.   Non-exempt employees, including Plaintiff, thus regularly engage in work-related activities during the time that Defendants automatically deduct from their time worked.

27.   Moreover, Plaintiff asserts that Defendants also failed to provide wage statements that accurately reflect the gross wages and/or net wages earned, among other things.

28.   In addition, Plaintiff asserts that as a policy, procedure, guideline, and/or culture, Defendants regularly required non-exempt employees to work more than eight (8) hours per day and/or forty hours per week. Despite working at least (8) hours per day and/or forty (40) hours per week, Plaintiff and other non-exempt employees were not paid minimum wages and/or overtime compensation for all hours worked.

29.   Moreover, Plaintiff asserts that Defendants have a policy, practice, guideline, procedure, and/or culture of automatically deducting a thirty-minute meal period from hours worked by its non-exempt employees regardless of whether they were actually provided with an opportunity to take a thirty-minute meal period free from all work activities.

30.   Plaintiff, therefore, asserts that Defendants furnished paychecks to her and other non-exempt employees that do not include compensation for all hours worked and that they are often late.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

31.     Plaintiff also asserts that despite notifying Defendants of the error, Defendants did not promptly remedy the issues by paying all wages earned and due.

32.     Plaintiff asserts that Defendants do not have a policy, practice, procedure, guideline, and/or culture of providing non-exempt employees the reasonable opportunity to take meal periods that occurred before the fifth hour of work and/or that were free from all work and work-related responsibilities during the entirety of the 30-minute meal period because of the company requirement that its employees be readily available to perform work duties during the entire duration of their shift, including meal periods, such as assisting passengers and/or customers at the airport, monitoring arrivals and departures, waiting by the gates, and transferring around the airport with a wheelchair, among other duties.

33.     Additionally, Plaintiff asserts that even though non-exempt employees often worked more than 10 hours in a day, Defendants failed to provide them with a second meal period of at least 30 minutes.

34.     Moreover, Plaintiff alleges that as a policy, practice, guideline, procedure and/or culture Defendants does not schedule any meal periods for its non-exempt employees.

35.     Plaintiff contends that on a rare occasion when she and other non-exempt employees are provided with a meal period, the meal periods are often late, short, or interrupted because Defendants Employees are expected to be readily available to engage in job duties for the entire duration of their work shift.

36.     Plaintiff further contends that Defendants did not have a procedure for non-exempt employees to document non-compliant meal periods. As a result, Defendants did not compensate non-exempt employees for non-compliant meal periods.

37.     Plaintiff alleges that Defendants as a policy, practice, guideline, procedure, and/or culture, regularly fail to authorize and permit non-exempt employees to take off-duty rest periods for every four hours worked, or a major fraction thereof, in violation of California law.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

38.     Plaintiff contends that she and other non-exempt employees were denied legal rest periods largely due to Defendants' requirement that non-exempt employees were to be readily available at all times to perform work duties.

39.     Additionally, Plaintiff alleges that Defendants fail to schedule enough employees so that Plaintiff and other non-exempt employees could be relieved from their duties to take their meal and rest periods.

40.     Further, Plaintiff asserts that Defendants do not have a policy, practice, guideline, procedure, and/or culture for non-exempt employees to record non-compliant meal and rest periods and fails to compensate non-exempt employees the required meal and rest period premium for non-compliant breaks in violation of California law.

41.     Plaintiff contends that Defendants have a policy, practice, guideline, and/or culture of not timely paying all wages owed upon discharge nor paying the required waiting time penalties. For instance, Defendants failed to compensate non-exempt employees for all hours worked, failed to pay the appropriate overtime wages to Employees for hours worked  in excess of eight per day and/or forty per week, and failed to pay the required meal and/or  rest period premiums to Defendants non-exempt employees for non-compliant meal and/or rest periods.

42.     Plaintiff also contends that Defendants require Employees to carry a personal cell phone, a radio and/or a tablet for the entire duration of their work shift, including during meal and/or rest periods. Employees were also expected to be readily available to perform work on behalf of Defendants during meal and/or rest periods, such as by responding to calls and/or messages from supervisors and/or co-workers, and monitoring flight arrivals, departures and gates. As a result, Employees were not provided with meal and/or rest periods that were free from work or interruption.

43.   Plaintiff, therefore, contends that Defendants failed to pay all wages owed to former non-exempt employees who separated from Defendants within the statutory period in violation of California law.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

44.   Plaintiff alleges that Defendants have a policy, practice, guideline, procedure, and/or culture of failing to provide non-exempt employees with one hour of paid sick leave for every 30 hours worked in accordance with California law.

45.   Plaintiff further alleges that Defendants also failed to provide non-exempt employees with paid sick days since they were unable to accrue any such paid sick days at the rate provided by law as a result of Defendants' failure to account for all time worked.

46.   Plaintiff also contends that Defendants have a policy, practice, procedure, guideline, and/or culture of failing to provide written notice to non-exempt employees of their available sick leave, as such amounts are not included on the wage statements, nor are they provided with the information in separate writing on the designated pay date along with their wages, in violation of California law.

47.   Plaintiff asserts, based on information and belief, that Defendants willfully failed to timely render all wages owed to Plaintiff and other former non-exempt employees who are no longer employed by Defendants because, as described herein, Defendants failed to pay Plaintiff and other non-exempt employees for all time worked including, but not limited to, meal and/or rest period   premiums, minimum wages and overtime/double time compensation.

48.   Plaintiff contends that Defendants failed to provide legally compliant wage statements that accurately reflect the gross wages and/or net wages earned due to Defendants' failure to compensate non-exempt employees for all time worked, failure to pay the appropriate overtime compensation to non-exempt employees for hours worked beyond eight hours per day and/or forty hours per week, and failure to pay premium wages to non-exempt employees for non-compliant meal and/or rest periods.

49.   Plaintiff asserts Defendants failed to provide wage statements that properly include the pay period information for each wage statement, the accurate rate of pay, the required available sick time, and/or the name of the legal entity that employed Defendants' non-exempt employees in violation of California law.

50.  Plaintiff asserts that because of Defendants' policies, practices, procedures, guidelines, and/or culture, as described herein, including but not limited to its failure to compensate non-exempt employees for all time worked, Defendants also knowingly and intentionally failed to maintain accurate employee and payroll records as required by California law.

51.  Further, Defendants have a policy, practice, guideline, procedure, and/or culture of failing to maintain accurate employee information and payroll records which accurately reflect the gross and net wages earned as well as the total hours of time worked each day by Plaintiff and other employees.

52.  Plaintiff contends that Defendants required non-exempt employees to sign various documents as part of their employment however, Defendants failed to maintain and provide copies of all documents signed upon request of employees.

53.  Plaintiff asserts upon information and belief that Defendants failed to maintain a copy of all documents signed by non-exempt employees that relate to their hiring and/or employment with Defendants, and/or failed to provide a copy of such documents to non-exempt employees who requested a copy thereof, therefore failing to comply with California law.

54.  Plaintiff alleges that Defendants do not have a policy, practice, procedure, guideline, and/or culture of reimbursing non-exempt employees for necessary work expenses. As a result, Defendants routinely failed to reimburse non-exempt employees for all necessary work expenses, such as the cost of purchasing and/or maintaining the required uniforms, and the cost of personal cell phone usage.

55.  On April 4, 2023, Plaintiff submitted notice to the California Labor and Workforce Development Agency ("LWDA") and Defendants informing them of Defendants' alleged Labor Code violations pursuant to the Private Attorneys General Act of 2004 ("PAGA"). A true and correct copy of the notice is attached hereto as **Exhibit 1** and is incorporated herein by this reference.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

56.   To date, the LWDA has not provided notice of whether it intends to investigate the alleged violations. Therefore, Plaintiff has the right to pursue her claims under PAGA in a representative capacity on behalf of the state of California pursuant to Labor Code § 2699.3. As such, Plaintiff now files this representative action pursuant to Labor Code §§ 2698 *et seq.*

57.   Plaintiff believes that additional violations may be discovered, and therefore reserves her right to allege any additional violations of the law as an investigation and discovery warrants.

58.   In the event Plaintiff discovers additional violations throughout the discovery process, Plaintiff will seek to amend the operative complaint as necessary.

### CLASS DEFINITIONS

59.   The proposed classes defined below consist of current or former non-exempt employees employed by Defendants in the state of California at any time during the period commencing on the date that is within four years prior to the filing of the initial Complaint through the present date (hereinafter the "Class Period"). To the extent that equitable tolling operates to toll the claims by the classes against Defendants, the Class Period should be adjusted accordingly.

a.   All current or former non-exempt employees employed by Defendants in the state of California who suffered violations of the Labor Code, Business and Professions Code and/or the relevant California Industrial Welfare Commission's ("IWC") Wage Orders during the Class Period.

b.   All current or former non-exempt employees employed by Defendants in the state of California who were not provided with the opportunity to take legally compliant meal periods or compensation in lieu thereof in violation of California law during the Class Period.

c.   All current or former non-exempt employees employed by Defendants in the state of California who were not authorized and permitted to take legally compliant rest periods or compensation in lieu thereof in

13

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

1    violation of California law during the Class Period.

2    d.    All current or former non-exempt employees employed by Defendants in

3    the state of California who were not properly paid for all hours worked in

4    violation of California law during the Class Period.

5    e.    All former non-exempt employees employed by Defendants in the state

6    of California who were not paid all wages due upon separation or

7    termination of the employment relationship in violation of California law

8    during the Class Period.

9    f.    All current or former non-exempt employees employed by Defendants

10    in the state of California who were not provided with paid sick leave in

11    violation of California law during the Class Period.

12    g.    All current or former non-exempt employees employed by Defendants

13    in the state of California who were not provided with accurate and

14    itemized wage statements in violation of California law during the Class

15    Period.

16    h.    All current or former non-exempt employees employed by Defendants

17    in the state of California whose information was not accurately recorded

18    and/or maintained in violation of California law during the Class Period.

19    i.    All current or former non-exempt employees employed by Defendants

20    in the state of California who were not provided with copies of signed

21    documents in violation of California law during the Class Period.

22    j.    All current or former non-exempt employees employed by Defendants

23    in the state of California who were not reimbursed for necessary work

24    expenses in violation of California law during the Class Period.

25    k.    All current or former non-exempt employees employed by Defendants

26    in the state of California who were subject to Defendants' unlawful,

27    unfair, and/or fraudulent business practices in violation of California

28    law during the Class Period.

