R. Craig Clark (SBN 129219)
cclark@celg.org
Alicja A. Urtnowski (SBN 321215)
aurtnowski@celg.org
**CONSUMER & EMPLOYMENT LAW GROUP**
3258 Fourth Avenue
San Diego, CA 92103
Telephone: (619) 239-1321
Facsimile: (888) 273-4554

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON VILLANUEVA, as an individual, on behalf of herself, and all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAS SERVICES SAN DIEGO, INC, a California Corporation., G2 SECURE STAFF, L.L.C., a Texas Corporation. and G2 SECURE STAFF CA, L.P., a Texas Corporation, and DOES 1-10,<br><br>Defendants. | CASE NO.: 3:23-cv-1243-BAS-DEB<br><br>*Removed from the Superior Court of California, San Diego County, Case No. 37-2023-00016073-CU-OE-CTL*<br><br>[Assigned to Hon. Cynthia A. Bashant]<br><br>**CLASS & REPRESENTATIVE ACTION**<br><br>**PLAINTIFF ALLISON VILLANUEVA'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT UNDER RULE 23(E) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND FOR ATTORNEYS' FEES AND COSTS PURSUANT TO RULES 23(H) AND 54 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date:      July 8, 2024<br>Time:      11:15 a.m.<br>Courtroom: 12B |

/ / /

/ / /

/ / /

/ / /

/ / /

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 8, 2024 at 11:15 a.m., or as soon thereafter as this matter may be heard in Courtroom 12B of the United States District Court for the Southern District of California, located at 333 West Broadway, San Diego, CA 92101, Plaintiff Allison Villanueva ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her counsel of record, will and hereby does move for an order from the Court that:

1) Final approval of the settlement of this class and representative action as set forth in the Class Action and PAGA Settlement Agreement ("Settlement Agreement")[1], which was previously filed with the Court. (ECF No. 24-1.)

2) Final certification of the Settlement Class as defined in the Settlement Agreement, for settlement purposes only;

3) Settlement Administration Costs in the amount of $8,200, or any other amount the Court deems just and reasonable, to the Settlement Administrator;

4) A Service Award in the amount of $10,000, or any other amount the Court deems just and reasonable, to Plaintiff Allison Villanueva;

5) A Class Counsel Fees Award in the amount of $66,666.66, or any other amount the Court deems just and reasonable, to Class Counsel;

6) A Class Counsel Costs Award in the amount of $4,924.53, or any other amount the Court deems just and reasonable, to Class Counsel;

7) Entry of final judgment; and

8) Grant any other and further relief that the Court deems just and proper, pursuant to Rules 23(e) and (h) and 54(d)(2) of the Federal Rules of Civil Procedure.

---

[1] All capitalized terms used herein are defined in and have the same meaning as used in the Settlement Agreement unless otherwise stated.

Plaintiff's motion is based upon this Notice; the accompanying memorandum of points and authorities; the Parties' Class Action and PAGA Settlement Agreement, the declarations of R. Craig Clark, Plaintiff Allison Villanueva, and Bryn Bridley of Atticus Administration LLC, and any exhibits thereto, which are filed and served concurrently herewith; all pleadings and papers filed in this action; and upon any such other evidence and/or oral argument that may be presented to the Court at the time of the hearing.

Dated: June 4, 2024            **CONSUMER & EMPLOYMENT LAW GROUP**

By: _____
    R. Craig Clark
    Alicja A. Urtnowski
    *Attorneys for Plaintiff*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

# **Table of Contents**

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.   PROCEDURAL AND FACTUAL BACKGROUND .......................................... 3

  A.  Plaintiff's Claims and Relevant Background ....................................... 3

  B.  Investigation and Discovery .............................................................. 4

  C.  ENE and Settlement ........................................................................... 5

  D.  The Settlement Class .......................................................................... 5

  E.  Settlement Amounts and Calculation of Payments ............................. 5

    1.  Class Member Share ........................................................................ 6
    2.  PAGA Allocation ............................................................................. 6

  F.  Administration Costs, Service Award and Attorneys' Fees and Costs ........ 6

    1.  Settlement Administration Expenses .............................................. 6
    2.  Class Representative Service Award ............................................... 7
    3.  Plaintiff's Counsel's Attorneys' Fees and  Litigation Costs.............. 7

  G.  Notice Procedure .............................................................................. 7

  H.  Exclusions and Objections.................................................................. 8

  I.  Unclaimed Funds .............................................................................. 8

III.   CERTIFICATION OF THE SETTLEMENT CLASS REMAINS
      APPROPRIATE................................................................................... 9

  A.  The Court Should Affirm Its Certification of the Settlement Class .......... 9

IV.   THE SETTLEMENT SHOULD BE FINALLY APPROVED .............................. 10

  A.  The Fairness Factors Are Satisfied.................................................... 10

    1.  The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely
    Duration of Further Litigation ................................................................. 11
    2.  Risk of Maintaining Class Action Status Throughout Trial .............. 13

i

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

3.    Amount Offered in Settlement ....................................................13

4.    Experience and Views of Counsel ..............................................14

5.    Presence of a Government Participant .........................................14

6.    Favorable Reaction from Class Members ...................................15

7.    The Settlement Passes Scrutiny of Collusion ............................15

V.    THE PAGA ALLOCATION SHOULD BE APPROVED .................................16

VI.    APPROVAL OF THE REQUESTED ADMINISTRATION COSTS, SERVICE AWARD, AND ATTORNEYS' FEES AND COSTS IS APPROPRIATE ..........17

A.    Administration Costs Are Reasonable......................................17

B.    Service Award to the Class Representative is Justified .......................18

C.    The Class Counsel Fees Award is Fair and Reasonable ......................20

1.    The Fees Sought Are a Reasonable Percentage of the Fund ...........................21

2.    A Lodestar Cross-Check Supports the Reasonableness of the Fees Sought .....22

D.    The Class Counsel Costs Award is Reasonable ....................................24

VII.    CONCLUSION...........................................................................25

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

## Table of Authorities

*Cases*                                                                    *Page(s)*

*Martin v. Ameripride Servs*.,

    2011 U.S. Dist. LEXIS 61796, *22-23 (S.D. Cal. 2011 ........................22

*Acosta v. Frito-Lay, Inc.*,

    2018 U.S. Dist. LEXIS 75998 *21 (N.D. Cal. May 4, 2018) ..............11

*Birch v. Office Depot, Inc.*,

    USDC Southern District, Case No. 06cv1690 DMS............................22

*Bluetooth Headset Prods. Liab. Litig.*,

    654 F.3d at 946.)...............................................................................16

*Boeing Co. v. Van Gemert*,

    444 U.S. 472, 478 (1980). .................................................................22

*Chu v. Wells Fargo Investments, LLC*,

    2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 15, 2011)....................18