60.   Members of the class and/or classes are all "employees" as the term is used in the Labor Code and the IWC Wage Orders regulating wages, hours and working conditions in the state of California.

61.   A more precise definition of the class and/or classes may be determined after further investigation and discovery. Plaintiff reserves her right to redefine the class and/or classes at any time prior to the court's order on Plaintiffs' Motion for Class Certification as provided by law.

## CLASS ALLEGATIONS

62.   Plaintiff brings this action on behalf of herself, and on behalf of all persons within the defined class(es) and/or sub-class(es) included herein.

63.   This class action meets the statutory prerequisites for the maintenance of a class action, as set forth in Code of Civil Procedure section 382 and Civil Code section 1781:

  a. The persons who comprise the class(es) and/or sub-class(es) are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

  b. Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the class(es) and/or sub-class(es) and will apply uniformly to every member of the class(es) and/or sub-class(es), and as a practical matter, be dispositive of the interests of the other members not party to the adjudication;

  c. The parties opposing the class(es) and/or sub-class(es) have acted or have refused to act on grounds generally applicable to the class(es) and/or sub-class(es), thereby making final injunctive relief or declaratory relief appropriate with respect to the class(es) and/or sub-class(es) as a whole; and

  d. Common questions of law and fact exist as to the members of the

15

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

class(es) and/or sub-class(es) and predominate over any question affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

    i.    The interests of class members in individually controlling the prosecution or defense of separate actions;

    ii.    The extent and nature of any litigation concerning the controversy already commenced by or against members of the class(es) and/or sub-class(es);

    iii.    The desirability or undesirability of concentrating the litigation of the claims in this particular forum; and

    iv.    The likely difficulties in the managing of a class action.

64.    The Court should permit this action to be maintained as a class action pursuant to Code of Civil Procedure section 382 and Civil Code section 1781 because:

    a.    Questions of law and fact common to the class(es) and/or sub-class(es) are substantially similar and predominate over any questions affecting only individual members;

    b.    A class action is superior to any other available method for the fair and efficient adjudication of class members' claims;

    c.    The members of the class(es) and/or sub-class(es) are so numerous that it is impractical to bring all class members before the Court;

    d.    Plaintiff's claims are typical of the claims of the class(es) and/or sub-class(es);

    e.    Class members will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

    f.    There is a community of interest in obtaining appropriate legal and equitable relief for the common law and statutory violations and other improprieties alleged, and in obtaining adequate compensation for the

16

damages that Defendants' actions have inflicted upon the class(es) and/or sub-class(es);

g.      Plaintiff can fairly and adequately protect the interests of the class(es) and/or sub-class(es);

h.      There is a community of interest in ensuring that the combined assets and available insurance of Defendants is sufficient to adequately compensate the class members for the injuries sustained; and

i.      Defendants have acted or refused to act on grounds generally applicable to the class(es) and/or sub-class(es), thereby making final injunctive relief appropriate with respect to the class(es) and/or sub-class(es) as a whole.

## PAGA COLLECTIVE

65.     The proposed PAGA Collective consists of all current and former hourly non-exempt employees of Defendants in the state of California during the period commencing on the date that is within one (1) year and sixty-five (65) days prior to the filing o f this Complaint and through the present date (the "PAGA Period"). To the extent that equitable tolling operates to toll the claims by the PAGA Collective against Defendants, the PAGA Period should be adjusted accordingly.

66.     Plaintiff asserts that all members of the PAGA Collective are "employees" as the term is used and defined in the Labor Code and the applicable Industrial Welfare Commission ("IWC") Wage Orders regulating wages and working conditions in the state of California.

67.     A more precise definition of the PAGA Collective may be determined after further investigation and discovery. Plaintiff reserves her right to redefine the PAGA Collective in accordance with California law.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

**FIRST CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO TIMELY PAY MINIMUM WAGES, OVERTIME AND/OR DOUBLE TIME COMPENSATION**

**[Labor Code §§ 204, 226.2, 210, 510, 1194, 1197, 1197.1, 1198, 1199**

**and IWC Wage Order No. 4-2001, Subdivs. 3 and 4]**

68.    Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

69.    Labor Code § 204 establishes an employee's fundamental right in the state of California to be paid wages in a timely manner for their work.

70.    Labor Code § 1197 requires employers to pay its employees the minimum wage as fixed by the commission and further states that payment of wages lower than the fixed minimum for all time worked is unlawful.

71.    Labor Code § 1197.1 makes it unlawful for any employer or any other person acting either individually or as an officer, agent, or employee of another person, to pay an employee, or cause an employee to be paid less than the applicable minimum wage.

72.    Under Labor Code § 510 it is unlawful for an employer to employ persons for more than eight (8) hours per day and/or forty (40) hours per week without compensating them at the rate of one and one- half or two times the employee's regular pay rate, depending on the number of hours worked. (See also IWC Wage Order No. 4-2001, Subdiv. 3(A).)

73.    An employee may not waive his or her right to overtime compensation and any agreement by the employee to accept less than the statutorily required rate is unenforceable as a matter of law. (*Early v. Superior Court* (2000) 79 Cal.App.4th 1420, 1430.)

74.    Section 1194(a) of the Labor Code states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation including interest thereon, reasonable attorney's fees, and costs of suit.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

1

2

75.    Plaintiff contends that Defendants failed to pay her and other non-exempt employees the required minimum wages, overtime and double-time wages for all time worked by non-exempt employees.

76.    During the relevant time period, Defendants had, and continue to have, a regular policy, practice, procedure, guideline, and/or culture of requiring non-exempt employees to work at least eight (8) hours per day.

77.    As a policy, practice, guideline, procedure, and/or culture, Defendants require non-exempt employees to clock-in and clock-out of their job using a fingerprint scan device. However, the device often lacks functionality and Employees are thus required to use handwritten timesheets.

78.    Plaintiff alleges that Defendants Employees, including Plaintiff, were often required to work off the clock. For example, Plaintiff asserts that Defendants often required her and other Employees to clock out and continue working, depriving them proper wages for all hours worked, including overtime. For example, Employees are often forced to work off the clock because of flight delays and being understaffed. Often, Employees were required to wait for delayed flights and/or assist passengers at the airport, while being off the clock. As such, Plaintiff and other Employees did not receive the minimum, overtime, and/or double-time compensation they are entitled to.

79.    Moreover, Plaintiff asserts that Defendants have a policy, practice, guideline, procedure, and/or culture of automatically deducting a thirty-minute meal period from the hours worked by its Employees regardless of whether they were actually provided with an opportunity to take a thirty-minute meal period free from all work activities. Employees thus regularly engage in work-related activities during the time that Defendants automatically deduct from their time worked.

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

80.     Plaintiff asserts that Defendants have a policy, practice, guideline, procedure and/or culture of editing non-exempt employees' clock-in and clock-out records so that they do not receive the minimum, overtime and/or double time compensation they are entitled to.

81.     As such, Defendants regularly shave and/or shorten non-exempt hourly employee's hours worked and do not compensate its non-exempt employees for all time worked as required by California law.

82.     Non-exempt employees, including Plaintiff, thus regularly engage in work-related activities during the time that Defendants automatically deduct from their time worked.

83.     Plaintiff contends that she and other non-exempt employees were regularly required to work more than eight (8) hours per day and/or forty (40) hours per week. Consequently, Plaintiff contends that she and other non-exempt employees are entitled to receive overtime compensation at the rate of one and one-half times their respective regular pay rates for all hours worked beyond eight (8) hours a day and/or forty (40) hours per week. In addition, Plaintiff contends that she and other non-exempt employees are entitled to receive double time compensation for all hours worked beyond twelve (12) hours a day. However, Plaintiff alleges that as a policy, practice, procedure, guideline, and/or culture, Defendants did not provide overtime compensation to non-exempt employees who worked more than eight (8) hours per day and/or forty (40) hours per week, nor the double time compensation for working over twelve (12) hours per day.

84.     Plaintiff alleges that Defendants furnished paychecks to her and other non-exempt employees that did not include compensation for all hours worked. Plaintiff further contends that Defendants did not remedy such by promptly paying all unpaid wages owed to her and other non-exempt employees, even after being notified of such. Accordingly, Defendants failed to timely pay non-exempt employees for their work in violation of California law.

85.     By virtue of Defendants' unlawful conduct explained herein, Plaintiff and other non-exempt employees have, and will continue, to suffer damages in amounts which are presently unknown, but which exceed the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

86.     Having received less than the legal minimum wage and applicable overtime/double time compensation, Plaintiff and other non-exempt employees are entitled to, and seek to recover, all wages and penalties owed, including penalties available under Labor Code §§ 210 and 558, as well as interest and reasonable attorneys' fees and costs pursuant to Labor Code §§ 218.5 and 1194 and Code of Civil Procedure § 1021.5.

87.     Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

**SECOND CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO PROVIDE LEGALLY COMPLIANT MEAL PERIODS OR**

**COMPENSATION IN LIEU THEREOF**

**[Labor Code §§ 204, 226.7, 512 and IWC Wage Order No. 4-2001, Subdiv. 11]**

88.     Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

89.     Section 512(a) of the Labor Code provides:

An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived. (Emphasis added.)

90.     Pursuant to Labor Code **§** 226.7(c):

If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

91.     In pertinent part, IWC Order No. 4-2001, Subdiv. 11, states:

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

[…]

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

92.     A meal period generally complies with California law if the employee has at least 30 minutes uninterrupted during which time the employee is relieved of any and all duty and is free to leave the premises. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1036.) California law further prohibits employers from "...undermining [its] formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." (*Id.* at 1040.)

93.     At all relevant times, Plaintiff and other non-exempt employees regularly worked at least five (5) hours per day. However, despite working at least five (5) hours per day, Plaintiff contends that she and other non-exempt employees were not provided with the opportunity to take a thirty-minute meal period that was free from all duty and the employer's control, in part, because Defendants required non-exempt employees to remain at their workstations for the entire duration of their work shift so that they are readily available to engage in their job duties.

94.     Plaintiff asserts that Plaintiff and other non-exempt employees were not provided with the reasonable opportunity to take meal breaks before the 5th hour of work and/or meal breaks that were free from all work-related responsibilities during the entire 30-minute meal break.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

95.    Additionally, even though non-exempt employees often worked more than 10 hours in a day, Defendants failed to provide them with a second meal period of at least thirty minutes.