*Class Plaintiffs v. City of Seattle*,

    955 F.2d 1268, 1276 (9th Cir. 1992)..................................................10

*Cunningham v. Cnty of L.A.*,

    879 F.2d 481, 488 (9th Cir. 1988)......................................................23

*e.g. Nat'l Rural Telecomms. Coop.*,

    221 F.R.D. at 529...............................................................................16

*Garner v. State Farm Mut. Auto Ins. Co.*

    (N.D. Cal. 2010) 2010 U.S. Dist. LEXIS 49482, at *5........................22

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

*Garner v. State Farm Mutl. Auto. Ins. Co.*,

    2010 U.S. Dist. LEXIS 94977 *37 (N.D. Cal. Apr. 22, 2010) ............................ 15

*Harris v. Marhoefer*,

    24 F.3d 16, 19 (9th Cir. 1994). .................................................................. 25

*In re Ampicillian Antitrust Litigation*,

    (D.D.C. 1981) 526 F. Supp. 494 ................................................................ 22

*In re Bluetooth Headset Prods. Liab. Litig.*,

    654 F.3d 935, 946 (9th Cir. 2011) ............................................. 11, 21, 23

*In Re Cendant Corp. PRIDES Litigation*,

    (3rd Cir. 2001) 243 F.3d 722, 736 ............................................................ 22

*In re Mercury Interactive Corp.*,

    618 F.3d 988, 992 (9th Cir. 2010). ........................................................... 21

*In re Pac. Enters. Sec. Litig.*,

    47 F.3d 373, 378 (9th Cir. 1995). ............................................................. 14

*In re Rite Aid Sec. Litig.*,

    (3d Cir. 2005) 396 F.3d 294, 305 ............................................................. 23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523, 527 (C.D. Cal. 2004) ..................................................... 14

*Nat'l Rural Telecomms. Coop.*,

    221 F.R.D. at 528 ...................................................................................... 15

*Nordstrom Commissions Cases*,

    186 Cal.App.4th 576, 589 (2010) ............................................................. 17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

*Officers for Justice v. Civil Serv. Com.*,

    688 F.2d 615, 625 (9th Cir. 1982) ........................................................ 11

*Ontiveros v. Zamora*,

    303 F.R.D. 356, 375 (E.D. Cal. 2014) ................................................... 25

*Rippee v. Boston Mkt. Corp.*,

    *USDC Southern District*, Case No. 05cv1359 BTM ............................. 22

*Rodriguez v. West Publ'g Corp.*,

    563 F.3d 948, 965 (9th Cir. 2009) .................................................. 12, 19

*Smith v. Am. Greetings Corp.*,

    2016 U.S. Dist. LEXIS 66247 (N.D. Cal. May 19, 2016 ...................... 17

*Staton v. Boeing Co.*,

    327 F.3d 938, 952 (9th Cir. 2003) ........................................................ 10

*United Steelworkers of Am. v. Phelps Dodge Corp.*,

    (9th Cir. 1990) 896 F.2d 403 ............................................................... 24

*Van Gemert v. Boeing Co.*,

    (S.D.N.Y. 1981) 516 F. Supp. 412, 420 .............................................. 22

*Van Vranken v. Alt. Richfield Co.*,

    901 F.Supp. 294, 299 (N.D. Cal. 1995) ............................................... 19

*Willner v. Manpower Inc.*,

    2015 U.S. Dist. LEXIS 80697 (N.D. Cal. June 20, 2015) .................... 17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

1

*Statutes*

2

California Civil Code section 1542 ........................................................2, 7, 20

3

California Code of Civil Procedure § 1500 ....................................................9

4

California Code of Civil Procedure § 384 ......................................................9

5

*Rules*

6

7

Fed. R. Civ. P. 23(a) ......................................................................................9

8

Fed. R. Civ. P. 23(b)(3)...................................................................................9

9

Fed. R. Civ. P. 23(e)(2)..................................................................................10

10

Fed. R. Civ. P. 23(h) .....................................................................................21

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to Rules 23 and 52 of the Federal Rules of Civil procedure, Plaintiff Allison Villanueva ("Plaintiff"), on behalf of herself and all others similarly situated, seeks (1) final approval of the settlement of this Class and PAGA action outlined in the Class Action and PAGA Settlement Agreement ("Settlement Agreement" or "Agreement"); (2) final certification of the Settlement Class, as defined in the Settlement Agreement, for settlement purposes only; (3) Settlement Administration costs in the amount of $8,200 to the Settlement Administrator; (4) a Service Award in the amount of $10,000, or any other amount the Court deems just and reasonable, to Plaintiff Allison Villanueva; (5) A Class Counsel Fees Award in the amount of $66,666.66, or any other amount the Court deems just and reasonable, to Class Counsel; (6) a Class Counsel Costs Award in the amount of $4,924.53, or any other amount the Court deems just and reasonable, to Class Counsel; (7) entry of final judgment; and (8) any other and further relief that the Court deems just and proper.

Plaintiff and Class Counsel dedicated significant time, energy, and resources into litigating this lawsuit against Defendants SAS Services San Diego, Inc. ("SAS Services" or "SAS") and G2 Secure Staff, L.L.C. and G2 Secure Staff L.P. (collectively, "G2 Secure Staff" or "G2") (SAS Services, SAS, G2 Secure Staff, and/or G2 collectively, "Defendants"), collectively referred to as the "Parties," reached an agreement for settlement following an in-depth investigation and analysis into the facts and legal issues raised by the Litigation. Through their collective efforts, the parties to this litigation were able to successfully negotiate the Settlement Agreement, which was preliminary approved by this Court on March 4, 2024. The Settlement Agreement provides for a non-reversionary Gross Settlement Amount of $200,000 as a compromise of the disputed claims against Defendants.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

The settlement is a fair, adequate, and reasonable result in this litigation. The terms of the Settlement Agreement provide considerable monetary relief to the Class Members while ensuring a timely resolution of the disputed claims and avoiding the risks associated with continued litigation. The settlement was achieved as the result of zealous advocacy and arm's length bargaining, overseen by well-respected United States Magistrate Judge Daniel Butcher in the U.S. District Court for the Southern District of California; the negotiations were adversarial, informed, and non-collusive. The settlement does not provide for preferential treatment as all Class Members receive a proportional share based on the total number of weeks worked for Defendants. As a testament to the fairness of the settlement, the response from Class Members has been positive as no person has requested exclusion, and no single objection has been raised. Therefore, final approval of the settlement is appropriate.