96.    Plaintiff alleges that the demanding work schedule assigned to non-exempt employees did not allow time for legally compliant meal periods. In addition, Defendants failed to provide any relief for non-exempt employees to be able to take legally compliant breaks.

97.    Plaintiff asserts that her supervisor often instructed her and other Employees not to take breaks and/or work through meal breaks, and often yelled at Employees for taking  breaks.

98.    Plaintiff further alleges that as a policy, practice, guideline, procedure and/or culture, Defendants do not schedule any meal periods for its non-exempt employees.

99.    Plaintiff asserts that on a rare occasion when she and other non-exempt employees are provided with a meal period, the meal periods are often late, short, or interrupted due to Defendant's requirement that its non-exempt employees be always readily available to perform their work duties at all times.

100.    Plaintiff contends that Defendants have a policy, practice, procedure, guideline, and/or culture of requiring non-exempt employees to be readily available to perform work during meal periods, such as assisting passengers and/or customers at the airport, monitoring arrivals and departures, responding to calls/messages, waiting by the gates, and transferring around the airport with a wheelchair, among other duties. As a result, non-exempt employees are not relieved of all duty or the control of Defendants in violation of California law.

101.    Plaintiff contends that Defendants have a policy, practice, guideline, procedure, and/or culture of automatically deducting 30 minutes for a meal period regardless of whether Employees were provided with the opportunity to take a legally compliant meal period. As such, Defendants often adjusted its' Employees timesheets to reflect meal breaks, even though a compliant meal break was not taken.

102.    Plaintiff also contends that Defendants require non-exempt employees to carry personal cell phone, a radio, and/or a tablet for the entire duration of their work shift, including

during meal and/or rest periods. Non-exempt employees were also expected to be readily available to perform work on behalf of Defendants during meal and/or rest periods, such as by responding to calls and/or messages from supervisors and/or co-workers, and monitoring flight arrivals, departures, and gates. As a result, non-exempt employees were not provided with meal and/or rest periods that were free from work or interruption.

103.  Plaintiff asserts non-exempt employees were not provided with the opportunity to take meal periods that were free from work-related responsibilities. By imposing unbearable work schedules onto its non-exempt employees, Defendants compelled, encouraged and/or otherwise directed its non-exempt employees to work through their meal periods.

104.  Plaintiff asserts that Defendants do not have a policy, practice, procedure, guideline, and/or culture for non-exempt employees to document and/or report non-compliant meal periods.

105.  Plaintiff also contends that Defendants failed to pay premium wages to non-exempt employees, including Plaintiff, for meal periods that did not comply with California law.

106.  Plaintiff believes that Defendants know or should know that its non-exempt employees were not provided with the opportunity to take legally compliant meal periods and/or paid the legally required premium wage in lieu thereof.

107.  As a result of Defendants' unlawful conduct alleged herein, Plaintiff and other non-exempt employees have suffered, and will continue to suffer, damages in an amount which is presently unknown, but which exceeds the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

108.  Pursuant to Labor Code § 226.7(c) and the relevant IWC Order No. 4-2001, Subdiv. 11(D), Plaintiff and other non-exempt employees are entitled to, and seek, recovery of the full amount of unpaid premium wages for non-compliant meal periods.

109.  Pursuant to Labor Code § 218.6, Plaintiff and other non-exempt employees are entitled, and seek, to recover prejudgment interest on the amount of premium wages owed.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

110.    Plaintiff and other non-exempt employees are entitled to, and seek, recovery of reasonable attorneys' fees as permitted by Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

111.    Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

**THIRD CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO PROVIDE LEGALLY COMPLIANT REST PERIODS OR COMPENSATION IN LIEU THEREOF**

**[Labor Code §§ 204, 226.7 and IWC Wage Order No. 4-2001, Subdiv. 12]**

112.    Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

113. In pertinent part, Labor Code § 226.7 provides:

> (b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and health.

> (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for workday that the meal or rest recovery period is not provided.

114. IWC Order No. 4-2001, Subdiv. 12 states:

> (b) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes of net rest time per four (4) hours or major fraction thereof.

25

(A) However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours.  Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.  (Emphasis added.)

115. During rest periods, California law requires employers to relinquish all control over their employees and relieve their employees of all duties. (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 273.)

116.   As discussed herein, Defendants regularly required Plaintiff and other non-exempt employees to work at least four (4) hours per day.

117.   Plaintiff contends that as a policy, practice, procedure, guideline, and/or culture Defendants regularly failed to authorize and/or permit non-exempt employees to take off-duty rest periods for every four (4) hours worked, or major fraction thereof, in violation of California law.

118.   Plaintiff asserts that non-exempt employees, including Plaintiff, were required by Defendants to remain readily available to engage in work during rest periods because, among other things, the unbearable work schedule assigned to non-exempt employees did not allow time for employees to take legally compliant rest periods, as discussed herein. In addition, non-exempt employees were required to carry personal cell phones, a tablet, and/or radio and respond to telephone calls and/or messages during rest periods. Therefore, Defendants failed to relinquish all control over non-exempt employees and/or relieve non-exempt employees of all duty during rest periods as required by California law.

119. Plaintiff asserts that Defendants did not, and do not, have a policy, practice, procedure, guideline, and/or culture for non-exempt employees to document and/or report non-compliant rest periods.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

120.   Plaintiff further asserts that Defendants failed to pay her and other non-exempt employees the premium wage required by California law for non-compliant rest periods.

121.   Plaintiff believes that Defendants know, or should know, that it failed to authorize and permit non-exempt employees to take legally compliant rest periods and/or failed to provide them with the legally required premium compensation in lieu thereof since, among other things, Defendants required non-exempt employees to remain readily available to engage in work during rest periods.

122.   Due to Defendants' unlawful conduct, as described herein, Plaintiff and other non-exempt employees have, and will continue, to suffer damages in an amount which is presently unknown, but which exceeds the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

123.   According to Labor Code § 226.7(c) and IWC Order No. 4-2001, Subdiv. 12(B), Plaintiff and other non-exempt employees are entitled to, and seek to, recover the full amount of unpaid premium wages for non-compliant rest periods.

124.   Pursuant to Labor Code § 218.6, Plaintiff and other non-exempt employees are entitled to seek recovery of prejudgment interest on the amount of premium wages owed.

125.   Plaintiff and other non-exempt employees are entitled to, and seek to, recover reasonable attorneys' fees and costs pursuant to Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

126.   Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

**FOURTH CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO PAY ALL WAGES OWED UPON SEPARATION**

**[Labor Code §§ 201-203]**

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

127.   Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

128.   Labor Code § 200(a) defines "wages" to include "all amounts for labor performed by employees...whether the amount is fixed or ascertained by the standard of time...commission basis, or other method of calculation." The term "labor" is further defined in subsection (b) to include "labor, work, or service whether rendered or performed under contract, subcontract, partnership...or other agreement if the labor...is performed personally by the person demanding payment."

129.   Pursuant to Labor Code § 201(a), when an employer discharges an employee, all earned wages that remain unpaid at the time of discharge are due and payable to the employee immediately.

130.  According to Labor Code § 202(a):

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of mailing shall constitute the date of payment for purposes of the requirement to provide payment with 72 hours of the notice of quitting.

131.  In pertinent part, Labor Code § 203(a) further provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action thereof is commenced; but the wages shall not continue for more than 30 days.

132.   As described herein, Defendants knowingly failed to compensate its non-exempt employees for all time worked, failed to pay minimum wages, overtime, and double time compensation to non-exempt employees, and failed to pay legally required premium wages to non-exempt employees for non-compliant meal and/or rest periods. Although

28

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

Defendants no longer employ a number of non-exempt employees, Plaintiff alleges, based on information and belief, that Defendants have not yet paid all wages owed to its former non-exempt employees as a result of such conduct.

133.   In addition, Plaintiff contends that Defendants have a policy, practice, guideline and/or culture of not paying the required waiting time penalties.

134.   As a consequence of Defendants' willful and deliberate refusal to furnish such wages, the affected employees are entitled to a maximum of thirty (30) days' wages at their daily rate of pay as a waiting time penalty pursuant to Labor Code § 203.

135.   Plaintiff and other non-exempt employees are entitled to, and seek to, recover reasonable attorneys' fees and costs pursuant to Labor Code § 218.5 and Code of Civil Procedure § 1012.5.

136.   Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

**FIFTH CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO PROVIDE PAID SICK LEAVE AND WRITTEN NOTICE OF THE AMOUNT OF SICK LEAVE AVAILABLE**

**[Labor Code § 246]**

137.   Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

138.   Under Labor Code § 246(b)(1) an employee shall accrue a minimum of one (1) hour of paid sick time for every thirty (30) hours worked.

139.   Labor Code § 246(b)(4) requires that an employer provide at least twenty-four (24) hours or three (3) days of paid sick time per year for full-time employees.

140.   Labor Code § 246(i) further requires an employer to provide an employee with written notice which sets forth the amount of paid sick leave available, or paid time off leave an employer provides in lieu of sick leave, on either the employee's itemized wage statement

or in a separate writing provided on the designated pay date with the employee's payment of wages.

141. Plaintiff asserts that Defendants had, and continue to have, a policy, practice, procedure, guideline, and/or culture of failing to provide her and other non-exempt employees with the required minimum of one (1) hour of paid sick leave for every thirty (30) hours worked. Additionally, because Defendants did not account for all time worked, as described herein, by Plaintiff and other non-exempt employees, Plaintiff and other non-exempt employees were unable to accrue paid sick time at the rate provided by the Labor Code.

142. Plaintiff also alleges Defendants failed to provide her and other non-exempt employees with written notice of their available sick time, on either the itemized wage statement provided to them or in a separate writing provided on the designated pay date, in violation of California law.

143. Plaintiff and other non-exempt employees are entitled to, and seek, penalties under Labor Code § 246 and the recovery of reasonable attorneys' fees and costs pursuant to Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

144. Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

**SIXTH CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS**

**[Labor Code §§ 226 and 226.3]**

145. Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

146. Labor Code § 226 states in pertinent part:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee… (5) net wages earned, (6) the inclusive dates of the period for

30

which the employee is paid… (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number…(8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during each period and the corresponding number of hours worked at each hourly rate by the employee…"

147.   Labor Code § 226(e)(1) further provides:

An employee suffering injury as a result of knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

148.   According to Labor Code § 226(h), "an employee may also bring an action for injunctive relief to ensure compliance with this section and is entitled to an award of costs and reasonable attorneys' fees."