Additionally, the requested Administration Costs, Service Award, Class Counsel Fees Award, and Class Counsel Costs Award are warranted, particularly because they were negotiated only after an agreement to settle this Action was reached. The Settlement Agreement estimated $9,000 as costs for administration of the settlement. The Notice Packet informed Class Members that the estimated costs of $9,000, if approved, was to be deducted from the Gross Settlement Amount. The actual Administration Costs requested is $8,200, this means that $800 will be added to the Net Settlement Amount for distribution of the Settlement Class Members. Approval of the Administration Costs is appropriate.

The Settlement Agreement also contemplates a Serviced Award to Plaintiff Allison Villanueva in the amount of $10,000, which was to be deducted from the Gross Settlement Amount. The Service Award is compensation for the time, effort, and risks Plaintiff Allison Villanueva took in prosecuting this Action, as well as her agreement to give up more than any other Class Members by waiving the rights afforded to her by California Civil Code section 1542. Plaintiff's dedication and diligence provided Class

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

Counsel with the knowledge and tools that they needed to negotiate a settlement that was in the best interest of the Class Members. Therefore, a Service Award in the amount of $10,000, or any other amount deemed reasonable by the Court, is deserved.

Class Counsel agreed to represent Plaintiff and the members of the Settlement Class without any guarantee that they would receive payment for their services or reimbursement for any of the litigation costs they reasonably incurred to litigate the Action. The Settlement Agreement anticipated that Class Counsel would seek up to $66,666.66 in fees (1/3 of the Gross Settlement Amount) and up to $5,000 in costs. Class Counsel has in fact expended 156.7 hours and incurred $120,589.00 in fees prosecuting this action. Class Counsel also acquired $4,924.53 in litigation costs and expenses. Class Counsel hereby seek approval of the Class Counsel Fees Award in the amount of $66,666.66 and Class Counsel Costs Award in the amount of $4,924.53.

The Settlement Agreement, as well as all requested awards, have been preliminarily approved by the Court. To date, Class Members have reacted extremely positively to the Settlement, with **no** objections to the Settlement and **zero** requests for exclusion. As the settlement and all of its terms remain fair and reasonable, and both the Class and the State of California have refrained from filing any objections to those terms, this Court should grant final approval.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    Plaintiff's Claims and Relevant Background

On April 4, 2023, Plaintiff submitted written notice of Defendants' alleged violations of the California Labor Code ("Labor Code") to the LWDA as required by the Private Attorneys General Act (the "PAGA"). Declaration of R. Craig Clark ("Clark Decl."), paragraph 3.

On April 18, 2023, Villanueva filed a class action complaint in the Superior Court of the State of California, County of San Diego, entitled *Allison Villanueva v. SAS Services San Diego, Inc., G2 Secure Staff, L.L.C, and G2 Secure Staff CA, L.P.*, Case

No. 37-2023-00016073-CU-OE-CTL, in which she asserted a number of wage and hour claims under the Labor Code. (Clark Decl. at ¶ 4.)

After not receiving a response from the LWDA, on or about June 29, 2023, Plaintiff filed a First Amended Complaint and added an eleventh cause of action for Penalties under PAGA. The First Amended Complaint is the Operative Complaint in the case. (Clark Decl. at ¶ 5.)

On July 5, 2023, Defendant G2 Secure Staff removed the action to this judicial district. (ECF No. 1; *see also* Clark Decl. at ¶ 6.) The case was docketed with the U.S. District Court for the Southern District of California on July 6, 2023, as Case No. 3:23-cv-01243-LAB-DEB.  Thereafter, the Parties began litigating the action. (Clark Decl. at ¶ 7.) For instance, the Parties made their initial disclosures pursuant to Rule 26 and Plaintiff propounded written discovery. *(Id.)*

**B.    Investigation and Discovery**

Prior to engaging in settlement negotiations, Plaintiff's counsel conducted a thorough investigation into the facts and legal issues raised by this Litigation. Plaintiff's counsel conducted in-depth interviews with Plaintiff and propounded written discovery on Defendants. (Clark Decl. at ¶ 13, *See also* ECF No. 24-1.) The Parties engaged in substantial investigation and informal discovery, in connection with the Litigation. Defendant SAS Services provided extensive documents and detailed information to Plaintiff's counsel to review and analyze.  The documents and information included personnel records, time records and pay data for Plaintiff Villanueva, the time records and pay data for all class members, the number of work weeks worked by class members during the Class Period, the number of class members, the number of work weeks during the PAGA Period, all SAS Services wage and hour policies, the Asset Purchase Agreement between SAS Services and G2 Secure Staff, tax returns for SAS Services, and other relevant information. Plaintiff's counsel reviewed and analyzed all of the information and documents in its possession to evaluate the merits of Plaintiff's

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

claims, Defendants' defenses, and their projected liability. *Id*. Plaintiff's counsel therefore possessed sufficient information and data to make an educated and informed decision prior to reaching the Settlement.

### C.    ENE and Settlement

On September 13 and November 6, 2023, the Parties attended Early Neutral Evaluation ("ENE") conferences with United States Magistrate Judge Daniel Butcher in the U.S. District Court for the Southern District of California.  As a result of these conferences, following extensive negotiations and with considerable assistance by Magistrate Judge Daniel Butcher, the parties were able to reach a settlement in principle. Thereafter, the Parties negotiated the terms and conditions of the Settlement and reduced their agreement to writing. (Clark Decl. at ¶ 8.)

### D.    The Settlement Class

The Settlement Agreement defines the Class as follows:

> All individuals who were employed by SAS Services at the San Diego International Airport in San Diego, California as a nonexempt employee at any time during the Settlement Period.

Agreement at ¶ II(1). The Settlement Period is defined as the period from April 18, 2019 through August 22, 2022[2]. (*Id*. at ¶ II(29.)

### E.    Settlement Amounts and Calculation of Payments

The Settlement Agreement provides that Defendants are to pay a non-reversionary sum of $200,000 ("Gross Settlement Fund") to resolve this Litigation. (Agreement at ¶ II(12).) The Gross Settlement Fund is inclusive of all payments to Settlement Class Members and/or PAGA Employees, to the LWDA, to the Settlement Administrator, to the named Plaintiff, and to Class Counsel. (*Id*.)

---

[2] Some of the putative class member employees subsequently became employees of G2 Secure Staff when SAS and G2 entered into an Asset Purchase Agreement which was effectuated on August 22, 2022.  This class action and PAGA settlement covers only the time period that these putative class members were employed by SAS and does not cover their employment by G2 after August 22, 2022. (Agreement at ¶ II(1).)

5

### 1. Class Member Share

The Settlement Payment will be allocated among the Settlement Class Members according to the number of workweeks each Settlement Class Member worked for SAS Services at the San Diego International Airport in San Diego, California as a nonexempt employee at any time during the Settlement Period as a *pro rata* portion of the total combined workweeks of all Settlement Class Members during the Settlement Period. (Agreement at ¶ III(3b).)