149.   An injury occurs where the employer fails to provide accurate information and the employee cannot "promptly and easily determine" the total number of hours worked or the "applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." (Labor Code § 226(a)(9)-(e)(2)(B)(i).)

150.   Labor Code § 226(e)(2)(c) explains that the phrase "promptly and easily determine" means that "a reasonable person would be able to readily ascertain the information without reference to documents or information."

151.   Plaintiff asserts that Defendants had, and continue to have, a policy, practice, procedure, guideline and/or culture of regularly failing to provide accurate and itemized wage statements to her and other non-exempt employees.

152.   As such, Defendants failed to comply with Labor Code § 226 because they failed to provide Plaintiff and other current or former non-exempt employees with any legally compliant wage statements. Plaintiff contends that Defendants failed to provide wage statements that accurately reflect the gross wages and/or net wages earned due to Defendants' failure to compensate non-exempt employees for all time worked, failure to pay the appropriate overtime and double time compensation to non-exempt employees for hours

worked beyond eight hours per day and/or forty hours per week, and failure to pay premium wages to non-exempt employees for non-compliant meal and/or rest periods.

153.    Defendants also failed to provide wage statements that properly include deductions, pay period information, the name of the individual and either their last four (4) digits of their social security number or employee identification number, and the name and address of the legal entity that is the employer. Moreover, Defendants did not properly include the individual's available sick time on each wage statement provided to non-exempt employees.

154.    As a result, Plaintiff and other non-exempt employees were unable to readily ascertain, from their wage statements, whether they were properly compensated for all time worked. Plaintiff and other non-exempt employees have therefore suffered injury under California law due to Defendants' knowing and intentional failure to furnish accurate itemized wage statements.

155.    According to Labor Code § 226(e)(1), Plaintiff and other non-exempt employees are entitled to, and seek to recover, liquidated damages in the amount of $50.00 for the initial violation and $100.00 for each subsequent violation per employee, not to exceed $4,000.00.

156.    Additionally, pursuant to Labor Code § 226(h), Plaintiff and other non-exempt employees are entitled to, and therefore seek, injunctive relief in order to ensure Defendants' compliance with Labor Code § 226.

157.    Plaintiff and other non-exempt employees are also entitled to, and seek recovery of, attorneys' fees and costs as provided under Labor Code §§ 218.5, 226(e)(1) and 226(h) and Code of Civil Procedure § 1021.5.

158.    Plaintiff, on behalf of herself and other current or former non-exempt employees requests further relief as described in the below prayer.

**SEVENTH CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO MAINTAIN ACCURATE RECORDS**

32

**[Labor Code §§ 226(a), 1174 and IWC Wage Order No. 4-2001, Subdiv. 7]**

159.   Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

160.   Pursuant to Labor Code § 226(a), an employer must keep a copy of each wage statement and record of deductions on file for at least three (3) years.

161. Section 1174(d) of the Labor Code provides:
> "[e]very person employing labor in this state shall keep at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by commission, but in case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned." (See also IWC Wage Order 4-2001, Subdiv. 7.)

162. As discussed herein, Plaintiff asserts that Defendants did not have, and do not have, a policy, practice, procedure, guideline, and/or culture of accurately documenting and/or recording non-exempt employee's time in and time out each workday. Plaintiff also contends that she and other non-exempt employees received paychecks from Defendants that did not accurately reflect all gross and/or net wages earned, and/or the total hours of time worked each day. Consequently, Plaintiff contends that Defendants had, and continue to have, a policy, practice, procedure, guideline, and/or culture of intentionally and willfully failing to maintain non-exempt employee's payroll records.

163.   Plaintiff further alleges that Defendants failed to maintain copies of all documents related to the employment of non-exempt employees, and/or failed to provide non-exempt employees with the opportunity to inspect or copy such documents upon request in violation of California law.

164.   Plaintiff and other non-exempt employees have suffered, and continue to suffer, injuries and damages as a consequence of Defendants' deliberate failure to maintain accurate records in violation of California law. More specifically, as a result of Defendants'

33

conduct, Plaintiff and other non-exempt employees were denied their legal right and protected interest in having accurate and complete payroll records available to them.

165.   Plaintiff and other non-exempt employees are thus entitled to, and do seek, recovery of damages as outlined in Labor Code § 226 (e)(1).

166.   As provided for in Labor Code §§ 218.5 and 226(e)(1) and Code of Civil Procedure § 1021.5, Plaintiff and other non-exempt employees are entitled and seek to recover reasonable attorneys' fees and costs.

167.   Plaintiff, on behalf of herself and other members of the putative Class, requests further relief as described in the below prayer.

### EIGHTH CAUSE OF ACTION

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO PROVIDE COPIES OF SIGNED DOCUMENTS**

**[Labor Code § 432 and IWC Wage Order No. 4-2001, Subdiv. 7**

168. Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

169.   Labor Code § 432 requires an employer to provide its employee, upon request, with copies of any and all documents signed by the employee relating to the obtaining or holding of employment. (See also IWC Wage Order NO. 4-2001, Subdiv. 7.)

170.   Plaintiff alleges that, although she and other non-exempt employees signed documents that relate to their employment with Defendants, they failed to maintain and/or provide Plaintiff and other non-exempt employees with copies of all such documents.

171.   Plaintiff and other non-exempt employees are entitled to, and seek recovery of, reasonable attorneys' fees and costs as provided for under Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

172.   Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

**NINTH CAUSE OF ACTION**

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

**FAILURE TO REIMBURSE FOR NECESSARY WORK EXPENSES**

**[Labor Code §§ 2800, 2802 and IWC Wage Orders No. 4-2001, Subdiv. 9]**

173.   Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

174.   Labor Code § 2800 requires employers in all cases to indemnify employee losses caused by the employer's want of ordinary care.

175.   In pertinent part, Labor Code § 2802 provides:

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…
>
> [...]
>
> (c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

176.   According to IWC Order No. 4-2001, Subdiv. 9(A), when an employer requires uniforms to be worn by its employees, the employer is required to provide and maintain such uniforms. The term "uniform" includes apparel of distinct color or design.

177.   As a policy, practice, procedure, guideline, and/or culture, Defendants require non-exempt employees to wear a distinctive shirt affixed with the Defendants' logo as a condition of their employment. However, Defendants have only provided a shirt, and have not provided any jacket despite the cold weather and promises to provide a jacket. In addition, Defendants require their non-exempt employees to wear black shoes and black pants while working on behalf of Defendants. As a practice or procedure, Defendants neither provides non-exempt employees with the black shoes and black pants, nor reimburses non-exempt employees for the cost of purchasing and/or maintaining the required uniform in violation of California law.

35

178.   In addition, non-exempt employees are required to use their personal cell phones for work related issues, such as communicating with supervisors and/or co-workers and tracking flight details, such as arrivals, departures, and gate changes. However, Defendants fail to reimburse non-exempt employees for a percentage of cell phone bill.

179.   Plaintiff and other current or former non-exempt employees are entitled to, and seek, reimbursement of their necessary expenditures, plus interest, including reasonable attorneys' fees and costs pursuant to Labor Code §§ 2800 and 2802.

180.   Plaintiff and other non-exempt employees are entitled to, and seek recovery of, reasonable attorneys' fees and costs as provided for under Labor Code § 218.5 and Code of Civil Procedure § 1021.

181.   Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

### TENTH CAUSE OF ACTION

**(By Plaintiff Individually and on Behalf of the Class(es) against Defendants & Does 1-10)**

### VIOLATION OF THE UNFAIR COMPETITION LAW

**[Bus. & Prof. Code §§ 17200 *et seq.*]**

182.   Plaintiff realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

183.   As codified in Bus & Prof. Code §§ 17200 *et seq.*, California's Unfair Competition Law ("UCL") broadly prohibits "any unlawful, unfair or fraudulent business act or practice."

184.   A cause of action may be brought under the UCL if a business practice violates some other law. The "unlawful" prong of the UCL effectively deems a violation of the underlying law a per se violation of Bus. & Prof. Code § 17200. (*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*. (1999) 20 Cal.4th 163, 180.) Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for a § 17200 "unlawful" violation. (*Farmers Ins. Exch. v. Superior Court* (1992) 2 Cal.4th 377, 383.)

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

185.   The "unfair" prong of the UCL does not, however, require a practice to be specifically proscribed by any law. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 20 Cal.4th 1134, 1143 (internal citations omitted.).) Pursuant to the California Supreme Court, the "unfair standard" is intentionally broad to give maximum discretion to courts in prohibiting new schemes to defraud. (*Cel-Tech Commc'ns, Inc.*, *supra*, 20 Cal.4th at 180-81.)

186.   Under the UCL, a "fraudulent" business act or practice is one where "members of the public are likely to be deceived." (*Blakemore v. Superior Court* (2005) 129 Cal. App. 4th 36, 49.) A showing of actual deception, reasonable reliance, or damages is not required. (*Ibid.*) The fraudulent prong may be used to attack the deceptive manner in which otherwise lawful contract terms are presented to an individual. (*Boschma v. Home Loan Ctr., Inc.* (2011) 198 Cal.App.4th 230, 253.) As such, even a true statement may be unlawful under section 17200 if it is "couched in such a manner that is likely to mislead or deceive..., such as by failing to disclose other relevant information." (*Ibid*.)

187.   As discussed herein, Defendants' business practices violate all three prongs of California's UCL.

<u>Unlawful</u>

188.   As described herein, Defendants violated the Labor Code by failing to properly compensate its non-exempt employees minimum wages and/or overtime/double time compensation for all time worked. Since Defendants' failure to compensate employees for all time worked clearly violates California law, Defendants' conduct is a per se violation of the UCL. *Cel-Tech Commc'ns, Inc.*, 20 Cal.4th at 180. Defendants also failed to pay premium wages to its non-exempt employees for non-compliant meal and rest periods as required by California law. Plaintiff is also informed and believes that Defendants failed to pay all wages owed to non-exempt employees upon termination of the employment relationship with Defendants in violation of California law. Defendants further failed to furnish itemized and accurate wage statements that accurately reflected the total hours actually worked and gross and/or net wages earned by non-exempt employees,

among other things. Therefore, Defendants have clearly engaged in unlawful business practices pursuant to Bus. & Prof. Code §§ 17200 *et seq*.