The PAGA Employee Payments will be allocated among the PAGA Employees according to the number of workweeks each PAGA Employee worked for SAS Services at the San Diego International Airport in San Diego, California as a nonexempt employee at any time during the PAGA Period as a *pro rata* portion of the total combined workweeks of all PAGA Employees during the PAGA Period. (Agreement at ¶ III (3c).)

### 2. PAGA Allocation

The Settlement Agreement provides that $5,000 from the Gross Settlement Fund will be allocated as civil penalties under the PAGA. (*Id*. at ¶ III(11).) As provided for by the statute, $3,750 (or 75%) will be paid to the LWDA and the remaining $1,250 (or 25%) will be distributed to PAGA Employees. (*Id*.)

### F. Administration Costs, Service Award and Attorneys' Fees and Costs

### 1. Settlement Administration Expenses

Atticus Administration, LLC is the appointed Settlement Administrator who is responsible for administering the settlement in accordance with the Agreement and orders of the Court (Agreement at ¶¶ III (15e); II (24-25.) It was estimated that the costs to administer the settlement would be $9,000. (*Id*.) Atticus' charge for administering the settlement in this action is $8,200. (Declaration of Bryn Bridley of Atticus Administration, LLC filed concurrently herewith, ("Bridley Decl.") at ¶ 11.)

### 2.    Class Representative Service Award

Subject to court approval, the Settlement Agreement allows for Plaintiff's counsel to apply for a Service Award of up to $10,000 for Plaintiff Villanueva as compensation for the efforts and risks she took in bringing forth this litigation and in exchange for a release of all known and unknown claims covered by California Civil Code section 1542. (Agreement at ¶¶ III (15e), III (8;) *see also* Clark Decl. at ¶ 23-28.)

### 3.    Plaintiff's Counsel's Attorneys' Fees and Litigation Costs

Subject to court approval, the Settlement Agreement contemplates that Plaintiff's counsel will apply for Plaintiff's Counsel's Attorneys' Fees in the amount of $66,666.66 (1/3 of the Gross Settlement Fund) and Plaintiff's Litigation Costs and Expenses in the amount of not more than $5,000 for reimbursement of actual litigation costs and expenses. (Agreement at ¶¶ III (15 b-c).) Defendants have agreed not to oppose any such requests. (*Id. see also* Clark at ¶ 15.) Class Counsel seeks a Class Counsel Fee Award of $66,666.66 (1/3 of the Gross Settlement Fund) as it has expended 156.7 hours resulting in a lodestar of $120,589.00. (Clark at ¶¶ 18-19.) Class Counsel seeks a Class Counsel Costs Award of $4,924.53 for litigation costs. (*Id*. at ¶ 21, Exh. 4.)

### G.    <u>Notice Procedure</u>

On March 18, 2024, in accordance with the Court's Order re Preliminary Approval of Class Action Settlement, Defendants provided Atticus with the Class List. (Bridley Decl. at ¶ 4.) The Class List contained the name, address, telephone number, Social Security number, weeks worked, and other employment information for one hundred and forty-eight (148) individuals. (*Id*.) Atticus examined the Class Data and discovered a collection of duplicate records for a single Class Member employed at different times during the pertinent period. (*Id*. at ¶ 5.) These records were consolidated, resulting in the final Class Data encompassing 147 Class Members and/or PAGA Employees. (*Id*.)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

On March 28, 2024, Atticus mailed the Notice of Proposed Class Action Settlement and Final Approval Hearing to 147 Class Members and/or PAGA Employees by U.S. first-class mail. (*Id*. at ¶ 7.)

Of the 147 Notices mailed, forty (40) were returned as undeliverable. (*Id*. at ¶ 8.) Two (2) of these had forwarding addresses, and the Notices were promptly remailed. (*Id*.) Thirty-one (31) of the remaining undeliverable Notices were sent to a professional search firm for address tracing. (*Id*.) New addresses were found for twenty-five (25) of these, and Notices were remailed; three (3) of these remailed Notices were returned at or after the response deadline set for Class Members. (*Id*.) A total of fifteen (15) notices remain undeliverable. (*Id*. at ¶ 9). The remaining notices will be traced and re-mailed prior to distributing settlement payments. (*Id*.)

A total of one hundred and thirty-one (131) Class Members, or 89.12% of the Settlement Class, successfully received the Notice by mail. (*Id*. at ¶ 9.)

### H.    Exclusions and Objections

The last day for Class Members to submit a request for exclusion, objection, or dispute of workweeks was April 26, 2024. (*Id*. at ¶ 10.) Atticus did not receive any objections, exclusion requests, or workweek disputes. (*Id*.)

### I.    Unclaimed Funds

Under the terms of the Settlement Agreement, any funds that are unclaimed after 180 days shall be distributed to the Controller of the State of California to be held pursuant to the Unclaimed Property Law, California Code of Civil Procedure § 1500 et seq., for the benefit of those Settlement Class Members and/or PAGA Employees who did not cash their checks, until such time that they claim their property. Thus, this disposition results in no "unpaid residue" under California Code of Civil Procedure § 384. (Agreement at ¶ III (12d).)

/ / /
/ / /

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

## III.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS APPROPRIATE

### A.    <u>The Court Should Affirm Its Certification of the Settlement Class</u>

To achieve certification, class actions must meet the following requirements:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defense of the representative parties are typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

(Fed. R. Civ. P. 23(a).) Additionally, a class action must meet one of the conditions outlined in Rule 23(b), such as the condition that "questions of law or fact common to the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods for fairly and efficiently adjudicating the controversy." (Fed. R. Civ. P. 23(b)(3).)

In granting preliminary approval of the settlement on March 4, 2024, this Court determined that the numerosity requirement was satisfied. (ECF. No. 30) The commonality requirement was also satisfied because there are common questions of law and fact arising out of Defendant SAS's allegedly unlawful employment practices that affected all putative class members. (*Id*.) This court ruled that Plaintiff's claims were typical of all putative class members because they all suffered the same or similar injury and that Plaintiff and Class Counsel appear to be adequate representatives. (*Id*.) Lastly, the Court concluded that the core common questions in this case predominate over any differences regarding its implementation of Defendant SAS's policies with respect to individual employees. (*Id*.)

There have been no subsequent events that would cast doubt on the Court's determination. Therefore, Plaintiff requests that the Court affirm its certification of the Settlement Class, for settlement purposes only.

///
///
///

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

## IV.   THE SETTLEMENT SHOULD BE FINALLY APPROVED

There is a strong judicial policy in the Ninth Circuit that favors the settlement of class actions. (*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).) When a settlement takes place prior to class certification, courts must scrutinize the proposed compromise to authorize the propriety of the certification and the fairness of the settlement. (*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).)  A settlement should only be approved if it is "fair, reasonable and adequate." (Fed. R. Civ. P. 23(e)(2).)