Unfair

189. Defendants' policy, practice, procedure, guideline, and/or culture of failing to compensate non-exempt employee's minimum wages and overtime/double time compensation for all hours worked is unfair because Defendants prevented non-exempt employees from receiving timely and adequate compensation for all time worked in violation of California's policy of prompt payment of wages.

190. Defendants' failure to provide non-exempt employees with legally compliant meal and/or rest periods and/or compensation in lieu thereof is unfair because it knowingly strips non-exempt employees of the rights and compensation afforded to them by the Labor Code.

Fraudulent

191. Defendants' policy, practice, procedure, guideline, and/or culture of failing to provide Plaintiff and other non-exempt employees with accurate wage statements constitutes a fraudulent business practice under the UCL because Plaintiff and other non-exempt employees are likely to be, and actually are, deceived as to whether they were paid for all time worked.

192. Defendants' policy, practice, procedure, guideline, and/or culture of failing to maintain accurate records also constitutes a fraudulent business practice as the inaccuracies intentionally mislead non-exempt employees as to their total hours worked and gross and/or net wages earned.

193. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff and other current or former non-exempt employees have suffered injury-in-fact and have lost wages rightfully owed to them.

194. Through their unlawful, unfair, and fraudulent conduct, Defendants have been unjustly enriched by receiving and continuing to receive benefits and profits at the expense of non-exempt employees. Pursuant to Bus. & Prof. Code §§ 17200 *et seq*., Defendants should, thus, be enjoined from this activity and made to disgorge all ill-gotten gains and

38

restore Plaintiff and other non-exempt employees the wages wrongfully withheld from them.

195.    Moreover, the unlawful, unfair, and fraudulent conduct alleged herein has continued, and there is no indication that Defendants will refrain from such activity in the future especially as Defendants knowingly deprived non-exempt employees of minimum wages and overtime/double time compensation. Plaintiff believes and alleges that if Defendants is not enjoined from the conduct described herein, they will continue to violate California law at the expense of non-exempt employees. Accordingly, Plaintiff requests that the court issue a preliminary and permanent injunction against Defendants.

196. Plaintiff, on behalf of herself and other non-exempt employees, requests further relief as described in the below prayer.

**ELEVENTH CAUSE OF ACTION**

**(By Plaintiff in her Representative Capacity against Defendants and Does 1-10)**

**PRIVATE ATTORNEY GENERAL ACT OF 2004**

**[Labor Code §§ 2698 *et seq.*]**

197. Plaintiff Villanueva realleges and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

198. Pursuant to PAGA, any provision of the Labor Code allowing for a civil penalty to be assessed and collected by the LWDA, or any of its departments, divisions, commissions, boards, agencies, or employees, for a California Labor Code violation, may be recovered through a civil action brought by an aggrieved employee on behalf of themselves or herself, and other current or former employees. Such civil penalties are in addition to any other relief provided for under the Labor Code and must be allocated seventy-five percent (75%) to the LWDA and twenty-five percent (25%) to the aggrieved employees pursuant to § 2699(i).

199. Defendants employed Plaintiff Villanueva and each of the current or former employees she represents in the state of California during all, or a portion of, the statute of limitations period before Plaintiff filed her notice with the LWDA.

39

200. Plaintiff is an "aggrieved employee" under PAGA, as she was employed by Defendants within the past year and suffered one or more violations of the Labor Code.

201. Plaintiff has complied with the notice requirements outlined in Labor Code § 2699.3. On April 4, 2023, Plaintiff Villanueva submitted notice to the LWDA and Defendants informing them of Defendants' alleged Labor Code violations pursuant to PAGA. (See **Exhibit 1**.). The LWDA had sixty-five (65) days to provide notice of whether it intended to investigate the alleged violations. To date, the LWDA has not provided notice of whether it intends to investigate the alleged violations. Plaintiff Villanueva thus has the right to pursue, and does pursue, such claims under the PAGA in her representative capacity pursuant to Labor Code § 2699.3.

202. As set forth herein, Defendants have committed, and continue to commit, numerous violations for which the Labor Code entitles Plaintiff, in her representative capacity, to recover, on behalf of herself, the PAGA Collective, and the general public, the statutory and civil penalties, as well as attorneys' fees and costs for Defendants' violations of the Labor Code, as alleged herein.

203. Plaintiff Villanueva, in her representative capacity on behalf of herself and the PAGA Collective, is entitled to, and does seek to, recover civil penalties for violations of the following Labor Code provisions in this representative action:

      a.     Failure to provide legally compliant meal periods or compensation in lieu thereof in violation of Labor Code §§ 204, 226.7, 512 and IWC Wage Order No. 4-2001;

      b.     Failure to provide legally compliant rest periods or compensation in lieu thereof in violation of Labor Code § 204, 226.7 and IWC Wage Order No. 4-2001;

      c.     Failure to pay minimum wages and overtime/double time compensation in violation of Labor Code §§ 204, 210, 510, 1194, 1197, 1197.1, 1198, 1199 and IWC Wage Order No. 4-2001;

      d.     Failure to pay all wages owed upon termination and/or waiting time

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

penalties in violation of Labor Code §§ 201-203;

e.    Failure to provide paid sick days and written notice of the amount of sick leave available in violation of Labor Code §§ 233, 234, 246, 246.5;

f.    Failure to timely furnish legally compliant and/or accurate itemized wage statements in violation of Labor Code §§ 226, 226.3 and IWC Wage Order No. 4-2001;

g.    Failure to maintain accurate employee, time, and payroll records in violation of Labor Code §§ 226(a), 1174 and IWC Wage Order No. 4-2001;

h.    Failure to provide a right to a copy of signed documents in violation of Labor Code § 432;

i.    Failure to reimburse for necessary business expenses in violation of Labor Code §§ 2800 and 2802 and IWC Wage Order No. 4-2001.

204.  For violations of Labor Code §§ 510 and 512, in addition to any other penalty provided by law, Labor Code § 558 imposes a civil penalty of $50 per pay period for each underpaid employee for the initial violation and $100 per pay period for each underpaid employee for each subsequent violation of any section of Labor Code Division 2, Part 2, Chapter 1, or any provision regulating hours and days of work in any order of the IWC. Therefore, Plaintiff, in her representative capacity on behalf of herself and the PAGA Collective is entitled to, and does seek, such civil penalties.

205.  Labor Code § 1197.1 subjects any employer or person to a civil penalty of $100 for any initial violations for each underpaid employee and $250 for each underpaid employee for each subsequent violation, restitution of wages and liquidated damages payable to the employee and any applicable penalties imposed by section 203 for paying or causing to pay an employee less than the minimum wage imposed by California law. Plaintiff, therefore, is entitled to, and does seek, in her representative capacity, the outlined civil penalty.

206.  Labor Code § 226.3 imposes a civil penalty of $250 per employee per

41

violation in an initial citation and $1,000 per employee for each violation in a subsequent citation for violations of Labor Code § 226(a). Plaintiff and other Employees in the state of California are thus entitled to, and do seek, the described civil penalties.

207.  For violations of Labor Code § 1174 subdivisions (b), (c), and (d), Labor Code § 1174.5 imposes a civil penalty of $500. Plaintiff, in her representative capacity on behalf of herself and the PAGA Collective is entitled to, and therefore seeks, such civil penalty.

208.  In addition to any other penalty, Labor Code § 210 provides that any person who fails to pay wages as provided in sections 201.3, 204, 204b, 204.1, 204.2, 205, 205.5, and 1197.5, shall be subject to a civil penalty of $100 for any initial violation for each failure to pay each employee and for each subsequent violation, or any willful or intentional violation, $200 for each failure to pay each employee, plus 25% of the amount unlawfully withheld. Plaintiff and other Employees in the state of California are thus entitled to, and therefore seek, the described civil penalties.

209.  Labor Code § 2699(f) imposes a civil penalty of $100 per pay period, per employee for the initial violation and $200 per pay period, per employee for each subsequent violation for all Labor Code provisions for which a civil penalty is not specifically provided, including, but not limited to, Labor Code §§ 201, 202, 203, 204, 210, 226, 226(a), 226.3, 226.7, 233, 234, 246, 246.5, 432, 510, 512, 1102.5, 1174, 1194, 1197, 1197.1, 1198, 1199, 2800, 2802. Thus, Plaintiff, on behalf of herself and the PAGA Collective is entitled to, and therefore seeks, the above-described civil penalties.

210.  Pursuant to Labor Code § 2699(g)(1) an employee who prevails in a civil action brought pursuant to the PAGA shall be entitled to an award of reasonable attorneys' fees and costs. Therefore, Plaintiff Villanueva, in her representative capacity, is entitled to, and therefore seeks, attorneys' fees and costs in relation to this action.

211.  Plaintiff Villanueva, in her representative capacity, on behalf of herself and other members of the PAGA Collective is entitled to, and seeks to, recover reasonable attorneys' fees as provided by Labor Code §§ 218.5, 1193.6, 1194 and Code of Civil

42

1    Procedure § 1021.5.

2         212.   Plaintiff Villanueva, in her representative capacity on behalf of herself and

3    the PAGA Collective requests further relief as described in the below prayer.

4                                    **PRAYER FOR RELIEF**

5         Plaintiff prays for judgment against Defendants and in favor of the class(es) and/or sub-

6    class(es) as follows:

7         1.   For an order determining that this action may be maintained as a class

8              action with the named Plaintiff as the class representative;

9         2.   For the attorneys appearing on the above caption to be named class

10             counsel;

11        3.   For and order determining that this action may be maintained as a

12             representative action;

13        4.   For all wages and benefits due to Plaintiff and other non-exempt

14             employees currently and formerly employed by Defendants pursuant

15             to California law;

16        5.   For all minimum wages and overtime compensation owed pursuant to

17             Labor Code §§ 510, 1194, 1197.1, and/or other applicable law;

18        6.   For premium wages pursuant to Labor Code § 226.7 and/or other

19             applicable law;

20        7.   For damages pursuant to Labor Code §§ 226, 226.8(c), 246, Civil

21             Code § 3281, and/or other applicable law;

22        8.   For unreimbursed business expenses pursuant to Labor Code §§ 2800,

23             2802, and/or other applicable law;

24        9.   For all liquidated damages, pursuant to Labor Code §§ 226(e),

25             1194.4(a), 1197.1, and/or other applicable law;

26        10.  For civil penalties pursuant to Labor Code §§ 210, 226.3, 558,

27             1174.5, 1197.1, 2699(f) and/or other applicable law;

28

FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION
AND INJUNCTIVE RELIEF

11. For PAGA civil penalties pursuant to Labor Code §§ 2698 *et seq.* and/or other applicable law;

12. For injunctive relief, pursuant to Labor Code § 266(h) and Bus. & Prof. Code § 17203, and/or other applicable law;

13. For restitution Defendants' unfair, unlawful, and fraudulent business practices;

14. For reasonable attorneys' fees and costs of suit pursuant to Labor Code §§ 218.5, 266(h), 266(e)(1), 1194, 2802, Code of Civil Procedure § 1021.5, the "common fund" theory, the "substantial benefit" theory and/or other applicable law, theory or doctrine;

15. For pre-judgment and post-judgment interest as provided by California law;

16. For appropriate equitable relief pursuant to California law; and

17. For any and all other relief the Court may deem just and proper.

Dated: June 29, 2023                    **CONSUMER & EMPLOYMENT LAW GROUP**

By: _____
R. Craig Clark
Alicja A. Urtnowski
*Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues triable to a jury.