### A.   <u>The Fairness Factors Are Satisfied</u>

Courts generally consider the following factors when determining whether a settlement is fair, reasonable, and adequate:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the state of the proceedings; (6) the experience and views of counsel (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed class.

(*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) *quoting Churchill Vill., LLC v. Gen Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).) When a settlement is negotiated prior to class certification, courts must scrutinize the fairness factors by probing into whether the settlement is the result of collusion and whether class counsel has put their own self-interest or the interest of certain class members before the class as a whole. (*Id*. at 946- 947.) The court, therefore, should consider three warning signs of potential collusion:

> (1) When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) When the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from the class funds without objection by defendant; and (3) When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. (*Id*.)

10

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

**1.     The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

While the court is to consider the strength of plaintiff's case on the merits balanced against the amount offered in settlement, the court need not reach an ultimate conclusion about the merits of the dispute. (*Acosta v. Frito-Lay, Inc.*, 2018 U.S. Dist. LEXIS 75998 *21 (N.D. Cal. May 4, 2018).) Rather, the court's evaluation is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." (*Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982) *citing Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974).)  The reality is that "parties, counsel, mediators, and district judges naturally arrive at a reasonable range of settlement by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." (*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).)

This Action alleges that Defendant SAS failed to pay minimum wages, and overtime compensation; failed to provide legally compliant meal and/or rest periods or compensation in lieu thereof; failed to reimburse for necessary work expenses; failed to pay all wages owed upon discharge; failed to furnish accurate itemized wage statements; failed to maintain accurate records; violated California' Unfair Competition Law; and violated California's PAGA statute. (*See* Operative Complaint.)

Plaintiff believes that her claims are meritorious, while Defendants believe that their defenses have merit. However, Plaintiff recognizes that this class action is not without risk. For instance, Defendants have consistently asserted that the Action is unmanageable because individualized issues predominate. Defendants contend that SAS maintained a legally compliant policy and practice to advise and train putative class members of California's meal and rest period requirements. Defendants also assert that SAS distributed and made its written meal and rest period policies available to all employees. Defendants also oppose Plaintiff's assertion that the demands placed on

11

putative class members required them to work-off-the-clock or forgo meal and/or rest periods. Defendants oppose Plaintiff's assertion that SAS does not have a policy and practice of failing to pay overtime wages or reimbursement as it allegedly implements a proper time keeping and reimbursement policy.

If any of Defendants' contentions are found to be true, there is a substantial risk that the putative class members would recover substantially less than the Gross Settlement Amount and possibly not receive *any* recovery, particularly because recovery under the PAGA is discretionary. Even if Plaintiff were able to obtain recovery in this Action, Defendants may appeal any adverse judgment as they have indicated that they would actively oppose certification. The time, expenses and resources to litigate this Action, including the potential appeals, would potentially outweigh *any* benefits offered to the Class. Given the challenges Plaintiff would continue to face in this Action compared with the finality and speed of recovery under the settlement, approval of the settlement if favorable.

In addition, as discussed in the Preliminary Approval Motion, SAS represented during settlement negotiations that during the Covid-19 pandemic, when the public was mostly unable to fly, SAS, as with the airline industry and many airline service companies, went through very difficult financial times. Plaintiff's counsel reviewed the SAS tax returns for 2020 and 2021 under a protective order, and confirmed that SAS had net losses in both 2020 and 2021. SAS represented during settlement negotiations that its continuing financial difficulties led to its decision to sell its assets to G2 in 2022. SAS also represented during settlement negotiations that it had very limited financial resources because of its significant liabilities at the time the company was sold to G2, which liabilities had to be paid utilizing the consideration from the sale of the business. And, as referenced above, this settlement only covers the time period within the statute of limitations until SAS sold the business to G2, and no class members other than Plaintiff are releasing any claims against G2 relating to the time period after G2

purchased SAS's assets. Thus, given SAS's financial situation, the case posed even further risk, expense, and complexity of obtaining recovery for the benefit of the Class.

### 2.    Risk of Maintaining Class Action Status Throughout Trial

Throughout this litigation, Defendants have represented that they will aggressively oppose any motion for class certification as it contends that the Action is unmanageable because individualized issues predominate. Plaintiff will undoubtedly have a difficult time establishing that individualized issues do not predominate and that the Action is manageable. If certification is granted, Plaintiff will likely have to expend the time and resources to combat a motion to decertify and/or motion for summary judgment. Additionally, Plaintiff will have to demonstrate through trial that the case is in fact manageable. Based on the foregoing, there is no doubt that achieving and maintaining certification through trial would be both difficult and expensive. Therefore, settlement is favorable.

### 3.    Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, the court should look at the settlement as a whole. (*Officers for Justice*, 688 F.2d at 628.) Additionally, a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery at trial. (*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).)

In this case, the parties have agreed to a non-reversionary Gross Settlement Amount of $200,000. (Agreement at ¶ II(12).) Based on Class Counsel's evaluation of the case, Defendants' potential exposure was estimated to be approximately $545,934.80 for all claims, which includes approximately $444,084.80 in unpaid wages and about $101,850.00 in civil penalties under the PAGA. (ECF No. 24-1.)  The Gross Settlement Amount represents about 36.63% of the monetary relief sought by the Action. (*Id.*) After deduction of the LWDA Payment, the Service Award, the Class Counsel Fees Award and the Class Counsel Costs Award, the Net Settlement Amount,

13

estimated to be $104,333.34, is to be paid to the members of the Settlement Class. The average settlement award is $709.75.  This Court preliminary approved the settlement. (ECF No. 30.) Nothing has substantially changed since the Court's order granting preliminary approval. Thus, granting final approval is warranted.

### 4.    Experience and Views of Counsel

Competent counsel is generally better positioned than the courts to create a settlement that fairly reflects each party's expected outcome in litigation. (*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).)

Here, Class Counsel has substantial experience in litigating wage and hour class and representative actions. (Clark Decl. at ¶ 17, Exh. 1.) Class Counsel has handled well over 150 Class and PAGA Actions where they have served as class counsel, lead counsel, and co-lead counsel in a majority of the matters. (*Id.*) From their experience, Class Counsel contends that the settlement in this Action is fair, adequate and reasonable. (Clark Decl. at ¶ 29.) Given this Court's preliminary determination that Class Counsel was adequate to represent the interest of the Settlement Class, this Court should rely upon the experience of counsel. (*Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528.)