Dated: June 29, 2023                    **CONSUMER & EMPLOYMENT LAW GROUP**

By: _____
R. Craig Clark
Alicja A. Urtnowski
*Attorneys for Plaintiff*

44
FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF

# Exhibit 1

# Exhibit 1



**CONSUMER & EMPLOYMENT**
LAW GROUP

3258 Fourth Avenue
San Diego, California 92103
Phone: (619) 239-1321
Facsimile: (888) 273-4554
consumerandemploymentlawgroup.com
*Formerly known as Clark Law Group*

April 4, 2023

*Transmitted via Online Upload*

California Labor and Workforce Development Agency
***ATTN: PAGA Administrator***
1515 Clay Street, Suite 801
Oakland, CA 94612

**RE:    Allison Villanueva v. SAS SERVICES SAN DIEGO, INC,
G2 Secure Staff, L.L.C., and G2 SECURE STAFF CA, L.P.**

Dear PAGA Administrator,

The purpose of this correspondence is to notify you that **Allison Villanueva** ("Ms. Villanueva"), on behalf of herself and all others similarly situated, intends to assert the legal rights granted to her under the Private Attorneys General Act (the "Act"), as set forth in California Labor Code ("Labor Code") §§ 2698 et seq. This correspondence includes the current facts and theories to support the violations alleged herein. This correspondence will also be sent to the agent for service of process for **SAS SERVICES SAN DIEGO, INC, G2 Secure Staff, L.L.C., and G2 SECURE STAFF CA, L.P.** ("SAS Services") via certified mail. Therefore, this correspondence serves to satisfy the notice requirements of the Act. By uploading and sending this correspondence in the manner set forth in the Act, Ms. Villanueva is complying with the Act's statutory notice requirements.

### Factual Statement and Theories of Liability

Ms. Villanueva has been employed by SAS Services as a non-exempt hourly employee from approximately June 2019 to present. Throughout her employment, Ms. Villanueva was assigned to work at the San Diego, California airport location.

SAS SERVICES SAN DIEGO, INC is a California corporation that does business in California. Specifically, it is in the business of airport customer services, including passenger assistance and wheelchair services, bag porter services, skycap services, security services, checkpoint customer service agents, unaccompanied minor escort services, janitorial services, cabin-cleaning, and utility services. See www.sas-serv.com

G2 Secure Staff, LLC is a Texas corporation that does business in California. Specifically, it is in the business of airport customer services, including passenger assistance and wheelchair services, bag porter services, skycap services, security services, checkpoint customer service agents, unaccompanied minor escort services, janitorial services, cabin-cleaning, and utility services. See www.sas-serv.com and  https://www.g2securestaff.com/ It is believed that around November 2022, G2 Secure Staff acquired S.A.S. Services Group, Inc. (S.A.S.) and Flight Services and Systems, LLC (FSS).

Similarly, G2 SECURE STAFF CA, L.P. is believed to be a Texas corporation that does business in California. It is also in the business of airport customer service. See https://www.g2securestaff.com/.

Ms. Villanueva asserts that she and other individuals currently or formerly employed by SAS Services in the state of California as non-exempt employees (collectively referred to herein as ("Employees"), were subject to the same and/or similar policies, practices, guidelines, procedures and/or culture described herein. Ms. Villanueva further asserts that she and all other Employees have suffered, and will continue to suffer, the same and/or similar Labor Code violations described herein.

Any and all claims alleged in this correspondence are asserted on behalf of Ms. Villanueva and all other current or former Employees who were employed by SAS Services in California, during the applicable statutory period and who have suffered the same and/or similar Labor Code violations alleged herein, as well as any other violations of the PAGA arising out of their employment with SAS Services that may be later discovered since the investigation is ongoing.

Because the investigation is ongoing, Ms. Villanueva reserves her right to assert any and all related facts, claims, and/or theories discovered after the sending of this correspondence on behalf of herself and the current or former Employees that she seeks to represent against SAS Services and/or other persons that may be discovered after the sending of this correspondence. Such other persons include, but are not limited to, those persons who have acted as an agent, subsidiary, servant, employee, co-conspirator, alter-ego, and/or joint venture of SAS Services, as well as those persons who caused and/or concurrently contributed to the various acts and/or omissions of each and every one of the others,



including SAS. Services, in proximately causing the wrongful conduct, harm, and/or damages alleged herein or otherwise participated in and/or ratified any or all of the acts or omissions complained of herein, and those who are acting within the authority and scope of SAS Services. *Atempa v. Pedrazzani,* 27 Cal.App.5th at 811-813.

## I. SAS Services Failed to Pay Minimum, Regular, Overtime, and/or Double Time Wages in Violation of Labor Code §§ 204, 210, 510, 1194, 1197, 1197.1, 1198 and 1199 and IWC Wage Order No. 4-2001.

Labor Code § 204 establishes the fundamental right of an employee in California to be timely paid wages for their work. Pursuant to Labor Code § 1197, an employer is prohibited from paying or causing its employees to be compensated at a rate less than the fixed minimum, as set by the commission, for all time worked. See also Labor Code § 1199 (making such conduct a misdemeanor); IWC Wage Order No. 4-2001, subdiv. 4.

Additionally, it is unlawful for an employer to employ persons for more than eight hours per day and/or forty hours per workweek without compensating them at the rate of one and one-half or two times the employee's regular pay rate, depending on the number of hours worked. Labor Code §§ 510, 1198; see also IWC Wage Order No. 4-2001, subdiv. 3(A). Pursuant to Labor Code § 1194, an employee is permitted to recover any unpaid balance of the minimum wage or overtime compensation not paid for all hours worked. Moreover, any employer who causes an employee to be paid a wage lower than that of the fixed minimum is required to pay a civil penalty. Labor Code § 1197.1; see also IWC Wage Order No. 4-2001, subdiv. 20(A).

Ms. Villanueva asserts that as a policy, practice, guideline, procedure, and/or culture SAS Services does not properly compensate its Employees for all hours worked. Ms. Villanueva contends that SAS Services required her and other Employees to perform work on behalf of SAS Services without compensation.

As a policy, practice, guideline, procedure, and/or culture, SAS Services requires its Employees to clock in and out of their job using a finger scan device on the wall. However, the device often did not work and Employees were required to use handwritten timesheets.

SAS Services Employees, including Ms. Villanueva, were often required to work off the clock. For example, Ms. Villanueva asserts that SAS Services often required her and other Employees to clock out and continue working, depriving them proper wages for all hours worked, including overtime. For example, Employees are often forced to work off the clock because of flight delays and being understaffed. Often, Employees were required to wait for delayed flights and/or assist passengers at the airport, while being off the clock. As such,



3258 Fourth Avenue • San Diego, California 92103• Phone: (619) 239-1321 • Facsimile: (888) 273-4554
consumerandemploymentlawgroup.com • *Formerly known as Clark Law Group*

3

Ms. Villanueva and other Employees did not receive the minimum, overtime, and/or double-time compensation they are entitled to. SAS Services regularly shaves and/or shortens Employees' hours worked and does not compensate its non-exempt employees for all time worked as required by California law.

Ms. Villanueva contends that as a policy, practice, guideline, procedure, and/or culture, SAS Services regularly requires Employees to work more than 8 hours per day and/or 40 hours per week, without being paid the appropriate overtime and/or double time compensation. Because SAS Services failed to appropriately pay overtime and/or double-time compensation to Employees who worked more than 8 hours per day and/or 40 hours per week, SAS Services did not pay its non-exempt employees in accordance with California law.

Moreover, Ms. Villanueva asserts that SAS Services has a policy, practice, guideline, procedure, and/or culture of automatically deducting a thirty-minute meal period from the hours worked by its Employees regardless of whether they were actually provided with an opportunity to take a thirty-minute meal period free from all work activities. SAS Services thus regularly engage in work-related activities during the time that SAS Services automatically deducts from their time worked.

Additionally, Ms. Villanueva alleges that SAS Services fails to timely pay all earned wages. For instance, the paychecks Ms. Villanueva and other Employees receive from SAS Services do not include compensation for all hours worked and are often late, as described herein. Ms. Villanueva asserts that despite notifying SAS Services of the error, SAS Services did not promptly remedy the issues by paying all wages earned and due.

Based on the foregoing, Ms. Villanueva asserts that SAS Services engaged in conduct that violated California law by failing to compensate her and other Employees appropriately.

### II. SAS Services Failed to Provide Legally Compliant Meal Periods or Compensation in Lieu Thereof, in Violation of Labor Code §§ 204, 226.7 and 512 and IWC Wage Order No. 4-2001

Labor Code § 512 states, "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Additionally, an employer is not permitted to employ a person for a work period of more than ten hours per day without providing the employee with a second meal period of at least thirty minutes. Labor Code § 512. Meal periods of no less than 30 minutes must be provided before the end of the employee's fifth and tenth hours of work, respectively. *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1041. California law further obligates employers to completely relieve its employees of all work



3258 Fourth Avenue • San Diego, California 92103• Phone: (619) 239-1321 • Facsimile: (888) 273-4554
consumerandemploymentlawgroup.com • *Formerly known as Clark Law Group*

4

and work-related responsibilities during the entirety of the legally required meal periods. Id. at 1040. In order to comply with their meal period obligations, employers must also relinquish all control over its employees, and cannot impede or discourage its employees from taking uninterrupted, work-free meal periods. Id. An employee who is required to perform any work-related task at any point during his or her meal period has not received a meal period in accordance with California law. Labor Code § 226.7.