### 5.    Presence of a Government Participant

As required by the Class Action Fairness Act, counsel for Defendant G2 provided notice to the United States Attorney General as well as the Attorneys General for California and Arizona on February 5, 2024. (Declaration of Kathy H. Gao re CAFA Compliance.) Pursuant to the California Labor Code, Plaintiff provided notice of the settlement to the California Labor and Workforce Development Agency on January 24, 2024. (ECF No. 24-1) While there is no affirmative duty for a government entity to take action in response to a settlement, there is a presumption that once put on notice, the government entity will raise any concerns they may have during the normal course of the settlement procedures. (*Garner v. State Farm Mutl. Auto. Ins. Co.*, 2010 U.S. Dist.

14

LEXIS 94977 *37 (N.D. Cal. Apr. 22, 2010).) To date, no government entity has raised any objection or concern regarding the settlement.

### 6.    Favorable Reaction from Class Members

After receiving the Class List and conducting National Change of Address Search to update mailing addresses, the Settlement Administrator mailed the Notice Packets to all 147 individuals on March 28, 2024. (Bridley Decl. at ¶¶ 7-8.) The Notice Packet included the information regarding: the nature of the litigation; the Class Members' rights under the terms of the Settlement and the deadlines by which to act on those rights, the potential benefits the Settlement would provide, the date, time, and location of the final approval hearing, information on the Settlement Payment and/or PAGA Employee Payments available and contact information Atticus and Class Counsel. (*Id.* at ¶¶ 7-8, Exh. A.) Each Class Notice also included the approximate number of weeks worked by the receiving Class Member during the Settlement Period. (*Id.*)

To ensure that all Class Members were informed of the settlement, the Settlement Administrator performed a diligent search to locate the proper mailing address for any individual whose Notice Packet was returned. (*Id.* at ¶ 8.) Of the 147 Notice Packets distributed, sixteen (16) have been identified as undeliverable. (*Id.* at ¶¶ 8-9.)

Acceptance of the settlement is evidenced by the fact that the Settlement Administrator did not receive any objections, exclusions, or disputes of work weeks. (*Id.* at ¶ 10.) The lack of objections and no exclusions is a testament to the fairness, reasonableness and adequacy of the settlement. (*See e.g. Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 [affirming approval of settlement where 131 out of 147 class members submitted claim forms and 0 objected to the settlement].)

### 7.    The Settlement Passes Scrutiny of Collusion

Since this settlement was reached prior to class certification, the court must scrutinize the settlement for evidence of collusion. (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946.)

15

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

As discussed at preliminary approval, Class Counsel did not engage in settlement negotiations until they had possessed sufficient information to make an informed decision. (Clark Decl. ¶¶ 8, 13.) The Settlement was negotiated with considerable assistance of Magistrate Judge Daniel Butcher. At all times, the negotiations were adversarial, non-collusive and at arm's length. (*Id*. at ¶ 8.)

The Settlement Agreement provides that Class Counsel may seek an award of up to one-third ($66,666.66) of the Gross Settlement Amount. (Agreement at ¶¶ III (15 b-c).) The terms of the Settlement Agreement create a Net Settlement Amount of approximately $104,333.34, which is to be paid out to the Settlement Class. The amount of attorneys' fees permitted by the Settlement Agreement is less than the estimated pay out to the Settlement Class. While the Settlement Agreement states that Defendants have agreed that they will not oppose Class Counsel's application for such awards, the statement is far from "clear sailing" as the attorneys' fees are not paid separately and apart from the Gross Settlement Amount nor do the unawarded funds revert to Defendants. The terms of the settlement agreement and the parties' engagement in the ENE conferences with the assistance of the Magistrate Judge Daniel Butcher indicate that the negotiations were adversarial, informed, and non-collusive. For the reasons stated herein, this Court should finally approve the settlement.

## V.   THE PAGA ALLOCATION SHOULD BE APPROVED

The proposed Settlement allocates $5,000 for civil penalties pursuant to the PAGA, with $3,750 (or 75%) of the allocation to be paid to the LWDA and $1,250 (or 25%) added to the Net Settlement Fund for distribution to the PAGA Employees. (Agreement at ¶ III (11).) Although Plaintiff's counsel estimated that Defendants could be liable for up to about $101,850.00 in civil penalties under the PAGA, the proposed allocation of $5,000 to the PAGA is an exceptional outcome in light of all known facts and circumstances as well as the fact that civil penalties under PAGA are discretionary. In fact, courts have held that no part of the settlement must necessarily be allocated and

distributed to the LWDA. *See e.g. Nordstrom Commissions Cases*, 186 Cal.App.4th 576, 589 (2010) (affirming a settlement allocating $0 of $6.4 million settlement to PAGA); *Smith v. Am. Greetings Corp.*, 2016 U.S. Dist. LEXIS 66247 (N.D. Cal. May 19, 2016) (granting final approval of class action settlement allocating $37,500 of $4 million settlement to PAGA); *Willner v. Manpower Inc.*, 2015 U.S. Dist. LEXIS 80697 (N.D. Cal. June 20, 2015) (granting final approval of a class settlement allocating $65,655 of $8.75 million settlement to PAGA); *Chu v. Wells Fargo Investments, LLC*, 2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 15, 2011) (approving $10,000 PAGA allocation in $6.9 million settlement.)

If a higher amount is allocated to PAGA, the burden to pay civil penalties would effectively shift to the members of the Class since a higher allocation would reduce the amount that the members of the Class would ultimately receive under the proposed Settlement. Although this burden shifting may achieve the enforcement objective of the statute, it would do so at the expense of the employees that the statute was designed to protect. Accordingly, the proposed allocation of $5,000 to PAGA, strikes a balance between the interest of all the parties, including the LWDA and general public, by penalizing the employer and providing relief to the Class Members. The Court should find that the PAGA allocation is fair, adequate, and reasonable.

## VI.    APPROVAL OF THE REQUESTED ADMINISTRATION COSTS, SERVICE AWARD, AND ATTORNEYS' FEES AND COSTS IS APPROPRIATE

### A.    <u>Administration Costs Are Reasonable</u>

Courts regularly award administrative costs associated with providing notice to the class. (*Acosta*, 2018 U.S. Dist. LEXIS 75998 at *44.) In this case, the Settlement Agreement calls for payment of Administration Costs not to exceed $9,000 from the Gross Settlement Amount. (Agreement at ¶¶ II (24); III (15e).) After receiving the class list from Defendants, Atticus did a National Change of Address search to update the mailing addresses provided. (Bridley Decl. at ¶ 6.) Atticus then mailed the appropriate

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

Notice Packets to all 147 Class Members. (*Id*. at ¶ 7.) Atticus then sent the remaining undeliverable records to a professional search firm for address tracing to locate a more suitable address for Notice Packets returned without a forwarding address and re-mailed all Notice Packets accordingly. (*Id*. at ¶ 8.) Pursuant to the terms of the Settlement Agreement, Atticus will also calculate and issue all settlement payments, issue the appropriate tax forms and perform other necessary duties. (Agreement at ¶ III (15h).) Atticus's charge for administering the settlement is $8,200. (Bridley Decl. at ¶ 11.) This amount is lower than the estimate in the Settlement Agreement and is reasonable given the work performed for the benefit of the Settlement Class. The Court should award Administration Costs in the amount of $8,200 to the Settlement Administrator.