If an employer fails to provide an employee with a legally compliant meal period, the employer **must** pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that a legally compliant meal period was not provided. Labor Code § 226.7; IWC Wage Order No. 4-2001, subdiv. 11(D). Premium wages under Labor Code § 226.7 are wages due payable in accordance with the Labor Code. *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103-1114; see also Labor Code § 204.

As a policy, practice, guideline, procedure, and/or culture SAS Services regularly requires their non-exempt employees to work more than 5 hours per workday. However, despite regularly working more than 5 hours per workday, Employees, such as Ms. Villanueva, were not provided with the reasonable opportunity to take meal periods that occurred before the 5th hour of work and/or that were free from all work and work-related responsibilities during the entirety of the 30-minute meal period.

Additionally, even though SAS Services Employees often worked more than 10 hours in a day, SAS Services failed to provide them with a second meal period of at least thirty minutes.

Ms. Villanueva asserts that the demanding work schedule assigned to SAS Services Employees did not allow time for legally compliant meal periods. Moreover, Ms. Villanueva alleges that as a policy, practice, guideline, procedure, and/or culture SAS Services does not schedule any meal periods for its non-exempt employees.

Ms. Villanueva asserts SAS Services failed to provide any relief for Employees to be able to take legally compliant breaks. In fact, Ms. Villanueva asserts that her supervisor often instructed her and other Employees not to take breaks and/or work through meal breaks, and often yelled at Employees for taking breaks.

Ms. Villanueva contends that this is due in part to SAS Services' requirement that its employees be readily available to perform their work duties during meal periods, including assisting passengers and/or customers at the airport, monitoring arrivals and departures, waiting by the gates, and transferring around the airport with a wheelchair, among other duties.


3258 Fourth Avenue • San Diego, California 92103• Phone: (619) 239-1321 • Facsimile: (888) 273-4554
consumerandemploymentlawgroup.com • *Formerly known as Clark Law Group*

5

Ms. Villanueva contends that SAS Services has a policy, practice, guideline, procedure, and/or culture of automatically deducting 30 minutes for a meal period regardless of whether Employees were provided with the opportunity to take a legally compliant meal period. As such, SAS Services often adjusted its' Employees timesheets to reflect meal breaks, even though a compliant meal break was not taken.

Ms. Villanueva, therefore, contends that SAS Services has a policy, practice, guideline, procedure, and/or culture that requires SAS Services Employees to engage in their job duties for the entire duration of their work shift. As a result, SAS Services Employees are not provided with legally compliant meal periods.

Ms. Villanueva also contends that SAS Services requires Employees to carry a personal cell phone, a radio, and/or a tablet for the entire duration of their work shift, including during meal periods. SAS Services Employees were also expected to be readily available to perform work on behalf of SAS Services during meal periods, such as by responding to calls and/or messages from supervisors and/or co-workers, and monitoring flight arrivals, departures, and gates. As a result, SAS Services Employees were not provided with meal periods that were free from work or interruption.

Overall, SAS Services Employees were not provided with the opportunity to take meal periods that were free from work-related responsibilities. By imposing unbearable work schedules onto its non-exempt employees, SAS Services compelled, encouraged, and/or otherwise directed its non-exempt employees to work through their meal periods.

Ms. Villanueva further contends that SAS Services does not have a procedure for Employees to document non-compliant meal periods. As a result, SAS Services does not compensate Employees for non-compliant meal periods.

Based on the foregoing, Ms. Villanueva contends SAS Services has failed to comply with its meal period obligations under California law by not providing Employees with legally compliant meal periods or compensation in lieu thereof.

### III. SAS Services Failed to Provide Legally Compliant Rest Periods or Compensation in Lieu Thereof in Violation of Labor Code §§ 204, 226.7 and IWC Wage Order No. 4-2001

IWC Wage Order No. 4-2001, subdiv. 12(A) requires employers to authorize and permit off-duty rest periods for every four hours worked, or a major fraction thereof. Unless an employer relieves its employees of any and all work-related duties and also relinquishes all control over how its employees spend their time during rest periods, the employer has not



3258 Fourth Avenue • San Diego, California 92103• Phone: (619) 239-1321 • Facsimile: (888) 273-4554
consumerandemploymentlawgroup.com • *Formerly known as Clark Law Group*

6

authorized and permitted lawful off-duty rest periods. *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 269. If an employer fails to provide an employee with an off-duty rest period in accordance with California law, the employer is required to pay an employee one additional hour of pay at the employee's regular rate of compensation for each workday in which a lawful rest period was not provided. Labor Code § 226.7; See also IWC Wage Order No. 4-2001, subdiv. 12(B). Premium wages under Labor Code § 226.7 are wages due payable in accordance with the Labor Code. Murphy, 40 Cal.4th at 1103-1114; see also Labor Code § 204.

Ms. Villanueva and other Employees employed by SAS Services typically work more than 4 hours per workday. However, Ms. Villanueva alleges that as a policy, practice, guideline, procedure, and/or culture, SAS Services regularly fails to authorize and permit Employees to take off-duty rest periods for every four hours worked, or a major fraction thereof, in violation of California law. Ms. Villanueva contends she and other Employees were denied legal rest periods largely due to SAS Services' requirement that Employees are to be readily available to perform their work duties at all times, as described above. In addition, Ms. Villanueva alleges that SAS Services fails to schedule enough Employees so that Ms. Villanueva and other Employees could be relieved from their duties to take their meal and rest periods.

Ms. Villanueva further asserts that SAS Services does not have a policy, practice, guideline, procedure, and/or culture for Employees to record non-compliant rest periods and fails to compensate Employees the required rest period premium for non-compliant rest periods. SAS Services' conduct thus constitutes a violation of California law.

### IV. SAS Services Failed to Timely Pay Wages Owed Upon Termination in Violation of Labor Code §§ 201-203

Under Labor Code § 201, when an employer discharges an employee, all wages earned and unpaid at the time of discharge are immediately due and payable. Similarly, if an employee does not have a written contract for a definite period and quits his or her employment, the employee's wages are due and payable no later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his/her intention to quit, then the employee is entitled to his/her wages at the time of quitting. Labor Code § 202(a). If an employer willfully fails to pay all wages owed to an employee in accordance with Labor Code §§ 201 and 202, the employee's wages are to continue as a penalty, equal to one day of wages at the employee's regular rate of pay, starting from the date at which such wages were due until paid or until an action is commenced. Labor Code § 203. However, the wages are not to continue for more than a period of thirty days. Id.



3258 Fourth Avenue • San Diego, California 92103• Phone: (619) 239-1321 • Facsimile: (888) 273-4554
consumerandemploymentlawgroup.com • *Formerly known as Clark Law Group*

7

Ms. Villanueva contends that SAS Services has a policy, practice, guideline, and/or culture of not timely paying all wages owed upon discharge nor paying the required waiting time penalties. For instance, as discussed herein, SAS Services failed to compensate Employees for all hours worked, failed to pay the appropriate overtime wages to Employees for hours worked in excess of eight per day and/or forty per week, and failed to pay the required meal and/or rest period premiums to SAS Services Employees for non-compliant meal and/or rest periods.

Ms. Villanueva, therefore, contends that SAS Services failed to pay all wages owed to former Employees who separated from SAS Services within the statutory period in violation of California law.

### V. SAS Services Failed to Provide Paid Sick Days and Written Notice of the Amount of Sick Leave Available in Violation of Labor Code § 246.

California law requires that an employer provide 24 hours (or 3 days) of paid sick leave per year for full-time employees. Labor Code § 246. Employees are to earn a minimum of 1 hour of paid leave for every 30 hours worked. Id.

Ms. Villanueva alleges that SAS Services has a policy, practice, guideline, procedure, and/or culture of failing to provide Employees with one hour of paid sick leave for every 30 hours worked in accordance with California law.

Ms. Villanueva further alleges that SAS Services also failed to provide Employees with paid sick days since they were unable to accrue any such paid sick days at the rate provided by law as a result of SAS Services' failure to account for all time worked.

Ms. Villanueva also contends that SAS Services has a policy, practice, procedure, guideline, and/or culture of failing to provide written notice to Employees of their available sick leave, as such amounts are not included on the wage statements, nor are they provided with the information in separate writing on the designated pay date along with their wages. Accordingly, SAS Services has failed to comply with California law.

### VI. SAS Services Failed to Furnish Legally Compliant Wage Statements in Violation of Labor Code §§ 226, 226.3 and IWC Wage Order No. 4-2001

An employer is required to provide its employees with accurate and itemized wage statements. Labor Code § 226(a). Pursuant to Labor Code § 226(a), each wage statement must show "(1) gross wages earned, (2) total hours worked by the employee…(4) all deductions…(5) net wages earned, (6) the inclusive dates of the period for which the



3258 Fourth Avenue • San Diego, California 92103• Phone: (619) 239-1321 • Facsimile: (888) 273-4554
consumerandemploymentlawgroup.com • *Formerly known as Clark Law Group*

8

employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than the social security number, (8) the name and address of the legal entity that is the employer…(9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate…" See also IWC Wage Order No. 4-2001, subdiv. 7(A).

SAS Services failed to comply with Labor Code § 226 because they failed to provide Ms. Villanueva and other current or former Employees with legally compliant wage statements. Ms. Villanueva contends that SAS Services failed to provide wage statements that accurately reflect the gross wages and/or net wages earned due to SAS Services' failure to compensate Employees for all time worked, failure to pay the appropriate overtime compensation to Employees for hours worked beyond eight hours per day and/or forty hours per week, and failure to pay premium wages to Employees for non-compliant meal and/or rest periods, as discussed herein.

SAS Services also failed to provide wage statements that properly include the pay period information for each wage statement, the accurate rate of pay, the required available sick time, and/or the name of the legal entity that employed the SAS Services' Employees in violation of California law.

During the statutory period, SAS Services thus failed to comply with the requirements outlined by California law by failing to provide legally compliant wage statements to all current or former SAS Services Employees.