### B.   Service Award to the Class Representative is Justified

Incentive awards are typical in class action cases as they are generally meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking and bring the action, and sometime, to recognize their willing to act as a private attorney general." (*Rodriguez v. West Publ'g Corp.*, 563 F.3d at 958-959.) When determining whether an incentive award is reasonable courts generally consider:

> (1) the risk to the representative in commencing the suit, both financially and otherwise; (2) the notoriety and personal difficulties encountered by the representative; (3) the amount of time and effort spent by the representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the representative as a result of the litigation.

(*Van Vranken v. Alt. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995).) Where a plaintiff undertakes a significant "reputational risk" such as by bring a wage and hour suit against a former employer, an incentive award is appropriate. (*Rodriguez*, 563 F.3d at 958-959.)

Plaintiff is permitted to seek, and does so seek, a Service Award in the amount of $10,000, or any other amount this Court deems just and reasonable. (Agreement at ¶ III

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

(15d).) As the class representative and the acting private attorney general, Plaintiff has performed her duties without exception. Plaintiff was an active participant throughout the litigation as she underwent an in-depth interview about her employment experience with Class Counsel, she searched for and provided all documents in her possession related to her employment with Defendants, and spent numerous hours communicating with Class Counsel. (Villanueva Dec. at ¶ 7-8; *see also* Clark Decl. at ¶ 23-28.) Plaintiff estimates that she has spent approximately 45 hours working on this case since its inception. (Villanueva Decl. at ¶ 7.)

Moreover, Plaintiff attended two ENE conferences with United States Magistrate Judge Daniel Butcher in the U.S. District Court for the Southern District of California, on September 13 and November 6, 2023, respectively. (*Id.* at ¶ 8.) Plaintiff actively participated in the ENEs which resulted in the settlement of this action.

By bringing and maintaining this Action, Plaintiff took the risk of the possibility of an adverse judgment and a corresponding award of costs to Defendants. (*Id.* at ¶ 10 *see also* Clark Decl. at ¶¶ 25-26) Moreover, by being the named plaintiff in this Action, Plaintiff took the risk that future employers would be reluctant to hire her. (*Id.*)

Under the terms of the Settlement Agreement, Plaintiff has agreed to give up more than any other Class Member as she has agreed to release any and all known and unknown claims against Defendants and waive the rights afforded to her by California Civil Code section 1542 as consideration for the opportunity to apply for the Service Award. (Agreement at ¶ III (8); *see also* Clark Decl. at ¶ 27.)

Plaintiff went above and beyond what was required of her as a representative; it is undoubtable that without Plaintiff's active participation and commitment to the Action, there would be no Action and therefore no recovery for the members of the Settlement Class. (*Id.* at ¶¶ 25-26; *see also* Villanueva Decl. at ¶¶ 8-11.) Therefore, this Court should grant Plaintiff's request for a Service Award in the amount of $10,000, or any other amount the Court deems just and reasonable, to Plaintiff for the time, expense and

1  risk she undertook in prosecuting this Action and the conferred benefits. (Clark Decl. at
2  ¶ 28.)

3  ### C.   The Class Counsel Fees Award is Fair and Reasonable

4  While Rule 23(h) permits an award of attorneys' fees and costs in a certified class
5  action where it is "authorized by the law or by the parties' agreement," courts have an
6  independent responsibility to ensure that the award is fair and reasonable. (Fed. R. Civ.
7  P. 23(h); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941.)

8  When a settlement results in a common fund for the benefit of the class as a
9  whole, courts have discretion to choose between the percentage method and the lodestar
10  method in calculating fees. (*In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th
11  Cir. 2010).)  The court's discretion must be exercised reasonably to achieve a
12  reasonable result. (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.)

13  Class Counsel's request for a Class Counsel Fees Award in the amount of
14  $66,666.66 is fair and reasonable. Class Counsel accepted this complex action on a pure
15  contingency basis with no guarantee that they would recover any fees or costs
16  associated with the prosecution of the action. (Clark Decl. at ¶ 14.) By taking on this
17  Action, Class Counsel was precluded from taking other fee generating employment,
18  particularly because the Action occupied a significant portion of Class Counsel's time
19  and resources. (*Id*.)

20  From the start, this case involved complex legal and factual issues that presented
21  a risk to Plaintiff and the putative class. Nonetheless, Class Counsel's dedication to the
22  Action resulted in a benefit to the members of the Settlement Class. Class Counsel was
23  able to negotiate a non-reversionary settlement of $200,000 for the benefit of the
24  Settlement Class. (Agreement at ¶ II (12).) Therefore, the settlement is an excellent
25  outcome for the members of the Settlement Class.

26
27
28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

### 1.     The Fees Sought Are a Reasonable Percentage of the Fund

The "common fund" doctrine provides that when "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." (*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).) The common fund approach permits the court to simply award attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee. (*Staton*, 372 F.3d at 968.)

Class Counsel is seeking a Class Counsel Fees Award of $66,666.66 (1/3 of the Gross Settlement Amount.) (Agreement at ¶¶ III (15 b-c); Clark Decl. at ¶¶ 15-16.) The requested fee falls within the range of percentage class fee awards, which generally range from 20% to 50% of a common fund, and it constitutes fair compensation for undertaking complex, risky, expensive, and time-consuming litigation on a contingent basis and compensates Class Counsel for their efforts, as well as the result achieved for the benefit of the Class.  *Newberg on Class Actions* (3rd Ed. 1992, § 14.03; *c.f. In Re Cendant Corp. PRIDES Litigation* (3rd Cir. 2001) 243 F.3d 722, 736; *See e.g. Chavez*, 162 Cal. App. 4th at 66 n.11 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.") Numerous courts routinely approve fee requests equal to or greater than one-third of the common fund. *See In re Ampicillian Antitrust Litigation* (D.D.C. 1981) 526 F. Supp. 494 [awarding 45% of $7.3 million settlement fund]; *Van Gemert v. Boeing Co.* (S.D.N.Y. 1981) 516 F. Supp. 412, 420 [awarding 36% of the settlement fund]; *Martin v. Ameripride Servs*., 2011 U.S. Dist. LEXIS 61796, *22-23 (S.D. Cal. 2011 (collecting cases; *Birch v. Office Depot, Inc.*, USDC Southern District, Case No. 06cv1690 DMS (WMC (awarding 40% fee on a $16 million wage and hour class action settlement); *Rippee v. Boston Mkt. Corp., USDC Southern District*, Case No. 05cv1359 BTM (JMA (awarding a 40% fee on a $3.75 million wage and hour class action settlement).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

And, critically, **neither any class member, nor the state of California, has objected** to Class Counsel receiving 1/3 of the settlement fund.  *See Garner v. State Farm Mut. Auto Ins. Co.* (N.D. Cal. 2010) 2010 U.S. Dist. LEXIS 49482, at *5 ("[A] single objection out of a sizeable class, after notice, further demonstrates the reasonableness and fairness of Class Counsels' request"); *In re Rite Aid Sec. Litig.* (3d Cir. 2005) 396 F.3d 294, 305 (low level of objections is "rare phenomenon").