### VII. SAS Services Failed to Maintain Accurate Payroll Records in Violation of California Labor Code §§ 226(a) and 1174 and IWC Wage Order No. 4-2001

Labor Code § 1174 requires every employer to "keep a recording showing the names and addresses of all employees employed…" Labor Code § 1174 further requires "[e]very person employing labor in this state [to] keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily and the wages paid. Such records are to be kept according to the rules established by the commission for such purpose and must be kept on file for no less than three years. Id. An employer is further obliged under Labor Code § 226(b) to keep the information required by Labor Code § 226(a) and afford current or former employees the right to inspect or copy records pertaining to their employment. See also IWC Wage Order No. 4-2001, subdivs. 7, 19, and 20.

As discussed herein, SAS Services has a policy, practice, guideline, procedure, and/or culture of failing to maintain accurate employee information and payroll records which



3258 Fourth Avenue • San Diego, California 92103• Phone: (619) 239-1321 • Facsimile: (888) 273-4554
consumerandemploymentlawgroup.com • *Formerly known as Clark Law Group*

9

accurately reflect, for example, the gross and net wages earned as well as the total hours of time worked each day by Ms. Villanueva and other Employees.

Additionally, Ms. Villanueva is informed and believes that SAS Services fails to maintain a copy of all documents related to the hiring and/or employment of SAS Services Employees, and/or fails to provide Employees with the opportunity to inspect or copy such documents upon request in violation of California law.

Therefore, Ms. Villanueva contends that SAS Services failed to comply with Labor Code §§ 226 and 1174.

### VIII. SAS Services Failed to Provide Copies of Signed Documents in Violation of Labor Code § 432

Pursuant to Labor Code § 432, an employer is obligated, upon request, to provide its employees with a copy of any and all documents signed in connection with obtaining or holding employment.

As stated herein, Ms. Villanueva asserts, based on information and belief, that SAS Services failed to maintain a copy of all documents signed by Employees that relate to their hiring by and/or employment with SAS Services, and/or failed to provide a copy of such documents to Employees who requested a copy thereof in violation of Labor Code § 432. Therefore, Ms. Villanueva alleges that SAS Services has failed to comply with California law.

### IX. SAS Services Failed to Reimburse Non-Exempt Employees for Necessary Work Expenses in Violation of Labor Code §§ 2800 and 2802 and IWC Wage Order No. 4-2001

Labor Code § 2800 states that an employer shall indemnify employee losses caused by the employer's want of ordinary care. Accordingly, pursuant to Labor Code § 2802, an employee is entitled to reimbursement from his or her employer for all expenses or losses incurred as a result of employment. Moreover, when an employer requires uniforms to be worn by non-exempt employees, the employer shall provide and maintain such uniforms. IWC Wage Order No. 4-2001, subdiv. 9 defines "uniform" to include apparel of distinct color or design.

Ms. Villanueva asserts that as a policy, practice, guideline, and/or procedure, SAS Services requires Employees to wear a uniform affixed with the SAS Services logo as a condition of their employment. However, SAS Services has only provided a shirt, and have not provided any jacket despite the cold weather. In addition, SAS Services required Ms. Villanueva and other Employees to wear black pants and black shoes. However, as a practice or procedure,



3258 Fourth Avenue • San Diego, California 92103• Phone: (619) 239-1321 • Facsimile: (888) 273-4554
consumerandemploymentlawgroup.com • *Formerly known as Clark Law Group*

10

SAS Services neither provides Employees with black pants and black shoes, nor reimburses Employees for the cost of purchasing and/or maintaining the required uniform in violation of California law.

In addition, Employees, including Ms. Villanueva, are required to use their personal cell phones for work-related issues such as communicating with supervisors and/or co-workers and tracking flight details, such as arrivals, departures, and gate changes. However, SAS Services fails to reimburse Employees for a percentage of cell phone bills.

SAS Services has, therefore, failed to reimburse Ms. Villanueva and other Employees for necessary work expenses in violation of California law.

### X. Ms. Villanueva May be Entitled to Attorneys' Fees and Costs

The Act provides that "any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs. Labor Code § 2699(g)(1). Therefore, in the event that Ms. Villanueva and/or another similar representative is successful in a civil action against SAS Services, she is entitled to an award of attorneys' fees and costs. See also Labor Code §§ 218.5, 1194, 1193.6; Code Civ. Proc. § 1021.5.

### <u>Conclusion</u>

As described herein, Ms. Villanueva contends that she constitutes an "aggrieved employee" as the term is defined by Labor Code § 2699(c). Ms. Villanueva alleges that the current or former SAS Services Employees that she seeks to represent also constitute "aggrieved employees" under the statute.

As discussed herein, SAS Services violated the Labor Code and the relevant IWC Wage Order and thereby deprived Ms. Villanueva and other current or former Employees of their statutory rights and protections afforded to them. Ms. Villanueva has thus satisfied the prerequisites of the Act to serve as a representative of all current or former SAS Services Employees, the general public, and the state of California in order to enforce California labor laws and to seek civil penalties for the provisions both set forth herein as well as for those which may be later discovered on behalf of herself and all others similarly situated.

Accordingly, if the Labor and Workforce Development Agency neither acts, nor declines to intervene within sixty-five days from the date of this correspondence, Ms. Villanueva may elect to initiate and/or amend a civil action, on behalf of herself and all others similarly situated, to include the persons and allegations described herein and/or those discovered



3258 Fourth Avenue • San Diego, California 92103• Phone: (619) 239-1321 • Facsimile: (888) 273-4554
consumerandemploymentlawgroup.com • *Formerly known as Clark Law Group*

11

after sending this correspondence, subject to Labor Code §§ 2698 et seq., as well as other related claims arising out of their employment with SAS Services.

Sincerely,
**Consumer & Employment Law Group**

*R. Craig Clark*
*Alicja A. Urtnowski*

Cc: *Via Certified Mail*

Agent for Service
SAS SERVICES SAN DIEGO, INC
WESAM ABOUELATA
11241 S. BURIN AVENUE
INGLEWOOD, CA 90304

G2 SECURE STAFF, L.L.C.
Registered Corporate 1505 Agent
CAPITOL CORPORATE SERVICES, INC.
LO SAECHAO
455 CAPITOL MALL COMPLEX, STE 217
SACRAMENTO, CA  95814

G2 SECURE STAFF CA, L.P.
Registered Corporate 1505 Agent
CAPITOL CORPORATE SERVICES, INC.
LO SAECHAO
455 CAPITOL MALL COMPLEX, STE 217
SACRAMENTO, CA  95814



3258 Fourth Avenue • San Diego, California 92103• Phone: (619) 239-1321 • Facsimile: (888) 273-4554
consumerandemploymentlawgroup.com • *Formerly known as Clark Law Group*

12

| | |
|---|---|
| **From:** | noreply@salesforce.com on behalf of LWDA DO NOT REPLY |
| **To:** | Selah Truth |
| **Subject:** | Thank you for submission of your PAGA Case. |
| **Date:** | Tuesday, April 4, 2023 12:12:04 PM |

4/4/2023

LWDA Case No. LWDA-CM-946294-23
Law Firm : Consumer & Employment Law Group
Plaintiff Name : Allison Villanueva
Employer: SAS Services San Diego, Inc.
Filing Fee : $75.00
IFP Claimed : No

Item submitted: Initial PAGA Notice

Thank you for your submission to the Labor and Workforce Development Agency. Please make a note of the LWDA Case No. above as you may need this number for future reference when filing any subsequent documents for this Case.

If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: http://labor.ca.gov/Private_Attorneys_General_Act.htm



State of California
# Department of Industrial Relations

Search 

| Labor Law | Cal/OSHA - Safety & Health | Workers' Comp | Self Insurance | Apprenticeship | Director's Office | Boards |

Department of Industrial Relations (DIR) | PAGA Case Search | PAGA Case Detail

## PAGA Case Detail

**Print to PDF**

### Case Information

**Case Number:** LWDA-CM-946294-23

**Plaintiff for PAGA Case:** Allison Villanueva

**Filer/Attorney for PAGA Case:** Selah Truth

**Law Firm for PAGA Plaintiff:** Consumer & Employment Law Group

**Employer:** SAS Services San Diego, Inc.

**Date Case Received:**

**Filer for Employer:**

**Employer Filer Firm:**

**Court Type:**

**Court Name:**

**PAGA Court Case Number:**

**Violation Type:**

**Related BOFE Case:**

Submission Details

| Actions | Attachment Name | Description | Date Submitted | Type |
|---|---|---|---|---|
| | | No matching records found | | |

**Showing 0 to 0 of 0 entries**

Previous   Next

About DIR     Work with Us     Learn More



USPS TRACKING #

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 3490 7275 5808 22

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Consumer & Employment Law Group
3258 4th Ave
San Diego CA 92103-5702

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

1. Article Addressed to:

CAPITOL CORPORATE SERVICES, INC.
455 Capitol Mall Complex Ste 217
SACRAMENTO CA 95814-4405

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

APR 10 2023

9590 9402 3490 7275 5808 22

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)
9414 7118 9956 2779 3303 42

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**DECLARATION OF SERVICE**

*Allison Villanueva v. SAS Services San Diego, Inc., et al.*
San Diego County Superior Court, Case No. 37-2023-00016073-CU-OE-CTL

I am employed in the county of San Diego, state of California.  I am over the age of 18 and not a party to this action.  My business address is 3258 Fourth Avenue, San Diego, CA 92103. On June 29, 2023 I served the document(s) described as:

1. **FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF**

on the following interested parties and in the manner as follows:

| | |
|---|---|
| Rod Betts, Esq. | Kathy H. Gao, Esq. |
| rod.betts@quarles.com | kathy.gao@morganlewis.com |
| **QUARLES & BRADY LLP** | **MORGAN, LEWIS, & BOCKIUS LLP** |
| 101 West Broadway, Ninth Floor | 300 South Grand Avenue, Floor 22 |
| San Diego, CA 92101-8285 | Los Angeles, CA 90071-3132 |
| Telephone: (619) - 243 - 1560 | Telephone: (213) - 612 -7411 |
| *Attorney for Defendant SAS Services San Diego, Inc.* | Facsimile:  (213) - 612-2501 |
| | *Attorney for Defendants G2 Secure Staff, L.L.C & G2 Secure Staff CA, L.P.* |

☒   **BY ELECTRONIC SERVICE:**  I served the document(s) listed above via electronic mail (e-mail) to the electronic notification address(es) set forth above on this date. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on June 29, 2023 at San Diego, California.

_____
/s/ Jeffrey Vargas
Jeffrey Vargas