### 2.    A Lodestar Cross-Check Supports the Reasonableness of the Fees Sought

The lodestar number is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the region and for the experience of the lawyer. (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941.) The lodestar number is "presumably reasonable." (*Cunningham v. Cnty of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988).) However, the court may adjust the lodestar amount upward or downward by an appropriate multiplier based on the "reasonableness" factors. (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.) Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases. (*Acosta*, 2018 U.S. Dist. LEXIS 75998 at *41.)

Class Counsel is requesting a Class Counsel Fees Award of $66,666.66. Here, Class Counsel has expended a total of 156.7 hours resulting in a lodestar number of $120,589. (Clark Decl. at ¶ 18-19.) The lodestar number is exclusive of the time preparing for and attending the final approval hearing, monitoring the administration of the settlement, and preparing for the final accounting hearing, among other things. (*Id.*) Class Counsel expects to spend approximately 20 additional hours in this Action. (*Id.*) As such, the lodestar number significantly exceeds, and is almost double, the requested award of $66,666.66. Class Counsel's lodestar number, without consideration of the anticipated 20 hours, results in a negative multiplier of 1.8. If the estimated 20 hours are included, the lodestar number would even further exceed the requested $66,666.66.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

1   Also, as with the common fund method, the reasonableness of the requested fee is

2   underscored by the fact that no class members have filed an objection to the fee award

3   after it was disclosed in the Class Notice.

4                    *(i)      The Hourly Rates Requested are Reasonable*

5          When determining the reasonable hourly rate, the court should consider the rate

6   prevailing in the community for similar work performed by attorneys of comparable

7   skill, experience and reputation. (*Acosta*, 2018 U.S. Dist. LEXIS 75998 at *36.) For

8   purposes of determining the rate prevailing in the community, the court generally looks

9   at the "forum in which the district court sits." (*Id*.)

10         Class Counsel has submitted a declaration evidencing their experience and hourly

11  rates. (Clark Decl. at ¶ 17, Exh. 1.) The hourly rates of Class Counsel are fully

12  supported by their extensive experience and reputation in litigating wage and hour class

13  and representative actions in California, as well as other complex actions. (*Id*.) Class

14  Counsel's hourly rates commensurate with the prevailing market rates in California,

15  including in the San Diego area, for attorneys of comparable experience and skill. (*Id*.)

16  Class Counsel has also been approved at the hourly rates requested by various courts.

17  (*Id*.) The hourly rates requested are also comparable to the Laffey Matrix. (*Id*.) (*See

18  United Steelworkers of Am. v. Phelps Dodge Corp.* (9th Cir. 1990) 896 F.2d 403, 407

19  ["Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in

20  the community, and rate determinations in other cases, particularly those setting a rate

21  for plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."]) Thus,

22  the hourly rates requested are reasonable and should be approved.

23                  *(ii)     The Number of Hours Claimed is Reasonable*

24         Courts should approve only award fees based on "the number of hours reasonably

25  expended on the litigation" and should exclude hours that are excessive, redundant, or

26  otherwise unnecessary." (*Acosta*, 2018 U.S. Dist. LEXIS 75998 at *36.) The court is to

27

28                                              23

use its discretion when making the determination of whether the reasonableness of the number of hours claimed. (*Id*.)

Class Counsel has expended a total of 156.7 hours resulting in a lodestar number of $120,589. (Clark Decl. at ¶ 18-19.) The lodestar number is exclusive of the time preparing for and attending the final approval hearing, monitoring the administration of the settlement, and preparing for the final accounting hearing, among other things. (*Id*.) Class Counsel has submitted a declaration evidencing the number of hours spent on this case over the past year and three months. (*Id*.) The records include time spent on case research and investigation, drafting pleadings, drafting written discovery, meet and confer letters, attending court hearings, preparing for and attending ENE conferences, and negotiating the settlement, among other things. (*Id*. at ¶¶ 8, 13, 18.) Each of these tasks were necessary to prosecute the Action and to obtain the recovery outlined in the Settlement Agreement for the benefit of the Settlement Class. (*Id*.) Therefore, the number of hours claimed is reasonable.

### D.   The Class Counsel Costs Award is Reasonable

It is well-established that an attorney who has created a common fund for the benefit of the class is to be reimbursed from the common fund for reasonable litigation expenses. (*Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014).) In wage and hour class actions, courts typically award litigation costs and expenses – including reasonable travel expenses. (*Acosta*, 2018 U.S. Dist. LEXIS 75998 at *42.)

The Settlement Agreement permits Class Counsel to pursue a Class Counsel Costs Award of up to $5,000. Class Counsel has incurred a total of $4,924.53 in unreimbursed expenses and costs related to the prosecution of this Action. (Clark at ¶ 21, Exh. 2.) Each expense was reasonably and necessarily incurred as a result of Class Counsel's prosecutorial efforts. (*Id*.) Each of the expenses incurred are of the type that would normally be billed to and paid for by the client, such as filing fees, legal research, attorney services, litigation support, travel, food, and other miscellaneous expenses.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

(*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).) Class Counsel, therefore, seeks a Class Counsel Costs Award of $4,924.53. Since the expenses and costs were incurred by Class Counsel for the benefit of the Settlement Class, the requested Class Counsel Costs Award is reasonable and should be approved.

## VII.   CONCLUSION

For the reasons set forth herein, Plaintiff requests that this Court (1) finally approve the settlement in this Action; (2) finally certify the Settlement Class for settlement purposes only; (3) award Settlement Administration costs in the amount of $8,2000 to the Settlement Administrator; (4) award a Service Award in the amount of $10,000, or any other amount the Court deems just and reasonable, to Plaintiff Allison Villanueva; (5) award a Class Counsel Fees Award in the amount of $66,666.66, or any other amount the Court deems just and reasonable, to Class Counsel; (6) award a Class Counsel Costs Award in the amount of $4,924.53 or any other amount the Court deems just and reasonable, to Class Counsel; and (7) enter final judgment in this Action.

Dated: June 4, 2024              **CONSUMER & EMPLOYMENT LAW GROUP**

By: _____
R. Craig Clark
Alicja A. Urtnowski
*Attorneys for Plaintiff*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS